# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10x GENOMICS, INC.<br><br>                 Plaintiff,<br><br>    v.<br><br>CELSEE, INC.<br><br>                 Defendant. | C.A. No. 19-_____<br><br>DEMAND FOR JURY TRIAL |

**COMPLAINT FOR PATENT INFRINGEMENT,
UNFAIR COMPETITION, AND FALSE ADVERTISING**

Plaintiff 10x Genomics, Inc. ("10x"), for its Complaint against Defendant Celsee, Inc. ("Celsee"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for infringement of United States Patent Nos. 10,155,981; 10,227,648; 10,240,197; 10,273,541; and 10,280,459[1] under the Patent Act, 35 U.S.C. §§1 *et seq.*, including 35 U.S.C. §271; unfair competition and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a); and for substantial and related claims under the laws of the State of Delaware.

## THE PARTIES

2. 10x Genomics, Inc. is a Delaware corporation with its principal place of business in Pleasanton, California.

3. Celsee, Inc. is a Delaware corporation with its principal place of business in Plymouth, Michigan.

---

[1] Exhibits A–E.

## JURISDICTION AND VENUE

4. This civil action arises under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and under the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2531 *et seq.*  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 as to the claims arising under federal law and pursuant to 28 U.S.C. §§ 1367 as to the claims arising under state law.

5. This Court has personal jurisdiction over Celsee, and venue is proper in this district pursuant to 28 U.S.C. § 1400(b), because Celsee is a Delaware corporation and thus resides in this district.

## BACKGROUND

**A.  10x Develops and Commercializes its Groundbreaking Single Cell Technology**

6. 10x is a life sciences technology company founded in 2012 in Pleasanton, California by Drs. Serge Saxonov and Benjamin Hindson.  10x is a worldwide leader in genomics, the comprehensive study of biological systems at a molecular and cellular level.  Since its founding in 2012, 10x has invested hundreds of thousands of work hours and over a hundred million dollars to invent, design, develop, market, and sell its proprietary line of products for understanding biology at unprecedented resolution and scale.

7. 10x launched its award-winning GemCode product in February 2015 and its successor Chromium product line in early 2016.  10x's Chromium product line includes a suite of several integrated solutions, each comprising the Chromium Controller instrument, biochemical reagents, and analysis and visualization software.  Current Chromium products include the Chromium Single Cell Gene Expression solution, the Chromium Single Cell Immune Profiling solution, the Chromium Single Cell ATAC solution, the Chromium Single Cell CNV solution, and the Chromium Genomic/Exome solutions.  Each of these solutions is designed to

interrogate a major class of biological information that is impactful for researchers.

8. For example, the Chromium Single Cell Gene Expression solution provides researchers with the ability to measure gene activity on a cell-by-cell basis, for massive numbers of cells in a single experiment. This approach overcomes limitations of prior tools that analyzed biological samples by obtaining measurements that were averages over large numbers of cells. Such averaged or "bulk" approaches lose critical biological information. For example, in the context of cancer biology, a tumor can consist of a heterogeneous population of cells, some healthy and some cancerous cells, the latter of which may actually consist of many genetically distinct tumor cell subpopulations that are each susceptible to different therapeutics. This complexity is easily lost using bulk approaches but can be fully captured using 10x's solutions.

9. In the four years since 10x's first product launch in 2015, 10x's products have won wide acclaim and commercial success. 10x achieved an installed base of over 1,000 Chromium instruments around the world, including in 93 of the top 100 research institutions and 13 of the top 15 biopharmaceutical companies. Annual sales of 10x products exceeded $140 million in 2018. Over 380 peer-reviewed scientific articles have been published based on data generated from 10x products, including over 70 articles in the top journals *Cell*, *Science*, and *Nature*. 10x is now an established market leader in single cell genomics, an emerging field that *Science* magazine hailed as the "2018 Breakthrough of the Year."

10. 10x has protected some, but not all, of its innovations with patents duly issued by the United States Patent and Trademark Office. 10x also has other confidential and proprietary technical information, as well as financial and business information, including but not limited to confidential information about 10x's costs, materials, vendors, business plans, and product roadmaps, all of which is critical to its success.

