# UNITED STATES DISTRICT COURT
## THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10x GENOMICS, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 19-cv-862-CFC |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| CELSEE, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## CELSEE'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AND MOTION TO STRIKE 10x GENOMICS' COMPLAINT

Dated: July 1, 2019

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Randi Singer (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8152

*Attorneys for Defendant*

## TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ..........................................1

II.    SUMMARY OF THE ARGUMENT ..............................................................1

III.    STATEMENT OF FACTS ............................................................................2

IV.    LEGAL STANDARDS ................................................................................4

    A.    Legal Standard To Strike Claims Under Rule 12(f) ...............................4

    B.    Legal Standard For Motion To Dismiss Under Rule 12(b)(6)................5

V.    ARGUMENT ..............................................................................................5

    A.    10x's Irrelevant Allegations Insinuating Trade Secret Misappropriation Should Be Stricken Pursuant to Rule 12(f)................................................5

    B.    10x's False Advertising Claim Should Be Dismissed .............................8

    C.    10x's Claims Under Delaware's DTPA Should Be Dismissed ...........................11

    D.    10x's Contributory Patent Infringement Claims Should Be Dismissed ...............12

    E.    10x's Inducement Patent Infringement Claim Should Be Dismissed...................13

    F.    10x's Direct Infringement Allegation For Method Claims Should Be Dismissed........................................................................................14

    G.    10x's Willfulness Allegations Should Be Stricken or Dismissed.........................15

VI.    CONCLUSION...........................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Johnson*,
    355 F.3d 1179 (9th Cir. 2004) ............................................10

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
    620 F. App'x 934 (Fed. Cir. 2015) ......................................12

*AgroFresh Inc. v. Essentiv LLC*,
    No. 16-662-MN-SRF, 2018 WL 6974947 (D. Del. Dec. 27, 2018) ..................12, 14

*Artrip v. Ball Corp.*,
    735 F. App'x 708 (Fed. Cir. 2018) ......................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009).................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007)...............................................5, 11

*Bio-Rad Laboratories, Inc. et al v. 10X Genomics Inc.*,
    Case 1:15-cv-00152-RGA ................................................2

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
    627 F. Supp. 2d 384 (D.N.J. 2009) .....................................11

*Carone v. Whalen*,
    121 F.R.D. 231 (M.D. Pa. 1988).........................................4

*Castrol Inc. v. Pennzoil Co.*,
    799 F. Supp. 424 (D.N.J. 1992), *aff'd*, 987 F.2d 939 (3d Cir. 1993)..................10

*Castrol Inc. v. Pennzoil Co.*,
    987 F.2d 939 (3d Cir. 1993)...........................................8, 9

*Delaware Health Care v. MCD Holding Co.*,
    893 F. Supp. 1279 (D. Del. 1995).......................................4, 6

*Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
    No. 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018) ............................14

*Elec. Scripting Prods., Inc. v. HTC Am. Inc.*,
    No. 17-CV-05806-RS, 2018 WL 1367324 (N.D. Cal. Mar. 16, 2018) ............16, 17

*FMC Corp. v. Summit Agro USA, LLC*,
    No. 14-51-LPS, 2014 WL 6627727 (D. Del. Nov. 14, 2014)............................................11, 12

*Forestieri v. Wendover, Inc.*,
    No. 18-1171(MN), 2019 WL 1786042 (D. Del. Apr. 24, 2019) ...........................................5, 9

*Genter v. Allstate Prop. & Casualty Ins. Co.*,
    No. 11cv0709, 2011 WL 2533075 (W.D. Pa. June 24, 2011) ..................................................5

*Giuliani v. Polysciences, Inc.*,
    275 F. Supp. 3d 564 (E.D. Pa. 2017) .................................................................................6, 7

*Jenkins v. LogicMark, LLC*,
    No. 3:16-CV-751-HEH, 2017 WL 376154 (E.D. Va. Jan. 25, 2017)....................................17

*Kimberly-Clark Worldwide, Inc. v. Cardinal Health 200, LLC*,
    No. 11-1228-RGA, 2012 WL 3063974 (D. Del. July 27, 2012) ...........................................11

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
    C.A. No. 08-234 (GMS), 2009 WL 3738306 (D. Del. Nov. 9, 2009) ....................................10

*Life Flight Network, LLC v. Metro Aviation, Inc.*,
    No. 3:17-CV-00028-AC, 2017 WL 3388175 (D. Or. Aug. 7, 2017).......................................5

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017)............................................................................................13

*Lippert Components Mfg., Inc. v. MOR/ryde, Inc.*,
    No. 3:16-CV-263 RLM-MGG, 2018 WL 345767, at *2 (N.D. Ind. Jan. 10,
    2018) ...............................................................................................................................13, 16

