# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 10x GENOMICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-862-CFC-SRF |
| | ) | |
| CELSEE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

Presently before the court in this patent infringement action is defendant Celsee, Inc.'s ("Celsee") combined partial motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and motion to strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. (D.I. 11) Plaintiff 10x Genomics, Inc. ("10x") opposes the motion. (D.I. 13) For the following reasons, I recommend that the court deny Celsee's motion to strike, grant-in-part Celsee's motion to dismiss,[1] and grant 10x's request for leave to amend.[2]

## II. BACKGROUND[3]

10x filed this patent infringement suit on May 8, 2019, alleging infringement of United States Patent Nos. 10,155,981 ("the '981 patent"), 10,227,648 ("the '648 patent"), 10,240,197 ("the '197 patent"), 10,273,541 ("the '541 patent"), and 10,280,459 ("the '459 patent")

---

[1] The briefing for the pending motion is as follows: Celsee's opening brief (D.I. 12), 10x's answering brief (D.I. 13), and Celsee's reply brief (D.I. 14).

[2] In its briefing and at oral argument, 10x requested leave to amend as an alternative basis for relief in the event that the court grants Celsee's motion to dismiss. (D.I. 13 at 20; 10/2/19 Tr. at 59:9-11) The case is in its early stages, and the Rule 16 scheduling conference is scheduled to go forward on November 5, 2019. Therefore, leave to amend is appropriate at this stage.

[3] The facts in this section are based upon allegations in the complaint, which the court accepts as true for the purposes of the present motion to dismiss. *See Umland v. Planco Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

(collectively, the "patents-in-suit"). (D.I. 1 at ¶ 35) 10x is a life sciences technology company that markets and sells its Chromium product line, which provides researchers with the ability to measure gene activity on a cell-by-cell basis for large numbers of cells in a single experiment. (D.I. 1 at ¶¶ 6-8) 10x launched its Chromium product line in early 2016, after launching its predecessor product, GemCode, in February 2015. (*Id.* at ¶ 7)

About three years after 10x launched the Chromium product line, Celsee introduced the Genesis System. (*Id.* at ¶¶ 12, 19) The Genesis System is designed to capture and isolate single cells, which are then paired with a unique cellular barcode and unique molecular indices for applications such as gene expression or protein quantitation, allowing the user to track a molecule and the cell of origin for that molecule. (*Id.* at ¶¶ 14-15) The complaint alleges that Celsee copies 10x's technology and business plans, makes false and misleading comparisons between Celsee's Genesis System and 10x's Chromium product line undercuts 10x's pricing, and recruits 10x personnel to join Celsee. (*Id.* at ¶¶ 20-24)

## III.   LEGAL STANDARDS

### A.  Rule 12(f)

Rule 12(f) permits "[t]he court [to] strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "When ruling on a motion to strike, the [c]ourt must construe all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under law. Further, a court should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent." *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 356 (D. Del. 2009) (internal citations and quotation marks omitted). "A decision to grant or deny a motion to strike a pleading is vested in the trial court's discretion." *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 764 (D. Del. 2012)

(internal citations and quotation marks omitted). "As a general matter, motions to strike under Rule 12(f) are disfavored." *Fesnak & Assocs., LLP v. U.S. Bank Nat'l Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010).

### B. Rule 12(b)(6)

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir.

2008) (quoting *Twombly*, 550 U.S. at 556).  The court's analysis is a context-specific task

requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. 663-

64.

## IV.    ANALYSIS

### A. Allegations of Copying

By way of its motion, Celsee seeks to strike paragraphs 20-24 of 10x's complaint, which

describe Celsee's alleged efforts to recruit 10x employees who bring with them proprietary

information regarding 10x's technology and business plans.  (D.I. 12 at 6-7)  Celsee contends

that these paragraphs of the complaint contain "speculative and scurrilous" allegations that

Celsee recruited 10x's employees, acquired confidential 10x material, and copied 10x's job

postings, which are unrelated to the pleaded claims.  (D.I. 12 at 6-7)  Celsee contends that these

allegations cast Celsee and its employees in a derogatory light, without adding value to the

asserted causes of action.  (*Id.* at 7)  Celsee does not move to strike any affirmative defenses.

In response, 10x concedes that it does not assert causes of action for trade secret

misappropriation or copyright infringement.  (D.I. 13 at 5-6)  Nonetheless, 10x contends that

allegations of Celsee's wholesale copying of 10x's business and technology are relevant to the

issues of induced infringement, willful infringement, and secondary considerations of non-

obviousness because they demonstrate Celsee's "corporate culture" of copying.  (*Id.*)  10x

further alleges that the allegations are relevant to the cause of action for false advertising, which

purportedly has its roots in Celsee's efforts to poach 10x's employees and copy its job

advertisements.  (*Id.* at 6)

I recommend that the court deny Celsee's motion to strike the complaint's allegations

that Celsee recruited 10x's employees, acquired confidential 10x material, and copied 10x's job

postings. (D.I. 1 at ¶¶ 20-24) The complaint alleges that Celsee's business model is structured

to capture market share and divert business from 10x "by copying 10x's technology and business

plans, making false and misleading comparisons between Celsee's product and 10x's, and

undercutting 10x on price." (*Id.* at ¶ 20) The complaint further states that "Celsee has been

recruiting 10x personnel to join Celsee," and provides examples of "former 10x employees

