## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10x GENOMICS, INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>CELSEE, INC.,<br><br>                    Defendant. | Case No. 19-cv-862-CFC-SRF<br><br><br>DEMAND FOR JURY TRIAL |

### DEFENDANT CELSEE, INC.'S ANSWER AND COUNTERCLAIMS TO 10x GENOMICS, INC.'S COMPLAINT FOR PATENT INFRINGEMENT, UNFAIR COMPETITION, AND FALSE ADVERTISING

Defendant Celsee, Inc. ("Celsee" or "Defendant") answers ("Answer") Plaintiff 10x Genomics, Inc.'s ("10x" or "Plaintiff") First Amended Complaint ("Complaint") for patent Infringement, unfair competition, false advertising, and related claims under the laws of the State of Delaware, filed on November 14, 2019, and asserts counterclaims against 10x as follows:

### I.      NATURE OF THE ACTION

1.      Celsee admits that the Complaint purports to state an action arising under the patent laws of the United States of America, 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. § 271; unfair competition and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and for related claims under the laws of the State of Delaware.   Except as so admitted, denied.

### II.      THE PARTIES

2.      Celsee admits, on information and belief, that 10x is a corporation existing under the laws of Delaware, with an office in Pleasanton, CA.

3.      Celsee admits that it is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Ann Arbor, Michigan.

### III.    JURISDICTION AND VENUE

4.      Celsee admits that these claims arise under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and under the Delaware Deceptive Trade Practices Act, 6 Del. C. §§ 2531 *et seq.*, and that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 28 U.S.C. sec 1367.

5.      Celsee admits it is subject to personal jurisdiction in this judicial district for the purposes of this action.   Celsee further admits that venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Celsee is a Delaware corporation.

### IV.    BACKGROUND

6.      Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6 of the Complaint and therefore denies those allegations.

7.      Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7 of the Complaint and therefore denies those allegations.

8.      Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8 of the Complaint and therefore denies those allegations.

9.      Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9 of the Complaint and therefore denies those allegations.

10.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10 of the Complaint and therefore denies those allegations.

11.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11 of the Complaint and therefore denies those allegations.

12.     Celsee admits that it launched its Genesis System on October 25, 2018 as a product that was intended to overcome prior limits in single-cell analysis.   Except as so admitted, denied.

13.     Celsee admits that its website states that the "Genesis System enables scientists to analyze molecular signatures from hundreds to millions of cells."   Except as so admitted, denied.

14.     Celsee admits that its website states that "Celsingle™ capture and isolate single cells with a gentle, gravity-based approach.   Discrete microwells allow a single cell to be paired with a unique cellular barcode and unique molecular indices for desired applications, such as gene expression or protein quantitation."   Except as so admitted, denied.

15.     Celsee admits that the cited portion of its website describes the features and benefits of certain Celsee products.   Except as so admitted, denied.

16.     Celsee admits that its website states that "[t]he scalability of this approach is unmatched and has the potential to provide a 10x increase in cell throughout compared with other technologies."   Except as so admitted, denied.

17.     Celsee admits that its website states that "[t]he Genesis System enables a range of single-cell applications with Celsingle™ or Celselect™ Slides supporting hundreds to millions of cells per experiment." Celsee further admits that its website states that "Celsingle™ Slides capture and isolate single cells with a gentle, gravity-based approach.  Discrete microwells allow a single cell to be paired with a unique cellular barcode and unique molecular indices for desired applications, such as gene expression or protein quantitation."   Except as so admitted, denied.

18.     Celsee admits that it launched its Genesis System on October 25, 2018.   Except as so admitted, denied.

19.     Denied.

20.     Denied.

21.     Denied.

22.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 of the Complaint and therefore denies those allegations.

23.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 of the Complaint and therefore denies those allegations.

24.     Denied.

25.     Denied.

26.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26 of the Complaint, including, for instance, 10x's view of the meaning of "key criterion" and what customers rely upon for purchasing decisions.   On these bases, Celsee denies the allegations of paragraph 26.

27.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27 of the Complaint and therefore denies those allegations.

28.     Celsee admits that its promotional literature states "Because every cell matters.™" Celsee admits that its website states, "Deep and accurate view of cell populations with >70% capture of input cells." Except as so admitted, denied.

29.     Celsee admits that its promotional literature states "Deep and accurate view of cell populations with >70% capture of input cells."   Except as so admitted, denied.

30.     Denied.

31.     Denied.

32.     Celsee denies that it has made any misrepresentations regarding the cell capture rate of its Genesis Platform and, on this basis denies this allegation.

4

33.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33 regarding 10x's view of "reasonable consumers."     On these bases, Celsee denies the allegations of paragraph 33.

34.     Celsee denies that it has engaged in misleading or deceptive practices and, on this basis denies this allegation.

## V.     THE PATENTS-IN-SUIT

35.     Celsee denies that its products practice any of the claims of U.S. Patent Nos.: 10,155,981; 10,227,648; 10,240,197; 10,273,541; 10,280,459; 10,392,662; and 10,400,280 as properly construed and on this basis, denies this allegation.

## VI.     FIRST CAUSE OF ACTION                                    (CELSEE'S INFRINGEMENT OF U.S. PATENT NO. 10,155,981)

36.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

37.     Celsey admits, on information and belief, that the '981 patent states that it issued on December 18, 2018 to Sydney Brenner, Gi Mikawa, Robert Osborne, and Andrew Slatter. Except as so admitted, denied.

38.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38 of the Complaint and therefore denies those allegations.

39.     Celsee admits that it became aware of the existence of the '981 patent and its claims on May 17, 2019, the day the original Complaint in this action was filed.     Except as so admitted, denied.

