**RICHARDS LAYTON & FINGER**

Frederick L. Cottrell, III
Director
302-651-7509
Cottrell@rlf.com

December 11, 2019

**VIA CM/ECF & HAND DELIVERY**
The Honorable Sherry R. Fallon
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801

   Re: *10x Genomics, Inc. v. Celsee, Inc.*, C.A. No. 19-862-CFC-SRF

Dear Judge Fallon:

The parties seek resolution of one dispute concerning the otherwise-stipulated protective order to govern this action. To protect its most sensitive information in this competitor case, which includes allegations that Defendant Celsee, Inc. ("Celsee") has copied virtually every aspect of Plaintiff 10x Genomics Inc. ("10x")'s business, 10x has proposed a protective order with a true "outside counsel's eyes only" tier. Celsee, by contrast, proposes that it should be able to give its in-house counsel access to all of the information produced by 10x in this case, based only on Celsee's say-so that those lawyers aren't involved in "competitive decision making related to partitioning and tagging of single cells in microfluidic devices and related chemical reactions." Celsee's proposal is contrary to the caselaw concerning whether and under what circumstances in-house counsel should be allowed access to another party's highly confidential information. 10x requests that the Court adopt its proposed protective order including an "outside counsel's eyes only" designation.

**Background**

This is a competitor patent case. 10x has alleged that Celsee has copied 10x's technology and business in an attempt to capture market share and divert business from 10x, down to reproducing 10x's job postings verbatim. *See* D.I. 31 (First Amended Compl.) ¶¶ 20–24. Accordingly, 10x has proposed a protective order with a true "attorney's eyes only" tier to protect its most sensitive technical and business information. Under 10x's proposal, information produced with the "outside counsel's eyes only" designation could be shown to outside counsel, the Court, experts, jury and graphics consultants, and mock jurors, but not to employees of the receiving party. A lower "confidential" tier would permit sharing information with up to five officers, directors, or employees of the receiving party.

The Court's deadline for submitting the parties' stipulated protective order for approval was December 5, 2019. *See* D.I. 32 (Scheduling Order) ¶ 3. 10x sent its proposed protective order to Celsee's counsel on November 22. 10x heard nothing in reply until December 4. Just before 9pm ET on the night before a stipulation was due to the Court, Celsee for the first time sent back a

revision permitting access to all "attorney's eyes only" information by in-house counsel of Celsee's choosing so long as, in Celsee's judgment, that person was not a competitive decisionmaker "relating to" a particular technological area:

> Designated Material marked "OUTSIDE ATTORNEYS' EYES ONLY" may be disclosed only to . . . up to two (2) in-house attorneys of the Receiving Party, provided they have signed a non-disclosure agreement in the form attached hereto as Exhibit A, further provided that the in-house attorneys are identified in writing to counsel at least three business days prior to the disclosure of any protected material to such attorneys, and further provided that during this litigation and for three years after the completion of this litigation, including appeals, the identified attorneys do not have direct responsibility for or direct involvement in the prosecution of patent applications or in competitive decision making related to partitioning and tagging of single cells in microfluidic devices and related chemical reactions; for the avoidance of doubt, it is agreed and understood that subordinates of the identified attorneys may engage in patent prosecution relating to partitioning and tagging of single cells in microfluidic devices and related chemical reactions so long as the identified attorneys do not personally participate in such prosecution, and provided that such identified attorneys do not communicate any protected material learned during this litigation to such subordinates and do not communicate with such subordinates regarding this case or patent prosecution relating to partitioning and tagging of single cells in microfluidic devices and related chemical reactions.

**A True "Outside Counsel's Eyes Only" Tier is Appropriate Here**

The Court has inherent power to "restrict an individual attorney's access to a trade secret or other confidential information when there is an unacceptable opportunity for inadvertent disclosure." *Blackbird Tech LLC v. Serv. Lighting & Elec. Supplies, Inc.*, No. 15-53-RGA, 2016 WL 2904592, at *1 (D. Del. May 18, 2016). In determining whether an unacceptable opportunity for inadvertent disclosure exists, courts consider whether the particular in-house counsel to receive the confidential information is "involved in competitive decisionmaking," which is "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 & n.3 (Fed. Cir. 1984). The court then must "balance this risk against the potential harm to the opposing party from restrictions imposed upon that party's right to have the benefit of counsel of its choice." *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1380 (Fed. Cir. 2010).