11. 10x takes great care in guarding its proprietary information and technologies. For example, 10x requires all employees to sign robust confidentiality agreements as conditions of their employment at 10x. Access to 10x's offices is strictly controlled and monitored. 10x's computer systems are password and firewall protected, so that only authorized users can access the company's systems.

### B. The Infringing Celsee Products

12. Roughly three years after 10x launched the Chromium product line, Celsee introduced the Genesis System. Celsee has positioned the Genesis System to compete with 10x's Chromium product line.

13. The Genesis System attempts to enable users to analyze molecular signatures at the single cell level.



14. The Genesis system is designed to capture and isolate single cells. Once isolated, the cells are paired with a unique cellular barcode and unique molecular indices for applications such as gene expression or protein quantitation. *See* https://www.celsee.com/systems/

15. The dual tagging allows the user to track a molecule of interest and the cell of

origin of that molecule.  The user can therefore detect and quantify the level of the molecule of interest in single cells by sequencing.  See https://www.celsee.com/systems/



16. Celsee states that such an approach "has the potential to provide a 10x increase in cell throughput compared with other technologies."  See https://www.celsee.com/systems/

17. Celsee employs what it refers to as Celsingle Technology using Celsingle Slides, which allow a single cell to be paired with a unique cellular barcode and unique molecular indices for desired applications.

18. Celsee has been using, making, marketing, and selling its Genesis System and associated accessories and reagents, including Celsingle Technology and Celsingle Slides, since at least mid-2018.

19. Celsee was built to copy 10x's technology and on information and belief has been monitoring its progress, including its patent filings. On information and belief, Celsee instructs and encourages its employees to market Celsee products as superior to the single cell analysis platform offered by 10x. Celsee does not provide its employees with any substantive support, empirical data, basis, or reasoning for such an assertion.

C. **Celsee Aggressively Recruits 10x Employees**

20. Celsee's entire business model is aimed at capturing market share and diverting business from 10x by copying 10x's technology and business plans, making false and misleading

comparisons between Celsee's product and 10x's, and undercutting 10x on price.

21.     Celsee has been recruiting 10x personnel to join Celsee.  Based on preliminary forensic analysis, and on information and belief, several of these former 10x employees copied confidential 10x information shortly before they left 10x and went to Celsee.

22.     Simply by way of example, one senior marketing manager at 10x helped to prepare a proprietary, non-public "product roadmap" setting out extensive confidential information about 10x's business plan and competitive strategy.  The employee left 10x in November 2018 to join Celsee.  Thereafter, non-public pricing data from this product roadmap appeared in price-comparison slides in Celsee marketing materials.

23.     Another senior marketing manager at 10x left for Celsee in February 2019.  Upon departure from 10x, the employee was expressly and repeatedly instructed to return a company-issued computer to 10x with the files on the hard drive intact.  Nonetheless, the employee attempted to "wipe" the company-issued computer's hard drive before returning it.  Notwithstanding the effort to erase information and files from the company-issued computer, a preliminary forensic analysis revealed confidential and proprietary 10x documents that were sent from the company-issued computer to the employee's personal email.

24.     Consistent with its overall approach of copying 10x wholesale, Celsee has even resorted to copying 10x job postings *verbatim*.  For example, in June 2018, 10x announced an available "Protein Engineer" position.  By December 2018, Celsee had posted the same "Protein Engineer" position, copying the 10x announcement—of the *329* words that comprise the 10x announcement, *324* appear in the Celsee announcement.  *See* Exhibits F–G.  Similarly, in July 2018, 10x announced an available "Scientist – Cell Biology/Molecular Pathology" position.  By December 2018, Celsee had posted the same "Scientist – Cell Biology/Molecular Pathology"

position 10x had announced.  Of the *369* words describing the 10x position, Celsee copied *361* of them.  *See* Exhibits H–I.

### D. Celsee Uses False and Misleading Representations to Market Its Copycat Product

25. In addition to Celsee's attempts to capture market share and divert business from 10x by undercutting 10x on price, Celsee has aggressively marketed the performance characteristics of Celsee's competing product, the Genesis System, in false and misleading ways. In particular, in its marketing and promotion materials and on its website, Celsee has made and continues to make false and misleading representations about the performance characteristics of the Genesis System.

26. A key criterion on which market participants evaluate the performance of single cell systems is the cell capture rate: a measure of the percentage of input cells that are assayed in each experimental run.  The cell capture rate is a critical performance metric relied on by market consumers in evaluating competing single cell analysis products.