*Luxul Tech. Inc. v. Nectarlux*,
    LLC, 78 F. Supp. 3d 1156 (N.D. Cal. 2015)........................................................................10

*Max Daetwyler Corp. v. Input Graphics, Inc.*,
    608 F. Supp. 1549 (E.D. Pa. 1985) .......................................................................................8

*Meyer Intellectual Properties Ltd. v. Bodum, Inc.*,
    690 F.3d 1354 (Fed. Cir. 2012)............................................................................................15

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
    653 F.3d 241 (3d Cir. 2011)...................................................................................................8

*Philips v. ASUSTeK Computer Inc*,
    No. CV 15-1125-GMS, 2016 WL 6246763 (D. Del. Oct. 25, 2016) .....................................13

*Robert Bosch LLC v. Pylon Mfg Corp.*
    632 F. Supp. 2d 362 (D. Del. 2009).......................................................................................8

*Scripps Research Inst. v. Illumina, Inc.*,
    No. 16-CV-661 JLS (BGS), 2016 WL 6834024 (S.D. Cal. Nov. 21, 2016) ..........................16

*Smith v. Giant Eagle*,
    No. 2:10-cv-01644, 2011 WL 1706520 (W.D. Pa. May 4, 2011) ....................................4, 6, 7

*State of Cal. ex rel. State Lands Comm'n v. United States*,
    512 F. Supp. 36 (N.D. Cal. 1981) ..........................................................................................5

*Stiffel Co. v. Westwood Lighting Group*,
    658 F. Supp. 1103 (D.N.J. 1987) ..........................................................................................9

*Symbol Techs., Inc. v. Aruba Networks, Inc.*,
    609 F.Supp.2d 353 (D. Del. 2009)........................................................................................6

*Välinge Innovation AB v. Halstead New England Corp.*,
    No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018)....................................16

*Vite Techs., LLC v. Smith & Nephew, Inc.*,
    No. 14-1507-SLR, 2015 WL 4486785 (D. Del. July 23, 2015) ...........................................6, 7

*Zond, LLC v. Renesas Elecs. Corp.*,
    No. 13-11625-NMG, 2014 WL 4161348 (D. Mass. 2014) ...................................................16

**Statutes**

35 U.S.C. § 271(a) ...............................................................................................................12

35 U.S.C. § 271(c) ...............................................................................................................12

35 U.S.C. § 284.............................................................................................................15, 17

Delaware Deceptive Trade Practices Act ("DTPA").....................................................1, 2, 11, 12

15 U.S.C. § 1125 ........................................................................................................ *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .......................................................................1, 5, 8, 13

Federal Rule of Civil Procedure 12(f) ............................................................................1, 4, 5, 7

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff 10x Genomics, Inc. ("10x") filed its complaint against Defendant Celsee, Inc. ("Celsee") on May 8, 2019, alleging patent infringement, unfair competition under the Lanham Act, and violations of the Delaware Deceptive Trade Practices Act. D.I. 1. Celsee moves to strike the allegations in paragraphs 21 through 24 of the complaint as immaterial, impertinent, and scandalous pursuant to Federal Rule of Civil Procedure 12(f), and to dismiss 10x's claims under the Lanham Act and the Delaware Deceptive Trade Practices Act ("DTPA") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Celsee further moves to dismiss 10x's indirect infringement claims, its claims for direct infringement based on incognizable legal theories, and its willful infringement allegations and accompanying request for enhanced damages.

## II.    SUMMARY OF THE ARGUMENT

*First*, Celsee moves to strike allegations in the Complaint that accuse unnamed former 10x employees of supposedly misappropriating confidential 10x information, accuse Celsee of obtaining and using 10x's confidential and proprietary information, and accuse Celsee of copying 10x's job postings for the position of "Protein Engineer."  These allegations are entirely immaterial to the Complaint because 10x does not even purport to state a claim for relief based on these allegations. They are also impertinent and scandalous because they attempt to paint Celsee and its employees in a bad light gratuitously. Insofar as 10x takes the position that these allegations do constitute a claim for relief, they are inadequate and such a claim should be dismissed.

*Second*, Celsee moves to dismiss 10x's Lanham Act claims for failure to state a claim on which relief can be granted. 10x fails to plead a plausible false advertising claim. It fails to credibly allege falsity and that the statement at issue would materially affect the purchase decisions.

**Third**, Celsee moves to dismiss 10x's claim under the DTPA for failure to specify the specific statutory basis for its claim.