[who] copied confidential 10x information shortly before they left 10x and went to Celsee." (*Id.*

at ¶¶ 21-23) The complaint also provides examples of "Celsee resort[ing] to copying 10x job

postings verbatim." (*Id.* at ¶ 24) Although these factual allegations could theoretically support a

cause of action such as trade secret misappropriation[4] or copyright infringement,[5] which are not

asserted in the complaint as pleaded, the allegations provide relevant background for a number of

causes of action which are pleaded in the complaint, including induced infringement, willful

infringement, and the invalidity defense of non-obviousness.[6]

---

[4] "To prevail on a claim of trade secret misappropriation under the Delaware Uniform Trade Secrets Act, a plaintiff must show the following elements: '[T]he [a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means' or, alternatively, the '[d]isclosure or use of a trade secret of another without express or implied consent' by a person who either: (1) acquired the secret by improper means; (2) knew or had reason to know that their knowledge of the trade secret was (A) derived by another who acquired it by improper means, (B) '[a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use,' or (C) acquired by accident or mistake." *Mattern & Assocs., L.L.C. v. Seidel*, 678 F. Supp. 2d 256, 269 (D. Del. 2010) (quoting *Accenture Global Servs. GmbH v. Guidewire Software, Inc.*, 581 F. Supp. 2d 654, 662 (D. Del. 2008) (quoting 6 *Del. C.* § 2001(2))).

[5] "[C]opying may be proved inferentially by showing that the defendant had access to the allegedly infringed copyrighted work and that the allegedly infringing work is substantially similar to the copyrighted work." *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1231-32 (3d Cir. 1986).

[6] The challenged allegations do not directly support a cause of action for false advertising because they focus on the alleged infringer's copying of 10x's technology and business model, and they do not address false or misleading statements about the accused Genesis System or 10x's Chromium product line. (D.I. 1 at ¶¶ 20-24) Instead, allegations regarding consumer deception and reliance are found elsewhere in the pleading, as discussed in more detail at § IV.B,

First, the challenged allegations support 10x's cause of action for induced infringement,

which requires a showing that "the accused inducer took an affirmative act to encourage

infringement with the knowledge that the induced acts constitute patent infringement." *Astornet*

*Techs. Inc. v. BAE Sys., Inc.*, 802 F.3d 1271, 1279 (Fed. Cir. 2015) (quoting *Info-Hold, Inc. v.*

*Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015)). The Federal Circuit has held that evidence

of an accused infringer's "reverse engineering and copying" of a patentee's products may

establish "a corporate culture of copying" in connection with the knowledge requirement of a

claim for induced infringement. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l,*

*Inc.*, 843 F.3d 1315, 1333 (Fed. Cir. 2016). The complaint alleges that "Celsee's entire business

model is aimed at capturing market share and diverting business from 10x by copying 10x's

technology and business plans." (D.I. 1 at ¶ 20) In furtherance of these goals, the complaint

alleges that Celsee recruits 10x employees who bring confidential information from 10x with

them. (*Id.* at ¶¶ 21, 23) The complaint's description of these affirmative acts supports 10x's

---

*infra*. (*Id.* at ¶¶ 25-34) However, 10x argues that the challenged allegations lend context to the
statements at issue in the false advertising claim because they show "an overall pattern of
copying our technology, our business plans, our public statements." (10/2/19 Tr. at 50:12-24)
Courts routinely decline to strike factual background information at this stage if the allegations
are generally related to the subject matter of the litigation. *See Advanced Thermal Scis. Corp. v.*
*Applied Materials Inc.*, 2009 WL 10671185, at *3 (C.D. Cal. July 20, 2009) (declining to strike
general factual allegations "because they form part of AMI's basic 'theory of the case,'" and
"[t]he Court cannot say with certainty at this point that these allegations are not relevant to
AMI's permissible counterclaims."); *see also Forschner Grp., Inc. v. B-Line A.G.*, 943 F. Supp.
287, 292 (S.D.N.Y. 1996) (declining to strike "paragraphs provid[ing] background information
on the parties, their business and their relationship to each other."); *XPertUniverse, Inc. v. Cisco*
*Sys., Inc.*, 2017 WL 4551519, at *6 (N.D. Cal. Oct. 11, 2017) (denying motion to strike because
"information regarding the parties' prior relationship provides some useful background to the
present dispute and does not seriously prejudice Cisco's interests."). Regardless, the challenged
allegations are relevant to issues of induced infringement, willful infringement, and non-
obviousness, and they do not unnecessarily cast Celsee in a derogatory light.

claim that Celsee had knowledge of the patents-in-suit and facilitated a "corporate culture of copying."