40.     Celsee denies that its products practice any of the claims of the '981 patent as properly construed and, on this basis denies this allegation.

41.     Celsee denies that its products practice any of the claims of the '981 patent as properly construed and, on this basis denies this allegation.

42.     Celsee denies that its products practice any of the claims of the '981 patent as properly construed and, on this basis denies this allegation.

43.     Celsee denies that its products practice any of the claims of the '981 patent as properly construed and, on this basis denies this allegation.

44.     Celsee denies that its products practice any of the claims of the '981 patent as properly construed and, on this basis denies this allegation.

45.     Denied.

46.     Celsee denies that its products practice any of the claims of the '981 patent as properly construed and, on this basis denies this allegation.

47.     Celsee denies that its products practice any of the claims of the '981 patent as properly construed and, on this basis denies this allegation.

## VII.    SECOND CAUSE OF ACTION
## (CELSEE'S INFRINGEMENT OF U.S. PATENT NO. 10,240,197)

48.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

49.     Celsee admits, on information and belief, that the '197 patent states that it issued on March 26, 2019 to Sydney Brenner, Gi Mikawa, Robert Osborne, and Andrew Slatter.    Except as so admitted, denied.

50.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 50 of the Complaint and therefore denies those allegations.

51.   Celsee admits that it became aware of the existence of the '197 patent and its claims on May 17, 2019, the day the original Complaint in this action was filed.   Except as so admitted, denied.

52.   Celsee denies that its products practice any of the claims of the '197 patent as properly construed and, on this basis denies this allegation.

53.   Celsee denies that its products practice any of the claims of the '197 patent as properly construed and, on this basis denies this allegation.

54.   Celsee denies that its products practice any of the claims of the '197 patent as properly construed and, on this basis denies this allegation.

55.   Celsee denies that its products practice any of the claims of the '197 patent as properly construed and, on this basis denies this allegation.

56.   Celsee denies that its products practice any of the claims of the '197 patent as properly construed and, on this basis denies this allegation.

57.   Denied.

58.   Celsee denies that its products practice any of the claims of the '197 patent as properly construed and, on this basis denies this allegation.

59.   Celsee denies that its products practice any of the claims of the '197 patent as properly construed and, on this basis denies this allegation.

## VIII.   THIRD CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,227,648)

60.   Celsee re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

61.     Celsee admits, on information and belief, that the '648 patent states that it issued on March 12, 2019 to Benjamin Hindson, Serge Saxonov, Kevin Ness, and Paul Hardenbol. Except as so admitted, denied.

62.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 62 of the Complaint and therefore denies those allegations.

63.     Celsee admits that it became aware of the existence of the '648 patent and its claims on May 17, 2019, the day the original Complaint in this action was filed.    Except as so admitted, denied.

64.     Celsee denies that its products practice any of the claims of the '648 patent as properly construed and, on this basis denies this allegation.

65.     Celsee denies that its products practice any of the claims of the '648 patent as properly construed and, on this basis denies this allegation.

66.     Denied.

67.     Celsee denies that its products practice any of the claims of the '648 patent as properly construed and, on this basis denies this allegation.

68.     Celsee denies that its products practice any of the claims of the '648 patent as properly construed and, on this basis denies this allegation.

## IX.     FOURTH CAUSE OF ACTION
## (INFRINGEMENT OF U.S. PATENT NO. 10,273,541)

69.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

70.     Celsee admits, on information and belief, that the '541 patent states that it issued on April 30, 2019 to Benjamin Hindson, Christopher Hindson, Michael Schnall-Levin, Kevin Ness, Mirna Jarosz, Serge Saxonov, and Paul Hardenbol.    Except as so admitted, denied.

71.    Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 71 of the Complaint and therefore denies those allegations.

72.    Celsee admits that it became aware of the existence of the '541 patent and its claims on May 17, 2019, the day the original Complaint in this action was filed.   Except as so admitted, denied.

73.    Celsee denies that its products practice any of the claims of the '541 patent as properly construed and, on this basis denies this allegation.

74.    Celsee denies that its products practice any of the claims of the '541 patent as properly construed and, on this basis denies this allegation.

75.    Celsee denies that its products practice any of the claims of the '541 patent as properly construed and, on this basis denies this allegation.

76.    Celsee denies that its products practice any of the claims of the '541 patent as properly construed and, on this basis denies this allegation.

77.    Celsee denies that its products practice any of the claims of the '541 patent as properly construed and, on this basis denies this allegation.

78.    Denied.

79.    Celsee denies that its products practice any of the claims of the '541 patent as properly construed and, on this basis denies this allegation.

80.    Celsee denies that its products practice any of the claims of the '541 patent as properly construed and, on this basis denies this allegation.

## X.      FIFTH CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,280,459)

81.    Celsee re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

82.     Celsee admits, on information and belief, that the '459 patent states that it issued on May 7, 2019 to Sydney Brenner, Gi Mikawa, Robert Osborne, and Andrew Slatter.    Except as so admitted, denied.

83.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 83 of the Complaint and therefore denies those allegations.

84.     Celsee admits that it became aware of the existence of the '459 patent and its claims on May 17, 2019, the day the original Complaint in this action was filed.    Except as so admitted, denied.

85.     Celsee denies that its products practice any of the claims of the '459 patent as properly construed and on this basis denies this allegation.

86.     Celsee denies that its products practice any of the claims of the '459 patent as properly construed and on this basis denies this allegation.

87.     Celsee denies that its products practice any of the claims of the '459 patent as properly construed and on this basis denies this allegation.

88.     Celsee denies that its products practice any of the claims of the '459 patent as properly construed and on this basis denies this allegation.