Where competent outside counsel represent the parties, "courts have little trouble balancing the harms in protective order disputes, often readily concluding that the outside counsel of a party's choice can adequately represent its interests even if in-house counsel is precluded from viewing confidential information." *Blackbird*, 2016 WL 2904592, at *5. The mere need to manage outside counsel is not a compelling factor weighing in favor of permitting disclosure. *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. 2000). Courts have found that the balance of harms

Honorable Sherry R. Fallon
December 11, 2019
Page 3

favors restricting access where the parties in the lawsuit are "direct competitors, and confidential information about products that compete against each other in the market will be involved in the litigation." *Id.* at 531. The same is true where the receiving party's in-house counsel is among the only lawyers at a small company, because the risk of inadvertent disclosure is correspondingly higher in light of the close relationship between the attorney and company decisionmakers in such a case. *PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, No. CV 16-403-LPS-CJB, 2017 WL 4138961, at *5 (D. Del. Sept. 18, 2017).

The balance of equities here weighs in favor of an "outside counsel's eyes only" designation. The parties compete head-to-head in the same market for high-tech products. *See* D.I. 31 (First Amended Compl.) ¶¶ 6–19. 10x has alleged that Celsee has taken steps to directly copy aspects of its technology and business. *See, e.g.*, *id.* ¶¶ 12–24. Celsee has emphasized to this Court that it is a "tiny, tiny, tiny company" with around 60 employees. *See* Ex. A (Tr. of Oct. 2, 2019, oral argument at 6:2–8). Celsee's part-time general counsel is also a scientist with a Ph.D. in biochemistry. *See* Ex. B. At the same time, Weil Gotshal, one of the nation's leading intellectual property litigation firms, represents Celsee. Celsee cannot demonstrate a compelling interest to grant its in-house counsel access to 10x's most confidential information, which here is likely to include technical information about 10x's products embodying the asserted claims, as well as information about 10x's pricing, business strategy, and financial condition.

**<u>Celsee's Proposed Provision Should in No Event Be Adopted</u>**

Celsee's proposed protective order is particularly problematic because it would permit Celsee to disclose 10x's confidential information to any Celsee employee whom **Celsee** deems not to be involved in "competitive decision making related to partitioning and tagging of single cells in microfluidic devices and related chemical reactions," upon three days' notice to 10x and without a realistic opportunity for 10x to raise the matter with the Court. That is not appropriate. At a minimum, before any information is disclosed to in-house counsel, the Court should require Celsee to disclose the names, titles, and job responsibilities of the individuals to whom Celsee would propose to disclose 10x's highly confidential information, and to detail the safeguards it has put in place to limit the chance of inadvertent disclosure.[1] The Court should then give the parties the opportunity to brief for the Court's resolution any disputes as they pertain to the particular individuals identified.

When courts have granted in-house counsel access to confidential material over the producing party's objection, they have closely examined the duties and responsibilities of the ***particular employee or employees*** seeking access, in order to assess both their need to know the information and the risk of disclosure in light of their role in the company. *See, e.g.*, *British Telecommc'ns PLC v. IAC/InterActiveCorp.*, 330 F.R.D. 387, 389–94 (D. Del. 2019) (Bryson, J.); *Blackbird*, 2016 WL 2904592, at *2–3; *Boehringer Ingelheim Pharm., Inc. v. Hercon Labs. Corp.*, No. 89-484-CMW, 1990 WL 160666, at *1–2 (D. Del. Oct. 12, 1990). These courts have evaluated the extent of those employees' involvement in competitive decisionmaking full-stop, not merely competitive decisionmaking "related to" a particular technological area. *British Telecommc'ns*, 330 F.R.D. at 391-92. And they have considered the extent to which the receiving party has

---

[1] 10x may seek an opportunity to do the same for its in-house counsel.

Honorable Sherry R. Fallon
December 11, 2019
Page 4

"implemented . . . safeguards to protect against inadvertent disclosure and to ensure that the [receiving attorneys] do[] not assume a role in the management or competitive decision-making activities of the Company." *Affymetrix, Inc. v. Illumina, Inc.*, No. Civ. A. 04-901-JJF, 2005 WL 1801683, at *2 (D. Del. July 28, 2005). Celsee has failed to provide the information that would permit 10x and the Court to conduct this analysis.

**Conclusion**

10x respectfully requests that the Court enter its version of the proposed protective order (attached hereto as Ex. C)[2] maintaining a true "outside counsel's eyes only" tier of confidential information in this case.

Respectfully submitted,

*/s/ Frederick L. Cottrell, III*

Frederick L. Cottrell, III (#2555)

cc:   All Counsel of Record (via CM/ECF and email)

---

[2] In the last version of the Protective Order circulated between the parties, 10x proposed the removal of the phrase "in microfluidic devices" from the Prosecution Bar (11.a). 10x has not heard from Celsee that this phrase is in dispute and therefore the phrase has been omitted from the proposed Protective Order.