27. 10x's Chromium platform has a 65% cell capture rate.  This is considered one of the best cell capture rates in the industry.  It is an important basis on which 10x markets the Chromium platform and differentiates itself from the competition.

28. Celsee touts its supposedly superior cell capture rate as one of the key benefits of its system.  Indeed, it advertises its system using the tagline: "Because every cell matters."  On its website and its product literature, Celsee advertises its Genesis System as having a cell capture rate of greater than 70% of input cells:



29. Celsee makes similar claims in product-promotional brochures it directs to target consumers:



30. On information and belief, these representations are false and misleading,

inflating the cell capture efficiency of Celsee's Genesis System. Specifically, on information and belief, Celsee measures its cell capture rate as the fraction of cells analyzed to the number of cells *occupying the wells of its microwell arrays*. This method of measuring the cell capture rate ignores the substantial numbers of cells that are input into its system, but which reside in the "dead volume" of the system and never make their way into the wells. Because such cells are never analyzed, they are wasted. On information and belief, Celsee's purported cell capture efficiency of greater than 70% of input cells is inaccurate and misleading because these wasted cells are never accounted for.

31. On information and belief, while Celsee advertises its system as having a cell capture rate that is better than that of 10x's products, the reverse is in fact true. On information and belief, the true cell capture rate of Celsee's Genesis System is materially less than the rate Celsee promotes it as having, and materially less than the cell capture rate of 10x's Chromium platform.

32. Celsee's misrepresentations regarding the cell capture rate of its Genesis System mislead consumers about the performance and efficiency of Celsee's Genesis System, and how it compares to 10x's Chromium platform.

33. Reasonable consumers should be able to trust that the representations on Celsee's website and in Celsee's product-promotional materials are true.

34. Celsee's misleading and deceptive practices proximately have caused harm to 10x in that potential sales of 10x's Chromium product line have been and continue to be diverted to Celsee.

## THE PATENTS-IN-SUIT

35. Through the development and subsequent making, using, selling, offering for sale,

and/or importing of its single cell analysis platform, the Genesis System, and associated accessories and reagents, Celsee has and continues directly to infringe, contributorily infringe, and/or induce the infringement of:

    a.    U.S. Patent No. 10,155,981, entitled "Methods for analyzing nucleic acids from single cells" Exhibit A (the "'981 Patent");

    b.    U.S. Patent No. 10,227,648 entitled "Methods and systems for processing polynucleotides" Exhibit B (the "'648 Patent");

    c.    U.S. Patent No. 10,240,197 entitled "Methods for analyzing nucleic acids from single cells" Exhibit C (the "'197 Patent");

    d.    U.S. Patent No. 10,273,541 entitled "Methods and systems for processing polynucleotides" Exhibit D (the "'541 Patent"); and

    e.    U.S. Patent No. 10,280,459 entitled "Methods for analyzing nucleic acids from single cells" Exhibit E (the "'459 Patent").

## FIRST CAUSE OF ACTION

### (INFRINGEMENT OF U.S. PATENT NO. 10,155,981)

36. 10x incorporates each of the preceding paragraphs as if fully set forth herein.

37. The '981 Patent issued on December 18, 2018 to Sydney Brenner, Gi Mikawa, Robert Osborne, and Andrew Slatter.

38. By assignment, 10x owns all rights, title, and interest in and to the '981 Patent.

39. As detailed more fully in Attachment A, Celsee has infringed and continues to infringe at least claim 1 of the '981 Patent by making, using, selling, and offering for sale the Genesis System and its associated accessories and reagents Celsee has committed and continues to commit these acts of infringement without license or authorization.

40. The infringement by Celsee has directly and proximally caused damage to 10x.

This infringement entitles 10x to monetary relief in an amount which, by law, cannot be less than a reasonable royalty, together with interest and costs fixed by this Court pursuant to 35 U.S.C. § 284.