**Fourth**, Celsee moves to dismiss 10x's claims for indirect infringement, certain aspects of 10x's claims for direct infringement, and 10x's claims for willful infringement and enhanced damages.  10x's patent infringement pleading is, frankly, sloppy and unthinking. It has utterly failed to plead essential elements of indirect infringement.  For direct infringement, 10x makes the peculiar allegation that Celsee infringes method claims through the manufacture, sale, and importation of its accused product, even though a method claim cannot be directly infringed by such acts. Finally, 10x's willful infringement allegations are threadbare—based on pure speculation and bereft of any supporting factual allegations to plausibly suggest either pre-suit knowledge of the patents-in-suit or the requisite intent for willful infringement.  They epitomize the type of inadequate pleading that *Iqbal* and *Twombly* sought to eliminate.

## III.   STATEMENT OF FACTS

According to the Complaint,[1] 10x markets and sells technology it refers to as the "Chromium product line" that allows researchers to analyze gene activity on a cell-by-cell basis. D.I. 1 ¶¶ 6-8.  10x alleges that it has protected some—but concededly not all—of its products with patents. *Id.* ¶10. Although 10x claims to be an innovator, it has been found in this Courthouse to infringe three patents covering the "droplet" approach to DNA analysis that 10x's products have been using.  *Bio-Rad Laboratories, Inc. et al v. 10X Genomics Inc.*, Case 1:15-cv-00152-RGA. 10x also contends it has confidential information about its products that bears upon this case.  *Id.* ¶¶10-11.

---

[1] For the purposes of this Rule 12 motion only, Celsee's recitation of the facts here tracks the allegations made by 10x in the Complaint and does not reflect agreement with such allegations.

Celsee launched its innovative Genesis System product in 2018. The Genesis System does not use the droplet technology, which has been the basis for 10x's products. The Genesis System enables users to analyze molecular signatures at the single cell level. *Id.* ¶13. Although 10x speculates that Celsee copied its technology, *id.* ¶19, Celsee uses a unique gravity induced micro-well isolation technique that captures individual cells for future analysis that is very different from the droplet approach that has been at the heart of 10x's Chromium Product Line. D.I. 1-10 at pp. 5-6.

The Genesis System allows users to study millions of cells per experiment, facilitating analysis of previously undetectable or rare cells. D.I. 1-11 at p. 3. After a cell is captured and isolated, it is paired with a unique cellular barcode and unique molecular indices for applications such as gene expression or protein quantitation. D.I. 1 ¶14. This dual tagging allows the user to track a molecule of interest and the cell of origin of that molecule. The user can therefore detect and quantify the level of the molecule of interest in single cells by sequencing. *Id.* ¶15.

As noted, 10x manufactures, markets, and sells a product based on a completely different type of technology. Rather than using gravity to capture cells in microwells, 10x uses microfluidic droplet technology to capture cells in tiny microscopic volumes of fluid, which 10x refers to as "GEMs." In 10x's approach, an aqueous solution containing cells is injected by pressure into oil. Because the oil and water do not mix, tiny microscopic droplets of water are formed that contain the cells. 10x seeks to tune its system so that the cells are captured in droplets alongside a bead, which includes various chemical reagents that can be used to conduct reactions with the genetic material of the cell. A side-by-side comparison of Celsee's technology with 10x's technology is shown below, demonstrating just how different the two approaches are:





According to 10x, cell capture rate is a key criterion that customers use to evaluate the performance of single cell systems, and it touts its Chromium platform as having a cell-capture rate of 65%. Id. ¶¶ 26-27.  Celsee states its Genesis System can have "greater than 70 capture of input cells."  Id. ¶28.  10x asserts capture rate for cells is "a measure of the percentage of input cells that are assayed in each experimental run." D.I. 1 at ¶26.

## IV.   LEGAL STANDARDS

### A.   Legal Standard To Strike Claims Under Rule 12(f)

Under Fed. R. Civ. P. 12(f), courts can "strike from a pleading" any "immaterial, impertinent, or scandalous matter." *Delaware Health Care v. MCD Holding Co.*, 893 F. Supp. 1279, 1291-92 (D. Del. 1995) (citing Fed. R. Civ. P. 12(f)).  Courts define immaterial matter as "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Id*. (citation omitted). Impertinent matter includes statements that do not pertain, and are not necessary to the issues in question. *Id.* A "'scandalous' matter or pleading is one that casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court." *Smith v. Giant Eagle*, No. 2:10-cv-01644, 2011 WL 1706520, at *4 (W.D. Pa. May 4, 2011) (citing *Carone v. Whalen*, 121 F.R.D. 231, 232 (M.D. Pa. 1988)).