The challenged allegations also lend factual support to 10x's cause of action for willful infringement and its defense of non-obviousness.[7] *See Viam Mfg., Inc. v. Iowa Exp.-Imp. Trading Co.*, 243 F.3d 558, 2000 WL 1234623, at *3 (Fed. Cir. 2000) (finding no abuse of discretion in district court's allowance of testimony concerning alleged copying of the Spal power windows because "evidence of copying was relevant to the issues of willfulness and obviousness."). The complaint expressly states that Celsee "captur[es] market share and divert[s] business from 10x by copying 10x's technology and business plans," and provides specific examples of how Celsee obtained information regarding 10x's technology and business plans by recruiting former 10x employees who took 10x's confidential information with them. (D.I. 1 at ¶¶ 20-23) The allegations of copying in the complaint are therefore not immaterial to the asserted causes of action.

Rule 12(f) motions are disfavored absent exceptional circumstances. *Fesnak & Assocs., Inc.*, 722 F. Supp. 2d at 502. The challenged allegations in 10x's complaint are provided as background. Courts are generally reluctant to strike factual allegations that offer background and form part of a plaintiff's overall theory of the case. *See Advanced Thermal Scis. Corp. v. Applied Materials Inc.*, 2009 WL 10671185, at *3 (C.D. Cal. July 20, 2009) (declining to strike general factual allegations "because they form part of AMI's basic 'theory of the case,'" and "[t]he Court cannot say with certainty at this point that these allegations are not relevant to

---

[7] "Objective considerations such as failure by others to solve the problem and copying may often be the most probative and cogent evidence of nonobviousness." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1285 (Fed. Cir. 2000) (internal citations and quotation marks omitted).

AMI's permissible counterclaims."); *see also Forschner Grp., Inc. v. B-Line A.G.*, 943 F. Supp. 287, 292 (S.D.N.Y. 1996) (declining to strike "paragraphs provid[ing] background information on the parties, their business and their relationship to each other."); *XPertUniverse, Inc. v. Cisco Sys., Inc.*, 2017 WL 4551519, at *6 (N.D. Cal. Oct. 11, 2017) (denying motion to strike because "information regarding the parties' prior relationship provides some useful background to the present dispute and does not seriously prejudice Cisco's interests."). Celsee has not shown that the allegations are unduly prejudicial. Therefore, I recommend that the court deny Celsee's motion to strike.

### B. False Advertising

Section 43(a) of the Lanham Act provides that

> Any person who . . . in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device . . . which
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person . . . or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her . . . goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). "If a plaintiff proves a challenged claim is literally false, a court may grant relief without considering whether the buying public was misled." *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 92 (3d Cir. 2000) (quoting *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994)). In circumstances where an advertisement may be literally true, but it is likely to mislead and confuse consumers, courts examine the following elements: (1) false or misleading statements

about the defendant's own product or a competitor's product, (2) "actual deception or at least a tendency to deceive a substantial portion of the intended audience," (3) "that the deception is material in that it is likely to influence purchasing decisions," (4) "that the advertised goods traveled in interstate commerce," and (5) a likelihood of injury to the claimant, such as declining sales or a loss of goodwill. *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011) (internal quotation marks omitted); *see also Schering-Plough Healthcare Prods., Inc. v. Neutrogena Corp.*, 702 F. Supp. 2d 266, 271 (D. Del. 2010). "In the context of false advertising claims arising under the Lanham Act, the complaint must include 'sufficiently detailed allegations regarding the nature of the alleged falsehood to allow [defendant] to make a proper defense.'" *Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F. Supp. 2d 362, 365 (D. Del. 2009) (quoting *Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F. Supp. 1549, 1556 (E.D. Pa. 1985)).

In the motion to dismiss, Celsee challenges 10x's reliance on a Celsee advertisement touting a 70% cell capture rate as the basis for 10x's false advertising claim. Celsee contends that 10x's cause of action for false advertising does not plausibly plead that Celsee's representations about the 70% cell capture rate are false or misleading, and those statements are more accurately characterized as puffery. (D.I. 12 at 8-9) According to Celsee, 10x has failed to establish the existence of an industry standard for making cell capture rate calculations in all single-cell systems on the market, and 10x does not specify how Celsee's 70% figure was calculated. (*Id.* at 9-10)

In response, 10x argues that the complaint plausibly alleges that Celsee's statements about cell capture rates are literally false, and Celsee's assumptions about how the audience of the advertisements would have interpreted them is irrelevant. (D.I. 13 at 7-8) 10x contends that

9

the cell capture rate is the standard performance metric used in the industry to evaluate the performance of single cell systems, and 10x has no obligation to prove the existence of the industry standard prior to discovery. (*Id.* at 9)

The allegations in the complaint, taken as true, adequately allege that Celsee's advertisements were literally false. The complaint explains that market participants evaluate the performance of single cell systems based on the cell capture rate, which the complaint defines as "a measure of the percentage of input cells that are assayed in each experimental run." (D.I. 1 at ¶ 26) The complaint states that 10x's Chromium platform has one of the best cell capture rates in the industry at 65%. (*Id.* at ¶ 27) However, the complaint describes how Celsee advertises its Genesis System using the tagline "Because every cell matters," and it includes excerpts of Celsee's advertisements and brochures representing the Genesis System's "[d]eep and accurate view of cell populations with >70% capture of input cells." (*Id.* at ¶¶ 28-29) According to the allegations in the complaint, Celsee's advertisements are inaccurate because "Celsee measures its cell capture rate as the fraction of cells analyzed to the number of cells occupying the wells of its microwell arrays," which "ignores the substantial numbers of cells that are put into its system, but which reside in the 'dead volume' of the system and never make their way into the wells." (*Id.* at ¶ 30) In this regard, the complaint alleges that Celsee's 70% cell capture rate is literally false because it does not account for the wasted cells outside of the wells that are never analyzed. (*Id.*)