89.     Celsee denies that its products practice any of the claims of the '459 patent as properly construed and on this basis denies this allegation.

90.     Denied.

91.     Celsee denies that its products practice any of the claims of the '459 patent as properly construed and on this basis denies this allegation.

92.     Celsee denies that its products practice any of the claims of the '459 patent as properly construed and on this basis denies this allegation.

## XI.    SIXTH CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,392,662)

93.    Celsee re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

94.    Celsee admits, on information and belief, that the '662 patent states that it issued on August 27, 2019 to Sydney Brenner, Gi Mikawa, Robert Osborne, and Andrew Slatter. Except as so admitted, denied.

95.    Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 95 of the Complaint and therefore denies those allegations.

96.    Denied.

97.    Celsee denies that its products practice any of the claims of the '662 patent as properly construed and on this basis denies this allegation.

98.    Celsee denies that its products practice any of the claims of the '662 patent as properly construed and on this basis denies this allegation.

99.    Celsee denies that its products practice any of the claims of the '662 patent as properly construed and on this basis denies this allegation.

100.    Celsee denies that its products practice any of the claims of the '662 patent as properly construed and on this basis denies this allegation.

## XII.    SEVENTH CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,400,280)

101.    Celsee re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

102.    Celsee admits, on information and belief, that the '280 patent states that it issued on September 3, 2019 to Benjamin Hindson, Chrisopher Hindson, Michael Schnall-Levin, Kevin Ness, Mirna Jarosz, Serge Saxonov, and Paul Hardenbol.    Except as so admitted, denied.

103.    Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 103 of the Complaint and therefore denies those allegations.

104.    Denied.

105.    Celsee denies that its products practice any of the claims of the '280 patent as properly construed and on this basis denies this allegation.

106.    Celsee denies that its products practice any of the claims of the '280 patent as properly construed and on this basis denies this allegation.

107.    Celsee denies that its products practice any of the claims of the '280 patent as properly construed and on this basis denies this allegation.

108.    Celsee denies that its products practice any of the claims of the '280 patent as properly construed and on this basis denies this allegation.

109.    Celsee denies that its products practice any of the claims of the '280 patent as properly construed and on this basis denies this allegation.

110.    Denied.

111.    Celsee denies that its products practice any of the claims of the '280 patent as properly construed and on this basis denies this allegation.

112.    Celsee denies that its products practice any of the claims of the '280 patent as properly construed and on this basis denies this allegation.

## XIII.   EIGHTH CAUSE OF ACTION
### (UNFAIR COMPETITION UNDER THE LANHAM ACT)

113.    Celsee re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

12

114.    Celsee admits that its website states, "Deep and accurate view of cell populations with >70% capture of input cells." Except as so admitted, denied.

115.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

116.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

117.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

118.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

119.    Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 119, particular regarding 10x's view of direct competition.   On this basis, Celsee denies the allegations of paragraph 119.

120.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

121.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

## XIV.   NINTH CAUSE OF ACTION
## (VIOLATION OF DELAWARE DECEPTIVE TRADE PRACTICES ACT

122.    Celsee re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

123.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

124.     Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

125.     Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

126.     Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

127.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 127, particular regarding 10x's view of direct competition.   On this basis, Celsee denies the allegations of paragraph 127.

128.     Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

129.     Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

## RESPONSE TO 10X'S PRAYER FOR RELIEF

Celsee denies that 10x is entitled to any relief whatsoever, including the relief stated in Paragraphs a-k in the Complaint, from either Celsee or the Court, either as prayed for in the Complaint or otherwise.

## GENERAL DENIAL

Celsee further denies each and every allegation in the Complaint that is not specifically admitted, denied, or otherwise responded to in this Answer.

## DEFENSES

Celsee alleges and asserts the following defenses in response to the allegations in the Complaint.

14

**First Defense – Noninfringement of the '981 Patent**

130.    Celsee has not infringed and is not infringing directly, indirectly, contributorily, by inducement, or in any other manner any valid and enforceable claim of the '981 patent, either literally or by the doctrine of equivalents.

**Second Defense – Noninfringement of the '648 Patent**

131.    Celsee has not infringed and is not infringing directly, indirectly, contributorily, by inducement, or in any other manner any valid and enforceable claim of the '648 patent, either literally or by the doctrine of equivalents.

**Third Defense – Noninfringement of the '197 Patent**

132.    Celsee has not infringed and is not infringing directly, indirectly, contributorily, by inducement, or in any other manner any valid and enforceable claim of the '197 patent, either literally or by the doctrine of equivalents.

**Fourth Defense – Noninfringement of the '541 Patent**

133.    Celsee has not infringed and is not infringing directly, indirectly, contributorily, by inducement, or in any other manner any valid and enforceable claim of the '541 patent, either literally or by the doctrine of equivalents.

**Fifth Defense – Noninfringement of the '459 Patent**

134.    Celsee has not infringed and is not infringing directly, indirectly, contributorily, by inducement, or in any other manner any valid and enforceable claim of the '459 patent, either literally or by the doctrine of equivalents.

**Sixth Defense – Noninfringement of the '662 Patent**

135.    Celsee has not infringed and is not infringing directly, indirectly, contributorily, by inducement, or in any other manner any valid and enforceable claim of the '662 patent, either literally or by the doctrine of equivalents.

### Seventh Defense – Noninfringement of the '280 Patent

136.    Celsee has not infringed and is not infringing directly, indirectly, contributorily, by inducement, or in any other manner any valid and enforceable claim of the '280 patent, either literally or by the doctrine of equivalents.