41.   On information and belief, Celsee regularly monitors 10x's patent portfolio and is aware of the asserted patents.

42.   The infringement of the '981 Patent by Celsee is willful and deliberate. On information and belief, at least as of December 18, 2018 if not earlier, Celsee knew or should have known that its making, using, selling, offering to sell, and/or importing the Genesis System and its associated accessories and reagents, does and will constitute an unjustifiably high risk of infringement of the '981 Patent. Such conduct constitutes, at minimum, willful infringement of the '981 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

43.   Unless Celsee is enjoined from infringing the '981 Patent, 10x will suffer irreparable injury for which damages are an inadequate remedy.

## SECOND CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,240,197)

44.   10x incorporates each of the preceding paragraphs as if fully set forth herein.

45.   The '197 Patent issued on March 26, 2019 to inventors Sydney Brenner, Gi Mikawa, Robert Osborne, and Andrew Slatter.

46.   By assignment, 10x owns all rights, title, and interest in and to the '197 Patent.

47.   As detailed more fully in Attachment B, Celsee has infringed and continues to infringe at least claim 1 of the '197 Patent by making, using, selling, and offering for sale the Genesis System and its associated accessories and reagents

48.   Celsee has committed and continues to commit these acts of infringement without license or authorization.

49.     The infringement by Celsee has directly and proximately caused damage to 10x. This infringement entitles 10x to monetary relief in an amount which, by law, cannot be less than a reasonable royalty, together with interest and costs fixed by this Court pursuant to 35 U.S.C. § 284.

50.     On information and belief, Celsee regularly monitors 10x's patent portfolio and is aware of the asserted patents.

51.     The infringement of the '197 Patent by Celsee is willful and deliberate. On information and belief, at least as of March 26, 2019 if not earlier, Celsee knew or should have known that its making, using, selling, offering to sell, and/or importing the Genesis System and its associated accessories and reagents, does and will constitute an unjustifiably high risk of infringement of the '197 Patent. Such conduct constitutes, at minimum, willful infringement of the '197 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

52.     Unless Celsee is enjoined from infringing the '197 Patent, 10x will suffer irreparable injury for which damages are an inadequate remedy.

## THIRD CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,227,648)

53.     10x incorporates each of the preceding paragraphs as if fully set forth herein.

54.     The '648 Patent issued on March 12, 2019 to inventors Benjamin Hindson, Serge Saxonov, Kevin Ness, and Paul Hardenbol.

55.     By assignment, 10x owns all rights, title, and interest in and to the '648 Patent.

56.     As detailed more fully in Attachment C, Celsee has infringed and continues to infringe at least claim 1 of the '648 Patent by making, using, selling, and offering for sale the Genesis System and its associated accessories and reagents.

57.     Celsee has committed and continues to commit these acts of infringement without

license or authorization.

58. The infringement by Celsee has directly and proximally caused damage to 10x. This infringement entitles 10x to monetary relief in an amount which, by law, cannot be less than a reasonable royalty, together with interest and costs fixed by this Court pursuant to 35 U.S.C. § 284.

59. On information and belief, Celsee regularly monitors 10x's patent portfolio and is aware of the asserted patents.

60. The infringement of the '648 Patent by Celsee is willful and deliberate. On information and belief, at least as of March 12, 2019 if not earlier, Celsee knew or should have known that its making, using, selling, offering to sell, and/or importing the Genesis System and its associated accessories and reagents, does and will constitute an unjustifiably high risk of infringement of the '648 Patent. Such conduct constitutes, at minimum, willful infringement of the '648 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

61. Unless Celsee is enjoined from infringing the '648 Patent, 10x will suffer irreparable injury for which damages are an inadequate remedy.

## FOURTH CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,273,541)

62. 10x incorporates each of the preceding paragraphs as if fully set forth herein.

63. The '541 Patent issued on April 30, 2019 to inventors Benjamin Hindson Christopher Hindson, Michael Schnall-Levin, Kevin Ness, Mirna Jarosz, Serge Saxonov, Paul Hardenbol, Rajiv Bharadwaj, Xinying Zheng, and Phillip Belgrader.

64. By assignment, 10x owns all rights, title, and interest in and to the '541 Patent.

65. As detailed more fully in Attachment D, Celsee has infringed and continues to infringe at least claim 1 of the '541 Patent by making, using, selling, and offering for sale the

Genesis System and its associated accessories and reagents.

66. Celsee has committed and continues to commit these acts of infringement without license or authorization.

67. The infringement by Celsee has directly and proximally caused damage to 10x. This infringement entitles 10x to monetary relief in an amount which, by law, cannot be less than a reasonable royalty, together with interest and costs fixed by this Court pursuant to 35 U.S.C. § 284.