In addition, "a court will grant a motion to strike when it has the 'effect of making the trial of the action less complicated' or results in 'streamlining the ultimate resolution of the action.'" *Life Flight Network, LLC v. Metro Aviation, Inc.*, No. 3:17-CV-00028-AC, 2017 WL 3388175, at *3 (D. Or. Aug. 7, 2017) (citing *State of Cal. ex rel. State Lands Comm'n v. United States*, 512 F. Supp. 36, 38 (N.D. Cal. 1981)); *see also Genter v. Allstate Prop. & Casualty Ins. Co.*, No. 11cv0709, 2011 WL 2533075, at *2 (W.D. Pa. June 24, 2011) ("Rule 12(f) allows the Court to 'clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters that will not have any possible bearing on the outcome of the litigation.'").

### B.      Legal Standard For Motion To Dismiss Under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The [c]ourt is not obligated to accept bald assertions or unsupported conclusions" as true where plaintiff has not stated "enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element of a plaintiff's claim." *Forestieri v. Wendover, Inc.*, No. 18-1171(MN), 2019 WL 1786042 at *2 (D. Del. Apr. 24, 2019) (internal quotations and citations omitted).

## V.      ARGUMENT

### A.      10x's Irrelevant Allegations Insinuating Trade Secret Misappropriation Should Be Stricken Pursuant To Rule 12(f)

The "function of a 12(f) motion to strike is to avoid expenditure of time and money that necessarily arises from litigating spurious issues by disposing of those issues prior to trial."

*Delaware Health Care, Inc. v. MCD Holding Company*, 893 F. Supp. 1279, 1291 (D. Del. 1995). Courts in this circuit have granted motions to strike for immateriality and impertinence where a party includes allegations under theories that bear no connection to the allegations brought by that party. *See, e.g.*, *Giuliani v. Polysciences, Inc.*, 275 F. Supp. 3d 564, 574 (E.D. Pa. 2017) (striking plaintiff's allegations relating to "instances where defendant chose not to do business with or to patronize certain individuals/businesses due to their political and moral stances" because they did not relate to the age discrimination claims at issue).

Motions to strike are granted where, as here, "the presence of the surplusage will prejudice the adverse party." *Vite Techs., LLC v. Smith & Nephew, Inc.*, No. 14-1507-SLR, 2015 WL 4486785 at *2 (D. Del. July 23, 2015)(citing *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F.Supp.2d 353, 359 (D. Del. 2009)); *see also, Smith*, 2011 WL 1706520, at *5 (striking paragraphs relating to insurance fraud in plaintiff's complaint because they "contain statements that do not pertain, and are not necessary to the issues in question, namely age and gender claims.").

Here, 10x's Complaint includes numerous speculative and scurrilous allegations unrelated to the claims for relief that are pled. Essentially, 10x attempts to include allegations of wrongdoing even though it does not attempt to include them as viable claims for relief:

- 10x complains that Celsee has aggressively recruited its employees, but fails to include allegations establishing when, how or why this occurred or that there would be anything wrong with it. D.I. 1 ¶¶20-24.

- 10x complains that Celsee employees who formerly worked for 10x copied confidential 10x material before leaving 10x and brought the information to Celsee without alleging trade secrets were misappropriated. *See* D.I. 1 ¶¶21-23.

- 10x oddly alleges that Celsee job postings were supposedly similar to 10x's job postings without explaining what that has to do with the actual claims for relief it includes in this case such as alleged patent infringement or false advertising. *Id.* ¶24.

These allegations should be stricken because they insinuate wrongdoing, but are not the basis for the claims for relief. In *Smith*, the court struck allegations relating to insurance fraud as immaterial, finding "they have no essential or important relationship to the claims for relief, are impertinent as they contain statements that do not pertain, and are not necessary to the issues in question, namely age and gender claims." *Smith,* 2011 WL 1706520 at *5.

Courts in the Third Circuit have also stricken allegations that are "scandalous" where they reflect a party to the action in a derogatory light and add nothing of value to the pleadings. *See Vite Techs., LLC v. Smith & Nephew, Inc.*, 2015 WL 4486785 at *2 (striking claims in defendant's pleading related to disciplinary action taken against the plaintiff and her billing practices because it was an intentional effort to cast the [plaintiff] in a "derogatory light" at the outset of the case that added nothing of value to defendant's patent allegations); *Smith*, 2011 WL 1706520 at *4 (striking insurance fraud claims that improperly shed a derogatory light on defendant).