Viewing these facts in the light most favorable to 10x, it is plausible to infer that Celsee's representation about the Genesis System's capture rate of input cells is literally false because Celsee's calculation fails to account for all input cells. In *Schering-Plough Healthcare Products, Inc. v. Neutrogena Corp.*, the court concluded that a commercial was literally false due to its

10

representation that "Neutrogena is 28% chemical propellant," made in conjunction with images of the sunscreen applied to a person. 702 F. Supp. 2d 266, 280 (D. Del. 2010). The court reasoned that the representation was literally false because the propellant inside the can evaporates when the aerosol is used, and the sunscreen as applied to the individual does not contain 28% chemical propellant. *Id.* Similarly, the complaint in the present case adequately pleads that Celsee's method of calculation is objectively inaccurate because it fails to account for all input cells. (D.I. 1 at ¶ 30) Questions regarding the proper calculation of the cell capture rate and the existence of an industry standard or accepted method of calculation are fact issues to be addressed during fact discovery.

The allegations in the complaint, taken as true, further support 10x's claim that Celsee's advertisements have a tendency to mislead their audience even if they are not literally false. The complaint alleges that the cell capture rate is "[a] key criterion on which market participants evaluate the performance of single cell systems," defining the cell capture rate as "a measure of the percentage of input cells that are assayed in each experimental run." (D.I. 1 at ¶ 26) The complaint provides that, "[b]y promoting an inaccurate and inflated cell capture rate, Celsee has misled target consumers into believing that they are purchasing a genomics system that is more efficient and has better performance than the system they are in fact getting." (*Id.* at ¶ 83) Viewing the allegations in the light most favorable to 10x, it is plausible to infer that the targeted consumers would presume the cell capture rates of 10x and Celsee's products are directly comparable, and that Celsee's advertised 70% cell capture rate was intended to distinguish Celsee's product as superior to 10x's product with an advertised 65% cell capture rate.

Celsee further contends that 10x's allegations of materiality are conclusory and lack supporting facts because researchers purchasing single cell technology would not plausibly base

their purchase decision on a non-specific statement of capture efficiency without first understanding the method of calculation. (D.I. 12 at 10-11) In response, 10x alleges that the complaint adequately pleads that Celsee's false and misleading statements about the cell capture rate of the Genesis System would be material to consumer purchasing decisions because it is a key performance metric. (D.I. 13 at 9)

The complaint adequately alleges that the false or misleading statements made by Celsee "are material because they are likely to influence the purchasing decisions of a target consumer, since cell capture rate is an important criterion of system performance and efficiency." (D.I. 1 at ¶ 84) According to the complaint, "Celsee's misrepresentations regarding the cell capture rate of its Genesis System mislead consumers about the performance and efficacy of Celsee's Genesis System, and how it compares to 10x's Chromium platform," resulting in a diversion of potential sales from 10x to Celsee. (*Id.* at ¶¶ 32-34) Questions regarding the level of sophistication and fact-checking practices of potential customers are not properly resolved at this stage of the proceedings, and instead should be addressed through fact discovery.[8] Drawing all reasonable inferences in favor of 10x, I recommend that the court deny Celsee's motion to dismiss 10x's cause of action for false advertising under the Lanham Act.

---

[8] In its opening brief, Celsee alleges that the court must assess the sophistication of the targeted audience. (D.I. 12 at 10-11) Celsee cites *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384 (D.N.J. 2009) in support of its position. On post-trial briefing in *Bracco*, the court recognized that "context is highly important in discerning the message conveyed, particularly when 'the target of the advertising is not the consuming public but a more well informed and sophisticated audience.'" *Id.* at 476 (quoting *Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 229 (3d Cir. 1990)). Facts regarding the sophistication of the target audience must be developed through discovery. *See id.* ("The Third Circuit has held an 'impliedly false message' cannot be proved without considering proof of customer reaction.").

## C. Delaware Deceptive Trade Practices Act ("DTPA")

The Delaware Deceptive Trade Practices Act ("DTPA") prohibits "[r]epresent[ations] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," or representations that generally "create[] a likelihood of confusion or of misunderstanding." 6 *Del. C.* §§ 2532(a)(5) & (a)(12). The DTPA has a lower burden of proof than the Lanham Act because "a complainant need not prove competition between the parties or actual confusion or misunderstanding" to prevail in an action under the DTPA. *Keurig, Inc. v. Strum Foods, Inc.*, 769 F. Supp. 2d 699, 712 (D. Del. 2011) (quoting 6 *Del. C.* § 2532(b)).