### Eighth Defense – Invalidity of the '981 Patent

137.    One or more claims of the '981 patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, et sec., including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.   For example, one or more claims of the '981 patent are invalid in view of the prior art, including references cited on the face of the '981 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '981 patent.   In addition, one or more claims of the '981 patent are invalid because the full scope of those claims is not enabled, nor described, by the written description of the '981 patent, and those claims are indefinite.

### Ninth Defense – Invalidity of the '648 Patent

138.    One or more claims of the '648 patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, et sec., including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.   For example, one or more claims of the '648 patent are invalid in view of the prior art, including references cited on the face of the '648 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '648 patent.   In addition, one or more claims

of the '648 patent are invalid because the full scope of those claims is not enabled, nor described, by the written description of the '648 patent, and those claims are indefinite.

### Tenth Defense – Invalidity of the '197 Patent

139.    One or more claims of the '197 patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, et sec., including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.   For example, one or more claims of the '197 patent are invalid in view of the prior art, including references cited on the face of the '197 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '197 patent.   In addition, one or more claims of the '197 patent are invalid because the full scope of those claims is not enabled, nor described, by the written description of the '197 patent, and those claims are indefinite.

### Eleventh Defense – Invalidity of the '541 Patent

140.    One or more claims of the '541 patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, et sec., including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.   For example, one or more claims of the '541 patent are invalid in view of the prior art, including references cited on the face of the '541 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '541 patent.   In addition, one or more claims of the '541 patent are invalid because the full scope of those claims is not enabled, nor described, by the written description of the '541 patent, and those claims are indefinite.

### Twelfth Defense – Invalidity of the '459 Patent

141.    One or more claims of the '459 patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C.   §1, et sec., including, but not limited to, the

conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112. For example, one or more claims of the '459 patent are invalid in view of the prior art, including references cited on the face of the '459 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '459 patent. In addition, one or more claims of the '459 patent are invalid because the full scope of those claims is not enabled, nor described, by the written description of the '459 patent, and those claims are indefinite.

### Thirteenth Defense – Invalidity of the '662 Patent

142. One or more claims of the '662 patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, et sec., including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112. For example, one or more claims of the '662 patent are invalid in view of the prior art, including references cited on the face of the '662 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '662 patent. In addition, one or more claims of the '662 patent are invalid because the full scope of those claims is not enabled, nor described, by the written description of the '662 patent, and those claims are indefinite.

### Fourteenth Defense – Invalidity of the '280 Patent

143. One or more claims of the '280 patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, et sec., including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112. For example, one or more claims of the '280 patent are invalid in view of the prior art, including references cited on the face of the '280 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '280 patent. In addition, one or more claims

of the '280 patent are invalid because the full scope of those claims is not enabled, nor described, by the written description of the '280 patent, and those claims are indefinite.

### Fifteenth Defense – Statutory Damages Limitation

10x's claim for damages is statutorily limited by 35 U.S.C. §§ 286, 287, and/or 288.

### Sixteenth Defense
(Improper Inventorship and Ownership of the '648, '541 and '280 Patents)

144.    As detailed below, at least the '648, '541, and '280 patents are unenforceable because they are owned by Bio-Rad Laboratories, Inc. ("Bio-Rad"), and/or they do not list all of the inventors.   The inventions of the '648, '541, and '280 patents were conceived in whole or part by Benjamin Hindson, Christopher Hindson, Serge Saxonov, Kevin Ness, Nicholas Heredia, and/or Paul Blainey while employed or contracted by QuantaLife and/or Bio-Rad.   Heredia was a research scientist at QuantaLife and is a co-inventor on at least some of the Asserted Patents, but 10x deliberately omitted naming Heredia as a co-inventor.   Blainey was a technical consultant hired by QuantaLife, but 10x deliberately omitted naming Blainey as a co-inventor one at least some of the Asserted Patents.

145.    10x asserted seven patents in this case, at least 3 of which are all directed to methods and systems for processing polynucleotides by partitioning a plurality of beads in a microwell array (the '648, '541, and '280 patents).

146.    The earliest claimed priority date for the '280 and '541 patent is August 14, 2012—within months after Benjamin Hindson, Christohper Hindson, Saxonov, and Ness left Quanta-Life and/or Bio-Rad between April and September of 2012.

147.    The earliest claimed priority date for the '648 patent is December 14, 2012, also within months after Benjamin Hindson, Christohper Hindson, Saxonov, and Ness left Quanta-Life and/or Bio-Rad between April and September of 2012.

148.   The '648, '541, and '280 patents in this case include named inventors Benjamin Hindson, Serge Saxonov, Christopher Hindson, and Kevin Ness—all former Bio-Rad and/or QuantaLife employees and also early employees or founders of 10x.   The '648, '541, and '280 patents are directed to methods and systems for processing polynucleotides by portioning a plurality of beads in a microwell array.

149.   The '648, '541, and '280 patents however, arose out of these inventors' work at Bio-Rad and its predecessor, and thus are owned by Bio-Rad.

150.   Benjamin Hindson worked at QuantaLife from 2008 to October 2011.   At QuantaLife, Hindson worked on microfluidic devices to generate droplets and developed a commercial product.

151.   Christopher Hindson worked at QuantaLife from Augsut 2010 to October 2011, and then at Bio-Rad from October 2011 to November 2012.

152.   Serge Saxonov worked at QuantaLife from May 2010 to October 2011.

153.   Kevin Ness worked at QuantaLife from September 2008 to September 2012.

154.   In addition to the commercial droplet product, Benjamin Hindson and/or Christopher Hindson and/or Ness and/or Saxonov conceived of processing polynucleotides by portioning a plurality of beads in a microwell array.   Upon information and belief, this concept is demonstrated by QuantaLife lab documentation.   Upon information and belief, Benjamin Hindson, Christopher Hindson, Ness and Saxonov were under contractual obligation to assign to QuantaLife all their ideas, inventions, and discoveries.   Thus, any concepts or ideas from Benjamin Hindson's, Christopher Hindson's, Ness's, and/or Saxonov's time at QuantaLife are owned by QuantaLife.