68. On information and belief, Celsee regularly monitors 10x's patent portfolio and is aware of the asserted patents.

69. The infringement of the '541 Patent by Celsee is willful and deliberate. On information and belief, at least as of April 30, 2019 if not earlier, Celsee knew or should have known that its making, using, selling, offering to sell, and/or importing the Genesis System and its associated accessories and reagents, does and will constitute an unjustifiably high risk of infringement of the '541 Patent. Such conduct constitutes, at minimum, willful infringement of the '541 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

70. Unless Celsee is enjoined from infringing the '541 Patent, 10x will suffer irreparable injury for which damages are an inadequate remedy.

## FIFTH CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,280,459)

71. 10x incorporates each of the preceding paragraphs as if fully set forth herein.

72. The '459 Patent issued on May 7, 2019 to inventors Sydney Bremer, Gi Mikawa, Robert Osborne, and Andrew Slatter.

73. By assignment, 10x owns all rights, title, and interest in and to the '459 Patent.

74. As detailed more fully in Attachment E, Celsee has infringed and continues to

infringe at least claim 1 of the '459 Patent by making, using, selling, and offering for sale the Genesis System and its associated accessories and reagents.

75. Celsee has committed and continues to commit these acts of infringement without license or authorization.

76. The infringement by Celsee has directly and proximally caused damage to 10x. This infringement entitles 10x to monetary relief in an amount which, by law, cannot be less than a reasonable royalty, together with interest and costs fixed by this Court pursuant to 35 U.S.C. § 284.

77. On information and belief, Celsee regularly monitors 10x's patent portfolio and is aware of the asserted patents.

78. The infringement of the '459 Patent by Celsee is willful and deliberate. On information and belief, at least as of May 7, 2019 if not earlier, Celsee knew or should have known that its making, using, selling, offering to sell, and/or importing the Genesis System and its associated accessories and reagents, does and will constitute an unjustifiably high risk of infringement of the '459 Patent. Such conduct constitutes, at minimum, willful infringement of the '459 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

79. Unless Celsee is enjoined from infringing the '459 Patent, 10x will suffer irreparable injury for which damages are an inadequate remedy.

## SIXTH CAUSE OF ACTION

### (UNFAIR COMPETITION UNDER THE LANHAM ACT)

80. 10x incorporates each of the preceding paragraphs as if fully set forth herein.

81. In its commercial advertising and promotional efforts, Celsee has made false or misleading representations of fact concerning the cell capture rate of its Genesis System. Celsee promotes its Genesis System as having a cell capture rate of greater than 70%, but this rate does

not reflect the true proportion of input cells actually sequenced. The cell capture rate Celsee promotes its Genesis System as having is inaccurate and grossly inflated.

82. Celsee's false or misleading representations of fact concerning the cell capture rate of its Genesis System concern the Genesis System's nature, characteristics, or qualities.

83. Celsee's false or misleading representations of fact actually deceive or have the tendency to deceive a substantial portion of the target consumers. By promoting an inaccurate and inflated cell capture rate, Celsee has misled target consumers into believing that they are purchasing a genomics system that is more efficient and has better performance than the system they are in fact getting.

84. Celsee's false or misleading representations of fact concerning the cell capture rate of its Genesis System are material because they are likely to influence the purchasing decisions of a target consumer, since cell capture rate is an important criterion of system performance and efficiency.

85. Celsee advertises, promotes, sells, and distributes its falsely and misleadingly represented products in interstate commerce.

86. Celsee's Genesis System competes directly with 10x's Chromium product line.

87. Celsee's conduct as alleged herein is causing immediate and irreparable harm and injury to 10x, and to its goodwill and reputation, and will continue to both damage 10x through the diversion of sales and confuse the consuming public.

88. As a result of Celsee's wrongful acts, 10x has been damaged in an amount not yet determined or ascertainable. At a minimum, 10x is entitled to injunctive relief, an accounting of Celsee's profits, damages, and costs.

## SEVENTH CAUSE OF ACTION

## (VIOLATION OF DELAWARE DECEPTIVE TRADE PRACTICES ACT)

89. 10x incorporates each of the preceding paragraphs as if fully set forth herein.