The allegations in paragraphs 21-24 of the complaint cast a derogatory light on Celsee and its employees. In *Giuliani*, the court struck allegations relating to discrimination against individuals in protected classes to which plaintiff did not belong because they were not probative of plaintiff's claim and "would do nothing more than prejudicially paint defendant as a generally discriminatory and morally deficient employer." *Giuliani*, 275 F.Supp.3d at 574. Similarly, none of the allegations in paragraphs 21 through 24 adds anything of value to 10x's claims–they are merely an attempt to cast a derogatory light on Celsee. As in *Giuliani*, they "involve forays into immaterial matters that may cause prejudice to one of the parties or otherwise confuse the issues in the case." *Id.* (internal quotations omitted). Paragraphs 21 through 24 should be stricken under Federal Rule of Civil Procedure 12(f).

Insofar as 10x attempts to argue in its opposition that it has pled trade secret misappropriation or copyright infringement, it has not come to close to setting forth the elements of any such claim as explained above.   They should be dismissed under Rule 12(b)(6).   Indeed, it labels its causes of action in its complaint and does not include any such claims under those headings and it seeks no relief related to any such claims.

## B.      10x's False Advertising Claim Should Be Dismissed

In the Third Circuit, a plaintiff who makes a false advertising claim under the Section 43(a) Lanham Act, 15 U.S.C. §1125(a),  must prove: "1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods travelled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc*., 653 F.3d 241, 248 (3d Cir. 2011). 10x has failed to adequately allege the requisite elements.

To prevail on its Lanham Act claim, a plaintiff must demonstrate that the challenged statements are either "false on [their] face" or "literally true, but given the merchandising context, [] nevertheless [] likely to mislead and confuse consumers." *Castrol Inc. v. Pennzoil Co*., 987 F.2d 939, 943 (3d Cir. 1993) (internal quotations and citation omitted). To survive a motion to dismiss, a complaint alleging false advertising under the Lanham Act must include "sufficiently detailed allegations regarding the nature of the alleged falsehood." *Robert Bosch LLC v. Pylon Mfg Corp.* 632 F. Supp. 2d 362, 365 (D. Del. 2009) (citing *Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F. Supp. 1549, 1556 (E.D. Pa. 1985)).

Here, 10x has not plausibly pled that Celsee's statements are false or misleading.   For example, 10x takes issue with Celsee's tagline, "Because every cell matters."   D.I. 1 ¶28.

However, this slogan is archetypal "puffery" – the sort of statement that is simply not susceptible of being proven true or false.  *See Castrol*, 987 F.2d at 945 (noting that because puffery is distinguishable from misdescriptions or false representations it is not actionable under the Lanham Act) (citing *Stiffel Co. v. Westwood Lighting Group*, 658 F. Supp. 1103, 1115 (D.N.J. 1987)).  Similarly, 10x challenges "advertising" in the form of general statements in brochures that Celsee's product offers a deep and accurate view of cell populations with a greater than 70% capture of input cells.  D.I. 1 ¶ 29.  This high-level bullet point does not specify what parameters would be used to calculate the 70%, much less how the calculation would be performed or under what conditions.  10x's allegation that Celsee's statement is false is apparently dependent on the relevant audience necessarily *assuming* that Celsee is reporting the percentage of input cells that are "assayed" in each experimental run compared to cells input at some point in the process.  However, 10x never alleges that the relevant audience would make such an assumption about the specifics of the 70% number in Celsee's promotional literature, much less does 10x establish plausibly why and how the relevant audience would make such a definitive assumption about how Celsee arrives at the 70%.  For example, 10x does not establish that the relevant audience would know specifically which cells would be captured in what way to reach 70% in experiments.

Courts should not accept "bald assertions" and "unsupported conclusions" as true where there are no relevant facts to support plaintiff's allegations.  *Forestieri*, 2019 WL 1786042 at *2.  10x's failure to allege that the relevant audience would know specifically what Celsee was measuring with its 70% "capture of input cells" is understandable.  10x acknowledges that this is an "emerging field," D.I. 1 ¶ 9 and that single cell genomics is a "2018 Breakthrough of the Year." *Id.*  With single-cell technology in its nascent stages, 10x has not identified what basis there would be to have an industry-standard quotient for "capture of input cells" that would necessarily be

9

understood to apply to Celsee's product and to all the different single-cell systems on the market and their different applications.  In other words, 10x did not allege that there is a standard calculation method that would be known to the relevant audience for "capture of input cells" because it apparently cannot identify any basis in technical dictionaries, industry standards, textbooks or periodicals to show that there is such a standard.  *See Castrol Inc. v. Pennzoil Co.*, 799 F. Supp. 424, 436 (D.N.J. 1992), *aff'd*, 987 F.2d 939 (3d Cir. 1993) (plaintiff bears the burden of proving the existence of an industry standard to the show the falsity of the disputed claims).