Celsee contends that 10x's cause of action under the DTPA should be dismissed because the complaint does not identify the relevant subsection of the DTPA. (D.I. 12 at 11) In response, 10x alleges that the complaint uses language taken verbatim from the relevant subsections of the DTPA and, consequently, there is no mystery as to the basis of 10x's claim. (D.I. 13 at 10)

I recommend that the court deny Celsee's motion to dismiss 10x's cause of action under the DTPA. Courts in this district have held that identifying "a violation of a particular state's deceptive trade practices act, including allegations of which subsection is violated," are sufficient at this stage of the proceedings. *Kimberly-Clark Worldwide, Inc. v. Cardinal Health 200, LLC*, C.A. No. 11-1228-RGA, 2012 WL 3063974, at *4 (D. Del. July 27, 2012). In this case, the particular statute at issue is clearly identified by the count in the complaint, which is entitled, "Violation of Delaware Deceptive Trade Practices Act." (D.I. 1 at 17)

The complaint goes on to allege that "Celsee's false or misleading representations of fact concerning the cell capture rate of its Genesis System create a likelihood of confusion or of

misunderstanding, as well as represent the Genesis System as having characteristics or benefits the Genesis System does not have." (D.I. 1 at ¶ 91)  Sections 2532(a)(5) and (a)(12) mirror this language:

> A person engages in a deceptive trade practice when, in the course of a business, vocation, or occupation, that person . . .
>
> (5) [r]epresents that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities that they do not have . . .
>
> (12) [e]ngages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

6 *Del. C.* § 2532(a)(5), (a)(12).  The language of the complaint therefore provides sufficient notice of the relevant subsections of the DTPA to Celsee, despite the lack of numerical subsections within the pleading.  *See Phillips v. Dignified Transition Sols.*, 2014 WL 4294972, at *3 (D. Nev. Aug. 28, 2014) ("[F]ailing to cite the specific subsections does not, by itself, require dismissal of Plaintiff's claims under the DTPA when Defendants still have sufficient notice of Plaintiff's claims.").  During oral argument, counsel for 10x confirmed on the record that Count 7 of the complaint alleges violations of subsections 5 and 12 of the Delaware DTPA.  (10/2/19 Tr. at 55:8-20)

The cases relied upon by Celsee in support of the motion to dismiss are distinguishable from the circumstances before the court in the present case.  In *FMC Corp. v. Summit Agro USA, LLC*, the court granted the motion to dismiss a claim under the DTPA because the complaint recited a "violat[ion of] the common law and/or statutory deceptive trade practices laws of one or more states, including without limitation [the DTPA]." C.A. No. 14-51-LPS, 2014 WL 6627727, at *13 (D. Del. Nov. 14, 2014).  The court determined that the pleading was deficient because the allegations failed to limit the cause of action to a particular state's deceptive trade practices act.

14

*Id.* Similarly, the court granted the motion to dismiss the deceptive trade practices claim in *Kimberly-Clark Worldwide, Inc. v. Cardinal Health 200, LLC* because the complaint alleged violations of multiple states' deceptive trade practices statutes and did not specify which sections or subsections of Title 6 of the Delaware Code were at issue. 2012 WL 3063974, at *4. In contrast, 10x's complaint expressly identifies the Delaware DTPA in the title of the count, and notifies Celsee of the pertinent subsections by mirroring the statutory language of those subsections.

For the foregoing reasons, 10x's cause of action under the Delaware DTPA is legally sufficient and survives dismissal under Rule 12(b)(6). Nonetheless, 10x has requested to amend its complaint to add clarity to its infringement-based claims and include additional patents-in-suit. (10/2/19 Tr. at 64:8-16, 69:15-70:1) I recommend granting 10x leave to amend its Delaware DTPA claim to add citations to the numerical subsections of the statute forming the basis of the claim.

### D. Contributory Infringement

Pursuant to 35 U.S.C. § 271(c), a patentee must establish that an alleged contributory infringer has sold, offered to sell, or imported into the United States a component of an infringing product "knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." *Netgear, Inc. v. Ruckus Wireless, Inc.*, 852 F. Supp. 2d 470, 476 (D. Del. 2012) (quoting 35 U.S.C. § 271(c)). "Contributory infringement imposes liability on one who embodies in a non-staple device the heart of a patented process and supplies the device to others to complete the process and appropriate the benefit of the patented invention." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009). "To survive a motion to

dismiss, a plaintiff alleging contributory infringement must plausibly allege that the accused infringer knew of the asserted patents, and must plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018) (internal citations and quotation marks omitted). A claim for contributory infringement must also include facts that support an inference that an underlying act of direct infringement has occurred. *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004) ("There can be no inducement or contributory infringement without an underlying act of direct infringement.").