155.    Bio-Rad acquired QuantaLife's business and its intellectual property in October 2011 for $162 million cash plus future milestone payments.

156.    After Bio-Rad acquired QuantaLife, Benjamin Hindson, Christopher Hindson, and Saxonov started working at Bio-Rad until they left in 2012.   Benjamin Hindson, Chrisopher Hindson, and Saxonov worked at Bio-Rad for some time, but soon left to form/join 10x.   Ness worked at QuantaLife until September 2012, when he left to form 10x.   While at 10x, in 2012-2013, Benjamin Hindson, Christopher Hindson, Ness and Saxonov almost immediately filed patent applications directed to methods and systems for processing polynucleotides by portioning a plurality of beads in a microwell array – exactly the same subject matter conceived at QuantaLife/Bio-Rad.   At least some of the Asserted Patents derive from those 2012-2013 applications.

157.    Benjamin Hindson's, Christopher Hindson's, Ness's, and Saxonov's concepts and inventions at QuantaLife automatically belonged to QuantaLife (and subsequently Bio-Rad) rendering any future written assignment to 10x invalid.

### Seventeenth Defense
(Puffery)

158.    With respect to 10x's Eighth and Ninth Cause of Action, the statements complained of by 10x are no more than puffery and are recognized as such by the ordinary purchaser and do not deceive the ordinary purchaser.

### Eighteenth Defense
(Unclean Hands)

159.    10x's conduct demonstrates unclean hand so that it may not now complain about any acts of Celsee.

### Nineteenth Defense
(Waiver, Estoppel, Laches)

21

160.   10x's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or laches.

### Twentieth Defense
(Fault of Others)

161.   10x's Eighth and Ninth Causes of Action claims are barred, in whole or in part, because the damages allegedly suffered, if any, were proximately caused, in whole or in part, by persons or entities other than Celsee, and no legal or factual basis exists for imposing liability upon Celsee for the acts and/or omissions of such persons and/or entities.

### Twenty-First Defense
(Lack of Causation)

162.   10x's Eighth and Ninth Causes of Action claims are barred, in whole or in part, because no conduct attributable to Celsee was the cause in fact or proximate cause of the losses or damages, if any, that 10x seeks to recover.

### Twenty-Second Defense
(No Damages)

163.   10x's claims are barred, in whole or in part, because 10x has suffered no damages based on the conduct alleged in the Complaint.

### Twenty-Third Defense
(Non-Speculative Injury)

10x's Eighth and Ninth Causes of Action claims are barred, in whole or in part, because 10x failed to minimize or mitigate the losses or damages, if any, that 10x seeks to recover in this action.

### Twenty-Fourth Defense
(Failure to Mitigate)

164.    10x's Eighth and Ninth Causes of Action claims are barred, in whole or in part, because 10x failed to minimize or mitigate the losses or damages, if any, that 10x seeks to recover in this action.

### Twenty-Fifth Defense
(Good Faith)

165.    10x's Eighth and Ninth Causes of Action claims are barred, in whole or in part, because Celsee acted in good faith and without wrongful intent, malice, or any other applicable degree of fault.

### Twenty-Sixth Defense
(Acquiescence)

166.    10x's Eighth and Ninth Causes of Action claims are barred, in whole or in part, because of 10x's acquiescence to Celsee's alleged conduct.

### Twenty-Seventh Defense
(Violation of Public Policy)

167.    10x's recovery for the alleged Eighth and Ninth Causes of Action would violate public policy.

### Twenty-Eighth Defense
(Attorneys' Fees)

168.    10x's prayer for attorneys' fees is barred on the ground that 10x cannot prove facts sufficient to show that Celsee's conduct was exceptional.

### Twenty-Ninth Defense
(No Irreparable Harm)

169.    10x's prayer for injunctive relief is barred on the ground that 10x cannot show facts sufficient to show that it has been irreparably harmed by Celsee's conduct.

### Thirtieth Defense
(Failure to State a Claim)

170.    The Complaint fails to state a claim for relief.

## COUNTERCLAIMS

Counterclaimant Celsee, Inc. ("Celsee") on personal knowledge as to its own acts, and on information and belief as to all others based on its own and its attorneys' investigation, alleges its Counterclaims against 10x Genomics, Inc. ("10x") as follows:

## THE PARTIES

1.    Celsee is a corporation organized under the laws of Delaware, having its principal place of business in Ann Arbor, Michigan.

2.    According to 10x's Complaint, 10x is a corporation existing under the laws of Delaware, with its principal place of business, in Pleasanton, CA.

## JURISDICTION

3.    This Court has jurisdiction over the subject matter of these Counterclaims under, without limitation, 28 U.S.C. §§ 1331, 1367, 1338(a), 201, and 2202.

4.    10x has subjected itself to personal jurisdiction in this Court because it has sued Celsee in this Court.

## VENUE

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391.

6.    10x has consented to venue in this Court because it has filed its claims for patent infringement in this Court, in response to which these Counterclaims are asserted.

## ACTUAL CONTROVERSY

7.    According to 10x's complaint, 10x claims to be the owner of all rights, title, and interest in and to the '981, '648, '197, '541, '459, '662, and '280 patents.   10x has alleged that

Celsee has infringed and is infringing the '981, '648, '197, '541, '459, '662, and '280 patents, which Celsee denies.