90. In the course of its business, Celsee has made false or misleading representations of fact concerning the cell capture rate of its Genesis System. Celsee promotes its Genesis System as having a cell capture rate of greater than 70%, but this rate does not reflect the true proportion of input cells actually sequenced. The cell capture rate Celsee promotes its Genesis System as having is inaccurate and grossly inflated.

91. Celsee's false or misleading representations of fact concerning the cell capture rate of its Genesis System create a likelihood of confusion or of misunderstanding, as well as represent the Genesis System as having characteristics or benefits the Genesis System does not have.

92. Celsee's false or misleading representations of fact actually deceive or have the tendency to deceive a substantial portion of the target consumers. By promoting an inaccurate and inflated cell capture rate, Celsee has misled target consumers into believing that they are purchasing a genomics system that is more efficient and has better performance than the system they are in fact getting.

93. Celsee's false or misleading representations of fact concerning the cell capture rate of its Genesis System are material because they are likely to influence the purchasing decisions of a target consumer, since cell capture rate is an important criterion of system performance and efficiency.

94. Celsee's Genesis System competes directly with 10x's Chromium product line.

95. Celsee's conduct as alleged herein is causing immediate and irreparable harm and injury to 10x, and to its goodwill and reputation, and will continue to both damage 10x through

the diversion of sales and confuse the consuming public.

96.     As a result of Celsee's wrongful acts, 10x has been damaged in an amount not yet determined or ascertainable.  At a minimum, 10x is entitled to injunctive relief, an accounting of Celsee's profits, damages, and costs.

## PRAYER FOR RELIEF

Plaintiff 10x Genomics, Inc. respectfully requests that the Court find in its favor and against Celsee, Inc. and that the Court grant the following relief:

a.      For entry of judgment that the '981 Patent, the '648 Patent, the '197 Patent, the '541 Patent, and the '459 Patent have been and continue to be directly and/or indirectly infringed by Celsee, either literally or under the doctrine of equivalents;

b.      For a declaration that each of the Patents-in-Suit is valid and enforceable;

c.      For permanent injunctions enjoining the aforesaid acts of infringement by Celsee, its officers, agents, servants, employees, attorneys, parent and subsidiary entities, assigns and successors in interest, and those persons acting in concert with them, including related individuals and entities, customers, representatives, distributors, and dealers.  In the alternative, if the Court finds that an injunction is not warranted, 10x requests an award of post-judgment royalty to compensate for future infringement;

d.      For entry of judgment that Celsee has violated 15 U.S.C. § 1125(a) and the Delaware Deceptive Trade Practices Act by unfairly competing against 10x through false or misleading representations of fact as described herein;

e.      For preliminary and permanent injunctive relief prohibiting Celsee, its officers, agents, servants, employees, attorneys, parent and subsidiary entities, assigns and successors in interest, and those persons acting in concert with them, including related individuals and entities, customers, representatives, distributors, and dealers, from false or

misleading representations of fact concerning the cell capture rate of the Genesis System, which relief includes but is not limited to corrective advertising and removal of all false or misleading advertisements;

   f. For an accounting of all damages sustained by 10x as the result of the acts of Celsee as alleged herein;

   g. For the award to 10x of damages so ascertained, together with pre-judgment interest as provided by law;

   h. For the award to 10x of Celsee's profits, gains, and advantages derived from Celsee's unlawful conduct;

   i. For entry of judgment that Celsee's infringement is willful, and for an award of treble damages pursuant to 35 U.S.C. § 284;

   j. For judgment that this case is exceptional, and for an award of all costs, disbursements, and attorneys' fees pursuant to 35 U.S.C. § 285; and

   k. For such other and further legal and/or equitable relief as the Court shall deem just and proper.

              /s/ Frederick L. Cottrell, III
              Frederick L. Cottrell, III (#2555)
              Jason J. Rawnsley (#5379)
              Alexandra M. Ewing (#6407)
              RICHARDS, LAYTON & FINGER, P.A.
              920 North King Street
              Wilmington, DE 19801
              (302) 651-7700
              cottrell@rlf.com
              rawnsley@rlf.com
              ewing@rlf.com

Dated: May 8, 2019         *Attorneys for Plaintiff 10X Genomics, Inc.*