In addition, 10x's allegation of materiality is not sufficient to survive a 12(b)(6) motion to dismiss. The allegation is little more than a formulaic recitation of the materiality element of a false advertising claim without any supporting facts. 10x makes a conclusory assertion that Celsee's false advertising is material because "cell capture rate is an important criterion of system performance and efficiency." D.I. 1 ¶ 84. Such "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Luxul Tech. Inc. v. Nectarlux,* LLC, 78 F. Supp. 3d 1156, 1173 (N.D. Cal. 2015) (citing *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)); *see also LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, C.A. No. 08-234 (GMS), 2009 WL 3738306 (D. Del. Nov. 9, 2009) (finding formulaic recitations of the elements of the Lanham Act to be inadequate to withstand a motion to dismiss). In *Luxul*, the court concluded that although plaintiff's complaint alleged that defendant made a false statement, the rest of its false advertising allegations were bare recitations of the elements of a false advertising claim. Similarly, 10x's allegations of the materiality of Celsee's alleged false advertising is a bare recitation of an element of a Lanham Act claim.

Further, the idea that researchers purchasing single cell technology would base their purchase decision on a non-specific statement of capture efficiency without understanding fully

what is being measured, and how, is implausible on its face. *See Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 476 (D.N.J. 2009) (noting that courts should consider an audience's sophistication when determining if a message is misleading because a sophisticated, knowledgeable consumer is less likely to be misled). The parties' systems are very sophisticated and sell for tens of thousands of dollars to technologists. It is not plausible to conclude that researchers would make such an expensive purchase based on such a non-specific statement in one bullet. *See Twombly*, 550 U.S. at 547 (denying complaint where plaintiffs failed to nudge their claims from conceivable to plausible).

10x's allegations that Celsee's statements concerning cell captures constitute false advertising is legally insufficient and should be dismissed.

### C.      10x's Claims Under Delaware's DTPA Should Be Dismissed

10x's claims under the Delaware Deceptive Trade Practices Act ("DTPA") should be dismissed because the Complaint does not identify which of the twelve subsections of the DTPA that Celsee has allegedly violated. Courts in Delaware regularly dismiss actions in which a plaintiff has failed to specify which subsections of the DTPA a defendant has violated, finding them "insufficient to give a defendant clear notice of plaintiff's claim."   *FMC Corp. v. Summit Agro USA, LLC*, No. 14-51-LPS, 2014 WL 6627727, at *13 (D. Del. Nov. 14, 2014) ("an appropriately pleaded claim ought to assert, at a minimum, a violation of a particular state's deceptive trade practices act, including allegations of which subsection is violated") (internal quotations omitted); *Kimberly-Clark Worldwide, Inc. v. Cardinal Health 200, LLC,* No. 11-1228-RGA, 2012 WL 3063974, at *4 (D. Del. July 27, 2012) (dismissing counterclaim under the DTPA where counterclaim-plaintiff failed to specify which sections had been violated).  In order to survive a motion to dismiss, the plaintiff should clearly assert which of the subsections of the Act are alleged

to be violated, and clearly identify the facts pleaded that are said to make out a plausible claim as to the requirements of each particular subsection. *FMC Corp.*, 2014 WL 6627727, at *13.

Here, 10x's Complaint fails to point to *any* relevant subsection of the DTPA. *See generally* D.I. 1. Accordingly, 10x's claims under the DTPA should be dismissed in their entirety.

### D.   10x's Contributory Patent Infringement Claims Should Be Dismissed

"To survive a motion to dismiss, a plaintiff alleging contributory infringement must plausibly allege that the accused infringer knew of the asserted patents, and must 'plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses.'" *Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018) (internal citations omitted).

The only thing 10x's complaint says about contributory infringement, however, is that through "the development and subsequent making, using, selling, offering for sale, and/or importing of its single cell analysis platform, the Genesis System, and associated accessories and reagents, Celsee has and continues directly to infringe, contributorily infringe, and/or induce the infringement of" the patents-in-suit. D.I. 1 ¶ 35. This is nothing more than a recitation of the different ways one can directly infringe under 35 U.S.C. § 271(a). 10x utterly fails to address the actual legal requirements for contributory infringement under § 271(c).