Celsee contends that 10x's cause of action for contributory infringement is deficient in setting forth the requirements of no substantial non-infringing uses, knowledge of the patents-in-suit, and third-party direct infringement. (D.I. 12 at 12-13; D.I. 14 at 10) According to Celsee, 10x concedes that microscopy is a substantial non-infringing use of the Genesis System. (D.I. 14 at 10)

In response, 10x argues that the pleading adequately alleges that the accused Genesis System has no substantial non-infringing uses because the allegations are limited to the Genesis System's single-cell nucleic acid sequencer, and the Genesis System's microscopy feature is separate and distinct from the nucleic acid sequencer. (D.I. 13 at 16-17) 10x contends that the flow charts and attachments to the complaint make clear that the Genesis System's single-cell nucleic acid sequencer is the infringing feature, and its use necessarily infringes all patents-in-suit. (*Id.* at 17)

The allegations in the complaint, taken as true, adequately establish that Celsee had pre- and post-suit knowledge of the patents-in-suit. For each of the patents-in-suit, the complaint alleges that, "[o]n information and belief, Celsee regularly monitors 10x's patent portfolio and is

16

aware of the asserted patents." (D.I. 1 at ¶¶ 41, 50, 59, 68, 77)  As previously discussed at

§ IV.A, *supra*, the complaint supports these allegations with facts regarding Celsee's efforts to

recruit 10x's employees and copy 10x's technology, which occurred prior to the filing of the

lawsuit.  (*Id.* at ¶¶ 19-24)  The complaint further describes the allegedly infringing Genesis

System as a competing product copying 10x's technology.  (*Id.* at ¶¶ 12-19)  These allegations

are sufficient to establish pre-suit knowledge on a Rule 12(b)(6) motion to dismiss.  *See Trading*

*Techs. Int'l, Inc. v. BCG Partners, Inc.*, 2011 WL 3946581, at *4 n.5 (N.D. Ill. Sept. 2, 2011)

("[T]hat the litigants are competitors in the same industry is a fact that makes knowledge of the

patent at issue *more* plausible, even if not sufficiently plausible by itself to pass muster under

*Iqbal*."); *Simplivity Corp. v. Springpath, Inc.*, 2016 WL 5388951, at *9 (D. Mass. July 15, 2016)

(finding pre-suit knowledge adequately alleged where the complaint described the defendant as a

sophisticated competitor who surreptitiously investigated the patented technology and

subsequently developed a similar product of its own).  The complaint also adequately alleges that

Celsee continues to infringe the patents-in-suit.[9]  (D.I. 1 at ¶¶ 39, 47, 56, 65, 74)

     However, I recommend that the court permit 10x to amend the complaint to clarify its

allegations of direct infringement by a third party, consistent with its offer during oral argument

to file an amended complaint.  (10/2/19 Tr. at 64:8-16)  10x contends that "the Complaint

identifies the direct infringer," and the "accompanying charts clearly identify the users of

Celsee's systems—*i.e.*, its customers—as the direct infringers of the asserted claims," without

actually citing any portion of the complaint or the attachments and exhibits thereto.  (D.I. 13 at

---

[9] To plead post-suit knowledge of the patents-in-suit for purposes of an indirect infringement
claim, the complaint must identify the patents-in-suit, the allegedly infringing conduct, the notice
afforded by the complaint, and the decision to continue the allegedly infringing conduct after
service of the complaint. *See Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, 966 F. Supp. 2d
390, 393 (D. Del. 2013).

13-14) The complaint alleges that "[t]he Genesis System attempts to enable users to analyze molecular signatures at the single cell level," and "[t]he dual tagging allows the user to track a molecule of interest and the cell of origin of that molecule," enabling the user to "therefore detect and quantify the level of the molecule of interest in single cells by sequencing." (D.I. 1 at ¶¶ 13, 15) The attachments to the complaint state that "the Genesis System enables scientists to analyze and interpret cellular behavior and collect previously inaccessible information for improved results in applications. . . ."[10] (See, e.g., D.I. 1, Attachment A at A-2) At oral argument, counsel for 10x identified these scientists as the third party direct infringers. (10/2/19 Tr. at 57:14-21) Although 10x "is not required to identify specific third parties that would be induced to infringe at this stage," see In re Bear Creek Techs. Inc., C.A. No. 11-723-GMS et al., 2012 WL 12919414, at *1 n.5 (D. Del. Sept. 27, 2012), the text of the complaint itself should clarify that the "users" of the Genesis System are the scientists referenced in the attachments to the complaint, and these scientists perform every step of the claimed method.

The text of 10x's amended pleading should also more clearly identify the existence of no substantial non-infringing uses for the accused Genesis System. Celsee observes that "10x does not even include a conclusory recitation of this critical element, let alone allege specific facts," in the body of the complaint. (D.I. 12 at 12) 10x instead relies on the allegations made in the Exhibits and Attachments to the complaint, which do not provide sufficient context to allow the

---

[10] The court may consider papers outside of the pleadings at this stage where, as here, the documents are incorporated by reference into the complaint and they are integral to the causes of action. See D.M. ex rel. Ray v. Phila. Hous. Auth., 613 F. App'x 187, 189 n.6 (3d Cir. 2015). Therefore, the court may consider Exhibits A-K and Attachments A-E to the complaint at this stage of the proceedings because they were incorporated by reference into the complaint. (D.I. 1 at ¶¶ 24, 35, 39, 47, 56, 65, 74)

court to draw an inference as to which specific facts support 10x's allegations of no substantial non-infringing uses. (D.I. 13 at 16-17)

The claim charts attached to the complaint include a flow chart showing the steps necessary to use the Genesis System's nucleic acid sequencer, including isolating single cells, detecting the cells with sequencing or microscopy, and analyzing the cells using unique identifiers. (D.I. 1, Attachment A at A-5) 10x states that "the only potential non-infringing use of the Genesis System as a whole is microscopy," which "is a feature separate and distinct from the nucleic acid sequencer." (D.I. 13 at 17) Although the claim charts discuss sequencing in the context of the claim elements, the claim charts also include Celsee's diagram identifying a sequencing or microscopy as detection methods. (D.I. 1, Attachment A at A-5) Neither the pleading itself nor the claim charts and exhibits attached to the complaint expressly draws this distinction.