8.      An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202 exists between 10x and Celsee.   Celsee seeks a declaration that it has not infringed and does not infringe the '981, '648, '197, '541, '459, '662, and '280 patents and that the '981, '648, '197, '541, '459, '662, and '280 patents are invalid.

## COUNTERCLAIM ONE
(Declaratory Judgment of Non-Infringement of the '981 Patent)

9.      Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

10.      Although 10x alleges in its Complaint that (i) Celsee has infringed and continues to infringe claims of the '981 Patent, (ii) Celsee has actively induced and continues to actively induce infringement of claims of the '981 patent, and (iii) Celsee has actively contributed and continues to actively contributed to the infringement of one or more claims of the '981 patent under 35 U.S.C. § 271(c), Celsee has not infringed and does not infringe any valid claim of the '981 patent under any theory of infringement.

11.      A judicial determination of the respective rights of the parties with respect to infringement of the claims of the '981 patent is now necessary and appropriate under 28 U.S.C. § 2201.

## COUNTERCLAIM TWO
(Declaratory Judgment of Non-Infringement of the '648 Patent)

12.      Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

13.      Although 10x alleges in its Complaint that (i) Celsee has infringed and continues to infringe claims of the '648 Patent, (ii) Celsee has actively induced and continues to actively

induce infringement of claims of the '648 patent, and (iii) Celsee has actively contributed and continues to actively contributed to the infringement of one or more claims of the '648 patent under 35 U.S.C. § 271(c), Celsee has not infringed and does not infringe any valid claim of the '648 patent under any theory of infringement.

14.     A judicial determination of the respective rights of the parties with respect to infringement of the claims of the '648 patent is now necessary and appropriate under 28 U.S.C. § 2201.

## COUNTERCLAIM THREE
(Declaratory Judgment of Non-Infringement of the '197 Patent)

15.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

16.     Although 10x alleges in its Complaint that (i) Celsee has infringed and continues to infringe claims of the '197 patent, (ii) Celsee has actively induced and continues to actively induce infringement of claims of the '197 patent, and (iii) Celsee has actively contributed and continues to actively contributed to the infringement of one or more claims of the '197 patent under 35 U.S.C. § 271(c), Celsee has not infringed and does not infringe any valid claim of the '197 patent under any theory of infringement.

17.     A judicial determination of the respective rights of the parties with respect to infringement of the claims of the '197 patent is now necessary and appropriate under 28 U.S.C. § 2201.

## COUNTERCLAIM FOUR
(Declaratory Judgment of Non-Infringement of the '541 Patent)

18.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

19.     Although 10x alleges in its Complaint that (i) Celsee has infringed and continues to infringe claims of the '541 patent, (ii) Celsee has actively induced and continues to actively induce infringement of claims of the '541 patent, and (iii) Celsee has actively contributed and continues to actively contributed to the infringement of one or more claims of the '541 patent under 35 U.S.C. § 271(c), Celsee has not infringed and does not infringe any valid claim of the '541 patent under any theory of infringement.

20.     A judicial determination of the respective rights of the parties with respect to infringement of the claims of the '541 patent is now necessary and appropriate under 28 U.S.C. § 2201.

## COUNTERCLAIM FIVE
(Declaratory Judgment of Non-Infringement of the '459 Patent)

21.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

22.     Although 10x alleges in its Complaint that (i) Celsee has infringed and continues to infringe claims of the '459 patent, (ii) Celsee has actively induced and continues to actively induce infringement of claims of the '459 patent, and (iii) Celsee has actively contributed and continues to actively contributed to the infringement of one or more claims of the '459 patent under 35 U.S.C. § 271(c), Celsee has not infringed and does not infringe any valid claim of the '459 patent under any theory of infringement.

23.     A judicial determination of the respective rights of the parties with respect to infringement of the claims of the '459 patent is now necessary and appropriate under 28 U.S.C. § 2201.

## COUNTERCLAIM SIX
(Declaratory Judgment of Non-Infringement of the '662 Patent)

24.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

25.     Although 10x alleges in its Complaint that (i) Celsee has infringed and continues to infringe claims of the '662 patent, (ii) Celsee has actively induced and continues to actively induce infringement of claims of the '662 patent, and (iii) Celsee has actively contributed and continues to actively contributed to the infringement of one or more claims of the '662 patent under 35 U.S.C. § 271(c), Celsee has not infringed and does not infringe any valid claim of the '662 patent under any theory of infringement.

26.     A judicial determination of the respective rights of the parties with respect to infringement of the claims of the '662 patent is now necessary and appropriate under 28 U.S.C. § 2201.

### COUNTERCLAIM SEVEN
(Declaratory Judgment of Non-Infringement of the '280 Patent)

27.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

28.     Although 10x alleges in its Complaint that (i) Celsee has infringed and continues to infringe claims of the '280 patent, (ii) Celsee has actively induced and continues to actively induce infringement of claims of the '280 patent, and (iii) Celsee has actively contributed and continues to actively contributed to the infringement of one or more claims of the '280 patent under 35 U.S.C. § 271(c), Celsee has not infringed and does not infringe any valid claim of the '280 patent under any theory of infringement.

29.     A judicial determination of the respective rights of the parties with respect to infringement of the claims of the '280 patent is now necessary and appropriate under 28 U.S.C. § 2201.

### COUNTERCLAIM EIGHT

(Declaratory Judgment of Invalidity of the '981 Patent)

30.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

31.     The claims of the '981 patent are invalid under 35 U.S.C. §§ 102 and/or 103 in light of prior art.   For example, one or more claims of the '981 patent are invalid in view of the references cited on the face of the '981 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '981 patent.

32.     The claims of the '981 patent are invalid under 35 U.S.C. §112 for failing to comply with one or more of the written description requirement, the enablement requirement, and the definiteness requirement.