As to the requirement that there be no substantial non-infringing uses, 10x does not even include a conclusory recitation of this critical element, let alone allege specific facts. This alone warrants dismissal. *See Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) (affirming dismissal where the "Original Complaint contains no allegations regarding substantial non-infringing uses"); *AgroFresh Inc. v. Essentiv LLC*, No. 16-662-MN-SRF, 2018 WL 6974947, at *6 (D. Del. Dec. 27, 2018) ("Moreover, the FAC fails to sufficiently allege that TruPick has no substantial non-infringing use. Courts within this district have held that reciting this element of the cause of action, without more, is not sufficient to survive a motion to

dismiss under Rule 12(b)(6)."); *Philips v. ASUSTeK Computer Inc*, No. CV 15-1125-GMS, 2016 WL 6246763, at *4 (D. Del. Oct. 25, 2016) ("Philips, however, provides no facts supporting the inference that the Accused Functionalities have no substantial non-infringing use beyond the assertion that 'upon information and belief…the only use for the [ ] Accused Functionality is infringing the patent' and that the 'Defendants know' this. This is insufficient….") (internal citations omitted).

Likewise, as to knowledge of the patents-in-suit, the only allegations 10x makes appear to be related to willfulness, not contributory infringement. Regardless, 10x at most states "On information and belief, Celsee regularly monitors 10x's patent portfolio and is aware of the asserted patents." *See* D.I. 1 ¶¶ 41, 50, 59, 68, 77. 10x makes the same conclusory allegation for each of the patents-in-suit, with no supporting facts or distinguishing information for the individual patents. This is insufficient, and is nothing more than an improper attempt to allege pre-suit knowledge based on speculation. *See, e.g.*, *Lippert Components Mfg., Inc. v. MOR/ryde, Inc.*, No. 3:16-CV-263 RLM-MGG, 2018 WL 345767, at *2 (N.D. Ind. Jan. 10, 2018) (dismissing claim for indirect infringement where allegations of knowledge were based on "information and belief" that accused infringer knew of patents by virtue of status as industry competitor that would monitor patents).

Because 10x has failed to properly plead the basic elements of contributory infringement, its claims for contributory infringement should be dismissed.

### E.    10x's Inducement Patent Infringement Claim Should Be Dismissed

"For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement." *Lifetime*

*Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (internal quotations and citations omitted).

10x's inducement claim is just as defective as its contributory infringement claim. Indeed, the only mention of inducement in 10x's entire complaint comes in paragraph 35, where 10x alleges that Celsee induces by "making, using, selling, offering for sale, and/or importing" its products. This vague, scattershot allegation is insufficient.

First, 10x makes no allegation of underlying direct infringement by a third party. In other words, 10x does not identify anyone that Celsee has allegedly induced. For this reason alone, 10x's inducement claim must be dismissed. *See AgroFresh*, 2018 WL 6974947, at *5 ("I recommend that the court grant Decco's motion to dismiss AgroFresh's causes of action for induced infringement because the FAC does not adequately plead an act of direct infringement by a third-party customer."). Second, there is no allegation whatsoever regarding the particularized intent required to induce infringement. *See Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. 18-098 (MN), 2018 WL 6629709, at *5 (D. Del. Dec. 19, 2018) ("Because the First Amended Complaint does not plausibly allege that Defendants possess the requisite knowledge and specific intent to induce infringement, Plaintiff has failed to state a claim of inducement for the Patents-in-Suit."). Finally, as documented above, 10x fails to sufficiently allege pre-suit knowledge of the patents-in-suit. *See supra* Part V.D.

Because 10x's complaint is bereft of any allegations directed to the required elements of inducement, 10x's claims for inducement should be dismissed.

## F.    10x's Direct Infringement Allegation For Method Claims Should Be Dismissed

With the exception of the claims of the '648 patent, every other claim in the asserted patents is a method claim. *See* D.I. 1-1, D.I. 1-3, D.I. 1-5. Such claims can be infringed only by

performance of the claimed method.  *See, e.g.*, *Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012) ("Where, as here, the asserted patent claims are method claims, the sale of a product, without more, does not infringe the patent.  Instead, direct infringement of a method claim requires a showing that every step of the claimed method has been practiced.") (internal quotations and citations omitted).

Yet, for each of the patents that contain only method claims, 10x strangely alleges that Celsee directly infringes by "***making***, using, ***selling***, and ***offering for sale***" its products.  *See* D.I. 1 ¶¶ 39, 47, 56, 65, 74 (emphasis added).  Likewise, 10x makes a blanket allegation that Celsee infringes each of the patents-in-suit by "importing" its products.  *See id.* ¶ 35.  10x's pleading, however, offers no explanation for how one can infringe ***method*** claims by making, selling, offering for sale, or importing products.  Insofar as 10x's pleading is based on theories of direct infringement that are inapplicable to method claims, it should be dismissed.