Although "an infringer 'should not be permitted to escape liability as a contributory infringer merely by embedding [the infringing apparatus] in a larger product with some additional, separable feature before importing and selling it,'" the pleading in the present case could draw this distinction more clearly. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009) (quoting *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008)). I recommend that the court grant Celsee's motion to dismiss without prejudice, and grant 10x's request for leave to amend its cause of action for contributory infringement in accordance with the foregoing analysis. (10/2/19 Tr. at 59:7-16, 69:15-70:1)

E.    **Induced Infringement**

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To state a claim for induced infringement, the complaint "must plead facts

19

plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)). A claim for induced infringement must therefore include facts to support an inference that an underlying act of direct infringement has occurred. *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004) ("There can be no inducement or contributory infringement without an underlying act of direct infringement.").

Celsee contends that the complaint makes no allegation of underlying direct infringement by a third party and fails to sufficiently allege pre-suit knowledge of the patents-in-suit, as required to state a claim for induced infringement. (D.I. 12 at 14) In addition, Celsee alleges that the complaint does not contain facts supporting the requisite particularized intent. (*Id.*)

In response, 10x contends that the complaint adequately alleges that Celsee knew of the patents-in-suit prior the filing of the complaint or as of the date the complaint was filed, and Celsee instructs its customers to use the Genesis System in a directly infringing manner. (D.I. 13 at 12) 10x cites portions of the complaint alleging that Celsee offered a directly competing product in a highly specialized field and recruited 10x's employees, in addition to monitoring 10x's business activities. (*Id.*) 10x further contends that the complaint identifies Celsee's customers as the direct infringers and pleads that Celsee's marketing materials show Celsee had the specific intent to induce them to infringe. (*Id.* at 13-14)

For the reasons previously stated at § IV.D, *supra*, the complaint adequately pleads pre-suit knowledge of the patents-in-suit,[11] and the amended complaint should provide additional clarity regarding the identity of the direct infringers. The allegations in the complaint otherwise adequately plead facts supporting a cause of action for induced infringement. "[S]pecific intent may be inferred from circumstantial evidence where a defendant has both knowledge of the patent and specific intent to cause the acts constituting infringement." *Ricoh Co. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1342 (Fed. Cir. 2008). "Evidence of active steps ... taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, shows an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 915 (2005).

In the present case, the complaint plausibly describes advertising efforts by Celsee to support the contention that Celsee had the specific intent to induce its customers to infringe. The complaint alleges that "Celsee instructs and encourages its employees to market Celsee products as superior to the single cell analysis platform offered by 10x." (*Id.* at ¶ 19) According to the complaint, "Celsee's entire business model is aimed at capturing market share and diverting business from 10x by copying 10x's technology and business plans," and "Celsee has aggressively marketed the performance characteristics of Celsee's competing product, the Genesis System." (*Id.* at ¶¶ 20, 25) Marketing activities may "give[ ] rise to a reasonable inference that you intend to induce your customers to accomplish these benefits through

---

[11] The complaint states that "Celsee regularly monitors 10x's patent portfolio and is aware of the asserted patents." (D.I. 1 at ¶¶ 41, 50, 59, 68, 77)

utilization of the patented method." *See In re Bill of Lading*, 681 F.3d at 1341-42. Where, as here, "the marketing activities are coupled with actual knowledge of the patents-in-suit and awareness that the accused products infringe the patents-in-suit," the pleading plausibly states a claim for induced infringement. *See Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, C.A. No. 18-098-MN, 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018) (quoting *ReefEdge Networks, LLC v. Juniper Networks, Inc.*, 29 F. Supp. 3d 455, 459 (D. Del. 2014)). Nonetheless, the amended complaint should draw a nexus between the pleaded factual allegations and each element of the cause of action for induced infringement, consistent with the court's recommendation regarding contributory infringement. (10/2/19 Tr. at 59:7-16, 69:15-70:1)

### F. Direct Infringement: Method Claims

Liability for direct infringement arises when a party, without authorization, "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). A cause of action for direct patent infringement need only give defendant "fair notice of what the [infringement] claim is and the ground upon which it rests" to survive a motion to dismiss. *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (internal quotation marks and citations omitted). To plead a cause of action for direct infringement of a method claim, the complaint must allege that the accused infringer "perform[ed] all the steps of the claimed method, either personally or through another acting under his direction or control." *Courtesy Prods. LLC v. Hamilton Beach Brands, Inc.*, 73 F. Supp. 3d 435, 439 (D. Del. 2014) (quoting *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012)). "Direct infringement requires a party to perform each and every step or element of a claimed method or product." *Forest Labs. Holdings Ltd. v. Mylan, Inc.*, 206 F. Supp. 3d 957, 973 (D.

22

Del. 2016) (quoting *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed. Cir. 2009)).