33.     A judicial determination of the respective rights of the parties with respect to the infringement of the claims of the '981 patent is now necessary and appropriate under 28 U.S.C. §2201.

## COUNTERCLAIM NINE
(Declaratory Judgment of Invalidity of the '648 Patent)

34.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

35.     The claims of the '648 patent are invalid under 35 U.S.C. §§102 and/or 103 in light of prior art.   For example, one or more claims of the '648 patent are invalid in view of the references cited on the face of the '648 Patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '648 patent.

36.     The claims of the '648 patent are invalid under 35 U.S.C. § 112 for failing to comply with one or more of the written description requirement, the enablement requirement, and the definiteness requirement.

37.     A judicial determination of the respective rights of the parties with respect to the infringement of the claims of the '648 patent is now necessary and appropriate under 28 U.S.C. § 2201.

## COUNTERCLAIM TEN
(Declaratory Judgment of Invalidity of the '197 Patent)

38.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

39.     The claims of the '197 patent are invalid under 35 U.S.C. §§ 102 and/or 103 in light of prior art.   For example, one or more claims of the '197 patent are invalid in view of the references cited on the face of the '197 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '197 patent.

40.     The claims of the '197 patent are invalid under 35 U.S.C. §112 for failing to comply with one or more of the written description requirement, the enablement requirement, and the definiteness requirement.

41.     A judicial determination of the respective rights of the parties with respect to the infringement of the claims of the '197 patent is now necessary and appropriate under 28 U.S.C. § 2201.

## COUNTERCLAIM ELEVEN
(Declaratory Judgment of Invalidity of the '541 Patent)

42.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

43.     The claims of the '541 patent are invalid under 35 U.S.C. §§ 102 and/or 103 in light of prior art.   For example, one or more claims of the '541 Patent are invalid in view of the

references cited on the face of the '541 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '541 Patent.

44.     The claims of the '541 patent are invalid under 35 U.S.C. § 112 for failing to comply with one or more of the written description requirement, the enablement requirement, and the definiteness requirement.

45.     A judicial determination of the respective rights of the parties with respect to the infringement of the claims of the '541 patent is now necessary and appropriate under 28 U.S.C. § 2201.

## COUNTERCLAIM TWELVE
(Declaratory Judgment of Invalidity of the '459 Patent)

46.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

47.     The claims of the '459 patent are invalid under 35 U.S.C. §§ 102 and/or 103 in light of prior art.   For example, one or more claims of the '459 patent are invalid in view of the references cited on the face of the '459 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '459 Patent.

48.     The claims of the '459 patent are invalid under 35 U.S.C. § 112 for failing to comply with one or more of the written description requirement, the enablement requirement, and the definiteness requirement.

49.     A judicial determination of the respective rights of the parties with respect to the infringement of the claims of the '459 patent is now necessary and appropriate under 28 U.S.C. § 2201.

## COUNTERCLAIM THIRTEEN

(Declaratory Judgment of Invalidity of the '662 Patent)

50.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

51.     The claims of the '662 patent are invalid under 35 U.S.C. §§ 102 and/or 103 in light of prior art.   For example, one or more claims of the '662 patent are invalid in view of the references cited on the face of the '662 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '662 Patent.

52.     The claims of the '662 patent are invalid under 35 U.S.C. § 112 for failing to comply with one or more of the written description requirement, the enablement requirement, and the definiteness requirement.

53.     A judicial determination of the respective rights of the parties with respect to the infringement of the claims of the '662 patent is now necessary and appropriate under 28 U.S.C. § 2201.

**COUNTERCLAIM FOURTEEN**
(Declaratory Judgment of Invalidity of the '280 Patent)

54.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

55.     The claims of the '280 patent are invalid under 35 U.S.C. §§ 102 and/or 103 in light of prior art.   For example, one or more claims of the '280 patent are invalid in view of the references cited on the face of the '280 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '280 patent.

56.     The claims of the '280 patent are invalid under 35 U.S.C. § 112 for failing to comply with one or more of the written description requirement, the enablement requirement, and the definiteness requirement.

57.     A judicial determination of the respective rights of the parties with respect to the infringement of the claims of the '280 patent is now necessary and appropriate under 28 U.S.C. § 2201.

## COUNTERCLAIM FIFTEEN
(Declaratory Judgment of Unenforceability of the '648, '541, and '280 Patents)

58.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

59.     As detailed below, at least the '648, '541, and '280 patents are unenforceable because they are owned by Bio-Rad, and/or they do not list all of the inventors.   The inventions of the '648, '541, and '280 patents were conceived in whole or part by Benjamin Hindson, Christopher Hindson, Serge Saxonov, Kevin Ness, Nicholas Heredia, and/or Paul Blainey while employed or contracted by QuantaLife and/or Bio-Rad.   Heredia was a research scientist at QuantaLife and is a co-inventor on at least some of the Asserted Patents, but 10x deliberately omitted naming Heredia as a co-inventor.   Blainey was a technical consultant hired by QuantaLife, but 10x deliberately omitted naming Blainey as a co-inventor one at least some of the Asserted Patents.

60.     10x asserted seven patents in this case, at least 3 of which are all directed to methods and systems for processing polynucleotides by partitioning a plurality of beads in a microwell array (the '648, '541, and '280 patents).

61.     The earliest claimed priority date for the '280 and '541 patent is August 14, 2012—within months after Benjamin Hindson, Christopher Hindson, Saxonov, and Ness left Quanta-Life and/or Bio-Rad between April and September of 2012.

62.     The earliest claimed priority date for the '648 patent is December 14, 2012, also within months after Benjamin Hindson, Christohper Hindson, Saxonov, and Ness left Quanta-Life and/or Bio-Rad between April and September of 2012.