### G.	10x's Willfulness Allegations Should Be Stricken Or Dismissed

For each of the five patents-in-suit, 10x's willful infringement allegations are included in just two conclusory paragraphs that are virtually identical for each of the patents-in-suit and that include no factual support whatsoever.  10x's allegations for the '981 patent, for instance, are as follows:

> 41.	On information and belief, Celsee regularly monitors 10x's patent portfolio and is aware of the asserted patents.

> 42.	The infringement of the '981 Patent by Celsee is willful and deliberate. On information and belief, at least as of December 18, 2018 if not earlier, Celsee knew or should have known that its making, using, selling, offering to sell, and/or importing the Genesis System and its associated accessories and reagents, does and will constitute an unjustifiably high risk of infringement of the '981 Patent. Such conduct constitutes, at minimum, willful infringement of the '981 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

D.I. 1 ¶¶ 41-42.  These allegations are insufficient to state a claim for willful infringement.

First, 10x's allegations of pre-suit knowledge based on "information and belief" that Celsee "monitors" 10x's patent filings are nothing but speculation.   If 10x had anything more than speculation, it would not make the same boilerplate allegation for each of the patents-in-suit.   Such threadbare speculative allegations based on nothing but "information and belief" are insufficient under *Iqbal* and *Twombly*.   *See, e.g.*, *Elec. Scripting Prods., Inc. v. HTC Am. Inc.*, No. 17-CV-05806-RS, 2018 WL 1367324, at *6 (N.D. Cal. Mar. 16, 2018) ("Nor are ESPI's allegations regarding 'defendant's exercise of due diligence pertaining to intellectual property affecting its Devices,' *id.* ¶ 13, sufficient to establish knowledge."); *Scripps Research Inst. v. Illumina, Inc.*, No. 16-CV-661 JLS (BGS), 2016 WL 6834024, at *7 (S.D. Cal. Nov. 21, 2016) (dismissing willful infringement where pre-suit knowledge allegations were based "in information and belief" that defendant was aware of patents-in-suit by virtue of having licensed other patents from the same inventor); *Zond, LLC v. Renesas Elecs. Corp.*, No. 13-11625-NMG, 2014 WL 4161348, *5-6 (D. Mass. 2014) (dismissing willful infringement allegation based on "information and belief" that accused infringer learned of patent through tradeshow attendance, explaining that "sparse and speculative allegations are insufficient to state a claim to relief under the pleading standard articulated in *Twombly* and *Iqbal*"); *Lippert Components*, 2018 WL 345767, at *2 (finding insufficient pre-suit knowledge allegations based on "information and belief" that accused infringer knew of patents by virtue of status as industry competitor that would monitor patents).

Second, given 10x's deficient pleading of pre-suit knowledge, its attempt to plead the requisite intent and conduct for willfulness is also deficient.   *See, e.g.*, *Välinge Innovation AB v. Halstead New England Corp.*, No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018) (It "stands to reason that there must be some other factual allegations that go to the accused infringer's subjective intent to infringe—i.e., that plausibly demonstrate that the accused

infringer not only knew of the patent-in-suit, but also knew or should have known that what it was doing (and what it continued to do) amounted to infringement of that patent. This will necessarily require an assessment of the totality of the patentee's allegations….").

Here, 10x's pleadings contain no facts to support such an assertion and simply parrot the legal standard for willful infringement. *See* D.I. 1 ¶¶ 42, 51, 60, 69, 78. This is insufficient. *See, e.g.*, *Elec. Scripting*, 2018 WL 1367324, at *7 ("ESPI must provide factual allegations that are specific to HTC's conduct and do not merely recite the elements of the statutory violations, but rather provide factual material that puts HTC on notice of its allegedly unlawful actions."); *Jenkins v. LogicMark, LLC*, No. 3:16-CV-751-HEH, 2017 WL 376154, at *5 (E.D. Va. Jan. 25, 2017) ("The Court finds that this mere recitation of elements fails to meet the mark.").

Because 10x's willful infringement allegations are insufficiently pleaded, they should be stricken and/or dismissed along with 10x's request for treble damages pursuant to 35 U.S.C. § 284.

## VI.   CONCLUSION

For the foregoing reasons, the court should strike paragraphs 21-24 from the Complaint, dismiss 10x's claims under the Lanham Act and Delaware Trade Practices Act, dismiss 10x's contributory infringement claims, dismiss 10x's inducement claims, dismiss 10x's direct infringement claims insofar as they are based on incognizable legal theories, and dismiss or strike 10x's willful infringement allegations and request for enhanced damages.

Dated: July 1, 2019

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000

Randi Singer (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8152

*Attorneys for Defendant*