Celsee contends that the complaint fails to state a cause of action for direct infringement regarding the method claims of all patents-in-suit[12] because the complaint alleges Celsee infringes by making, using, selling, importing, and offering its products for sale, instead of showing how each step of the claimed method is practiced. (D.I. 12 at 15) In response, 10x contends that the allegations in the complaint cited by Celsee relate to 10x's claims of indirect infringement, and the logical reading of the complaint suggests that Celsee directly infringes by using the Genesis System. (D.I. 13 at 18)

I recommend that the court grant Celsee's motion to dismiss and grant 10x's request for leave to amend the complaint. (10/2/19 Tr. at 60:14-23) The law is well-established that "direct infringement of a method claim requires a showing that every step of the claimed method has been practiced," and allegations that an accused infringer directly infringes by making, selling, or offering for sale an accused product fail to meet this standard. *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012). At oral argument, 10x explained that its infringement allegations of "making, using, offering for sale, and/or importing" were not limited to direct infringement, and also extended to its theories of indirect infringement. (10/2/19 Tr. at 56:19-57:3; *see also* D.I. 1 at ¶ 35) 10x's amended pleading should clearly delineate the separate theories of infringement to avoid confusion regarding the scope of its direct infringement claim.

---

[12] The '648 patent is the only patent-in-suit that contains no asserted method claims.

## G. Willful Infringement

"[T]o sufficiently plead willful infringement, a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Välinge Innovation AB v. Halstead New England Corp.*, C.A. No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018). The focus of a willful infringement claim must be on "the subjective willfulness of a patent infringer, intentional or knowing[.]" *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016). The complaint must "allege facts that plausibly show that a risk of infringement was made known to the defendant or was sufficiently obvious that it should have been known to the defendant." *Deere & Co. v. AGCO Corp.*, C.A. No. 18-827-CFC, 2019 WL 668492, at *5 (D. Del. Feb. 19, 2019).

Celsee contends that the complaint's allegations regarding willful infringement of the patents-in-suit contain no factual support. (D.I. 12 at 15) According to Celsee, the complaint's allegations of pre-suit knowledge based on "information and belief" that Celsee "monitors" 10x's patent filings are speculative. (*Id.* at 16) Celsee alleges that the complaint's allegations of intent and conduct are also insufficient to state a claim for willfulness because they merely parrot the standard for willful infringement without supporting factual allegations. (*Id.* at 16-17)

In response, 10x cites the complaint's allegations that Celsee directly competes with 10x in a highly specialized technical market, and Celsee recruits 10x employees and directly copies 10x's business model, raising an inference that Celsee regularly monitors 10x's patent portfolio. (D.I. 13 at 19; 10/2/19 Tr. at 71:2-9) 10x further contends that, even if the court concludes the

complaint does not adequately plead pre-suit willful infringement, 10x can maintain a claim for post-filing willful infringement. (D.I. 13 at 20)

I recommend that the court deny Celsee's motion to dismiss the allegations of willful infringement. For the reasons previously stated at § IV.D, *supra*, the complaint adequately alleges pre-suit knowledge of the patents-in-suit. The complaint also contains willfulness allegations providing specific dates by which Celsee knew or should have known that its actions were likely to infringe each of the patents-in-suit, and each of the dates precedes the filing of the complaint. (D.I. 1 at ¶¶ 42, 51, 60, 69, 78) In combination with the allegations of pre-suit knowledge discussed at § IV.D, *supra*, these assertions are sufficient to establish pre-suit knowledge on a claim for willfulness at the pleadings stage. In *Groove Digital, Inc. v. Jam City, Inc.*, the court held that a complaint alleging a defendant "monitors patent litigation against its competitors and has therefore been aware" of the patent-in-suit since a related litigation was filed adequately supported a claim of willful infringement. C.A. No. 18-1331-RGA, 2019 WL 351254, at *4 (D. Del. Jan. 29, 2019) (internal quotation marks omitted). Similarly, the allegation in the present case that "Celsee was built to copy 10x's technology and on information and belief has been monitoring its progress, including its patent filings," suggests deliberate copying of the patented technology by Celsee. (D.I. 1 at ¶ 19) Taken as true, these allegations support a claim of willful infringement. *See Deere & Co. v. AGCO Corp.*, C.A. No. 18-827-CFC, 2019 WL 668492, at *5 (D. Del. Feb. 19, 2019) ("While I agree that deliberate copying . . . [is] illustrative of the egregious behavior that the Court in *Halo* contemplated as deserving of enhanced damages awards . . . an allegation of willful infringement can be based on much less culpable conduct.").

## V. CONCLUSION

For the foregoing reasons, I recommend that the court deny Celsee's motion to strike, and grant-in-part Celsee's motion to dismiss. (D.I. 11) Specifically, I recommend that the court grant the motion to dismiss with respect to 10x's causes of action for violations of the Delaware DTPA, contributory infringement, induced infringement, and direct infringement, and deny the motion to dismiss in all other respects. I recommend that the court grant 10x's request for leave to amend the complaint, and order that the amended complaint shall be filed no later than ten (10) days following the expiration of the objections period and the District Judge's ruling on the objections, if any.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: October 30, 2019

Sherry R. Fallon
United States Magistrate Judge