63.     The '648, '541, and '280 patents in this case include named inventors Benjamin Hindson, Serge Saxonov, Christopher Hindson, and Kevin Ness—all former Bio-Rad and/or QuantaLife employees and also early employees or founders of 10x.   The '648, '541, and '280 patents are directed to methods and systems for processing polynucleotides by portioning a plurality of beads in a microwell array.

64.     The '648, '541, and '280 patents however, arose out of these inventors' work at Bio-Rad and its predecessor, and thus are owned by Bio-Rad.

65.     Benjamin Hindson worked at QuantaLife from 2008 to October 2011.   At QuantaLife, Hindson worked on microfluidic devices to generate droplets and developed a commercial product.

66.     Christopher Hindson worked at QuantaLife from Augsut 2010 to October 2011, and then at Bio-Rad from October 2011 to November 2012.

67.     Serge Saxonov worked at QuantaLife from May 2010 to October 2011.

68.     Kevin Ness worked at QuantaLife from September 2008 to September 2012.

69.     In addition to the commercial droplet product, Benjamin Hindson and/or Christopher Hindson and/or Ness and/or Saxonov conceived of processing polynucleotides by portioning a plurality of beads in a microwell array.   Upon information and belief, this concept is demonstrated by QuantaLife lab documentation.   Upon information and belief, Benjamin Hindson, Christopher Hindson, Ness and Saxonov were under contractual obligation to assign to QuantaLife all their ideas, inventions, and discoveries.   Thus, any concepts or ideas from

Benjamin Hindson's, Christopher Hindson's, Ness's, and/or Saxonov's time at QuantaLife are owned by QuantaLife.

70.     Bio-Rad acquired QuantaLife's business and its intellectual property in October 2011 for $162 million cash plus future milestone payments.

71.     After Bio-Rad acquired QuantaLife, Benjamin Hindson, Christopher Hindson, and Saxonov started working at Bio-Rad until they left in 2012.   Benjamin Hindson, Chrisopher Hindson, and Saxonov worked at Bio-Rad for some time, but soon left to form/join 10x.   Ness worked at QuantaLife until September 2012, when he left to form 10x.   While at 10x, in 2012-2013, Benjamin Hindson, Christopher Hindson, Ness and Saxonov almost immediately filed patent applications directed to methods and systems for processing polynucleotides by portioning a plurality of beads in a microwell array – exactly the same subject matter conceived at QuantaLife/Bio-Rad.   At least some of the Asserted Patents derive from those 2012-2013 applications.

72.     Benjamin Hindson's, Christopher Hindson's, Ness's, and Saxonov's concepts and inventions at QuantaLife automatically belonged to QuantaLife (and subsequently Bio-Rad) rendering any future written assignment to 10x invalid.

## JURY DEMAND

73.     Pursuant to Federal rule of Civil Procedure 38, Celsee demands a trial by jury on all issues so triable in this action.

## PRAYER FOR RELIEF

Wherefore, Celsee respectfully requests the following relief:

a)  That 10x take nothing by its Complaint;

b)  That judgment be entered against 10x and in favor of Celsee;

c) That 10x's Complaint be dismissed with prejudice;

d) A declaration that Celsee does not infringe, and has not infringed, directly, or indirectly any claim of the '981 patent;

e) A declaration that Celsee does not infringe, and has not infringed, directly, or indirectly any claim of the '648 patent;

f) A declaration that Celsee does not infringe, and has not infringed, directly, or indirectly any claim of the '197 patent;

g) A declaration that Celsee does not infringe, and has not infringed, directly, or indirectly any claim of the '541 patent;

h) A declaration that Celsee does not infringe, and has not infringed, directly, or indirectly any claim of the '459 patent;

i) A declaration that Celsee does not infringe, and has not infringed, directly, or indirectly any claim of the '662 patent;

j) A declaration that Celsee does not infringe, and has not infringed, directly, or indirectly any claim of the '280 patent;

k) A declaration that each and every claim of the '981 patent is invalid;

l) A declaration that each and every claim of the '648 patent is invalid;

m) A declaration that each and every claim of the '197 patent is invalid;

n) A declaration that each and every claim of the '541 patent is invalid;

o) A declaration that each and every claim of the '459 patent is invalid;

p) A declaration that each and every claim of the '662 patent is invalid;

q) A declaration that each and every claim of the '280 patent is invalid;

r) A declaration that the '648, '541, and '280 patents are unenforceable;

s)   That this case be declared exceptional and Celsee be awarded its costs, expenses,

and reasonable attorneys' fees in this action under 35 U.S.C. § 285; and

t)   That the Court grant Celsee such further relief the Court may deem just and

proper.


Dated:   December 2, 2019                    Respectfully submitted,

                                             FARNAN LLP

                                             /s/ Brian E. Farnan
                                             Brian E. Farnan (Bar No. 4089)
                                             Michael J. Farnan (Bar No. 5165)
                                             919 North Market Street, 12th Floor
                                             Wilmington, DE 19801
                                             Telephone: 302-777-0300
                                             Facsimile: 302-777-0301
                                             bfarnan@farnanlaw.com
                                             mfarnan@farnanlaw.com

                                             Edward R. Reines (admitted *pro hac vice*)
                                             Derek C. Walter (admitted *pro hac vice*)
                                             WEIL, GOTSHAL & MANGES LLP
                                             201 Redwood Shores Parkway
                                             Redwood Shores, CA 94065
                                             Telephone:   650-802-3000
                                             Facsimile:   650-802-3100
                                             edward.reines@weil.com
                                             derek.walter@weil.com

                                             *Attorneys for Defendant*