

December 12, 2019

**VIA E-FILING**
The Honorable Sherry R. Fallon
J. Caleb Boggs Federal Building
844 N. King Street
Room 3124, Unit 14
Wilmington, DE 19801-3555

Re:   *10x Genomics, Inc. v. Celsee, Inc.*
      **C.A. No. 19-cv-862-CFC-SRF**

Dear Judge Fallon:

In this case, 10x Genomics, Inc. ("10x") alleges that Celsee, Inc. ("Celsee") (1) willfully infringes seven patents, (2) has engaged in false advertising, and (3) has violated the Delaware Deceptive Trade Practices Act.  10x has also made clear by its pleading and discovery requests that it is hoping to pursue trade secret allegations.  10x, which is a publicly traded company that recently raised over $300 million in its IPO, is seeking an injunction and hopes to effectively shut down Celsee, a startup with a small number of employees that only recently began offering its product.

Given the breadth of allegations against Celsee and the scope of relief 10x is seeking, it is critical for someone within Celsee to be able to evaluate the claims against it based on the full scope of information that 10x is relying upon.  It is insufficient here for only Celsee's outside attorneys to know, understand, and be able to evaluate the basis for 10x's numerous claims.

Accordingly, Celsee has proposed to include in the protective order a provision that allows a maximum of two in-house attorneys on each side to review material that has been designated "Highly Confidential – Outside Attorneys' Eyes Only."  Celsee recognizes the sensitivity of this information, and has thus included important restrictions:

- The in-house attorneys must be identified to the producing party in advance of disclosure.
- The in-house attorneys must certify that they will not be involved in patent prosecution.
- The in-house attorneys must certify that they will not be involved in strategic decision making relating to the technical subject matter of this case.
- The in-house attorneys must sign a written certification confirming that they will not disclose protected information to other individuals.

*See* Ex. A sec 8(c)(ix).  Given these restrictions, there is no realistic risk to 10x of improper disclosure or use of its sensitive information.  Allowing an in-house attorney who has agreed to the foregoing restrictions to review material that has been designated "Highly Confidential – Outside Attorneys' Eyes Only" will simply allow both parties to more effectively evaluate the claims and defenses.

Celsee's approach has additional benefits. Because the parties themselves will be better informed regarding their opponents' claims and defenses, settlement will potentially be facilitated. Likewise, because in-house attorneys for each party will have access to material that has been designated "Highly Confidential – Outside Attorneys' Eyes Only," there will be less need for motion practice over whether material has been improperly designated.

As documented below, 10x has no persuasive response on either the law or facts that would justify precluding a limited group of in-house attorneys from accessing all information relevant to the case.

**<u>Celsee In-House Counsel Should Have Access to Confidential Case Information</u>**

An attorney should not be denied access to sensitive business information based solely on his status as an in-house counsel. *United States Steel Corp. v. United States*, 730 F.2d 1465, 1469 (Fed. Cir. 1984). Rather, courts must balance the need for access with the risk of inadvertent disclosures. *Id.* at 1468. Indeed, "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure." *Id.* The "counsel-by-counsel determination should turn on the extent to which counsel is involved in 'competitive decisionmaking' with its client." *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).

Importantly, a "determination of the risk of inadvertent disclosure or competitive use does not end the inquiry." *Id.* at 1380. "Even if a district court is satisfied that such a risk exists, the district court must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." *Id.* "In making this determination, the courts should consider such things such as the extent and duration of counsel's past history in representing the client before the PTO, the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel to represent it before the PTO." *Id.* at 1381.

Applying the above factors, the balance weighs in favor of Celsee. As articulated above, the in-house counsel would be completely removed from patent prosecution and any strategic decision making related to the technical matter of this case. Celsee's in-house attorney, Christian LaPointe, has only been with Celsee for a few months. *See* D.I. 45-2, Ex. B. And he works remotely from his home in Boston, not at Celsee's facility in Michigan. Ex. B. There is no ingrained history of Mr. LaPointe being involved in patent prosecution or strategic decision making on behalf of Celsee, and it will not be a challenge for Celsee to rely on other resources for this purpose because it has historically been doing so.

Moreover, while 10x's letter alleges that Celsee has "copied virtually every aspect of 10x's business," D.I. 45 at 1, the fact is that Celsee's and 10x's product lines rely on different partitioning technology. As documented in Celsee's motion to dismiss, Celsee's Genesis System isolates cells using a ***gravity-induced*** micro-well isolation technique. D.I. 12 at 3. By contrast, 10x's product

captures cells in tiny volumes of fluid using *droplet* technology.  *Id.*  This further minimizes the risk of potential harm from inadvertent disclosure of confidential information.

In circumstances such as these, courts, both in this district and others, regularly endorse access provisions of the type Celsee is proposing.  *See, e.g.*, *Evertz Microsystems Ltd. v. Lawo Inc. et al.*, C.A. No. 19-302-MN-JLH, 2019 WL 5864173, at *3 (D. Del. Nov. 8, 2019) (allowing two of Plaintiff's longtime outside counsel access to confidential technical information because "with the prosecution bar…there is no basis on this record to think that [the two outside counsel] will be advising on and participating in competitive decisionmaking any more than any other outside counsel); *Affymetrix, Inc. v. Illumina, Inc.*, C.A. No. 04-901-JJF, 2005 WL 1801683, at *2 (D. Del. July 28, 2005) (D. Del. July 28, 2005) (allowing plaintiff's in-house counsel access to highly confidential and sensitive documents where the plaintiff "implemented numerous safeguards to protect against inadvertent disclosure and to ensure that [the in-house counsel] does not assume a role in the management or competitive decision-making activities of the Company," but denying similar access to the defendant's in-house counsel because she had a "role that is linked to competitive decision-making."); *R.R. Donnelley & Sons Co. v. Quark, Inc.*, C.A. No. 06-032 JJF, 2007 WL 61885, at *1 (D. Del. Jan. 4, 2007) (allowing Plaintiff's chief patent counsel access to confidential information because his position did not "report directly to any business person with direct responsibility for competitive decision-making," but denying similar access to the defendant's in-house counsel because he served a supervisory role in the company's "research and development and applications engineering and other strategic initiatives"); *Boehringer Ingelheim Pharmaceuticals, Inc. v. Hercon Laboratories Corp.*, C.A. No. 89-484-CMW, 1990 WL 160666, at *2 (D. Del. Oct. 12, 1990) (allowing plaintiff's six in-house counsel access to confidential information because the "capability on the part of each attorney to exclude himself or herself from conflicting work, avoids the possibility of conscious or unconscious abuse of confidential information," but denying similar access to the plaintiff's in-house technical personnel because "there is no assurance that in-house technical personnel can be segregated from future conflicting work"); *MMCA Grp., Ltd. v. Hewlett-Packard Co.*, No. C-06-7067 MMC (EMC), 2009 WL 595537, at *1 (N.D. Cal. Mar. 5, 2009) (allowing HP's in-house counsel access to confidential information because "the Court is sufficiently satisfied that the risk of disclosure of MMCA's trade secrets to competitors is minimal, particularly since the HP attorneys are willing to sign acknowledgement attached to the protective order").

Instead of analyzing the relevant factors set forth in Federal Circuit cases, 10x's letter is comprised of a series of unsupported assertions and citations to inapt authority.  10x states that the need to manage outside counsel is not a compelling factor weighing in favor of permitting disclosure.  D.I. 45 at 2 (citing *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. 2000)).  Yet, Celsee has never suggested that it seeks to include its in-house counsel in the terms of the protective order simply to "manage outside counsel."  Rather, Celsee seeks to grant its in-house counsel access to case material because it is important to Celsee's ability to fairly defend itself against the breadth of 10x's claims.

The remainder of 10x's letter is comprised of citations to inapposite cases.  10x, for instance relies on *Blackbird Tech LLC v. Serv. Lighting & Elec. Supplies, Inc.*, C.A. No. 15-53-

3

RGA, 2016 WL 2904592, at *5 (D. Del. May 18, 2016). Yet, in *Blackbird*, the plaintiff's in-house counsel was ***allowed*** access to confidential information in exchange for an agreement to a prosecution bar and covenant not to sue the defendants on after-acquired patents. If anything, *Blackbird* supports Celsee's position. 10x's other cases are similarly inapt. *See, e.g.*, *PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, No. CV 16-403-LPS-CJB, 2017 WL 4138961 (D. Del. Sept. 18, 2017) (denying access where in-house counsel was heavily involved with pricing and product design, intellectual property and license enforcement, and patent prosecution); *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000) (denying access where in-house counsel was actively involved with licensing negotiations and reported directly to general managers when evaluating license agreements).

10x concludes that Celsee "cannot demonstrate a compelling interest to grant its in-house counsel access to 10x's most confidential information." D.I. 45 at 3. 10x, however, does not point to any authority suggesting that Celsee must satisfy a "compelling interest." Nor could it, as this is not the inquiry. The inquiry is, as stated above, a simple balancing test between potential harm from depriving a party of its chosen counsel and the perceived risk of inadvertent disclosure. *United States Steel*, 730 F.2d at 1469; *In re Deutsche Bank*, 605 F.3d at 1378.

### 10x's Alternative Proposal

In what appears to be an alternative proposal, 10x suggests that the Court should require Celsee to disclose the names, titles, and job responsibilities of the individuals to whom Celsee would propose to disclose 10x information, and to detail the safeguards it has put in place. D.I. 45 at 3. As 10x recognizes, however, Celsee's proposed protective order provision already requires three days notice to 10x of the in-house counsels' identities. With no basis, 10x summarily dismisses the three day notice period as depriving it of "a realistic opportunity for 10x to raise the matter with the Court." *Id.* To the extent it would resolve the dispute, Celsee agrees to a reasonable increase in the duration of the notice period.

As to job responsibilities, Celsee reiterates that the two identified in-house counsel will neither be involved in patent prosecution nor strategic decision making relating to the technical subject matter of this case. As noted above, Celsee's in-house attorney already works remotely and does not have a regular physical presence at Celsee's facility, which acts as a safeguard and further minimizes the risk of inadvertent disclosure.

### Conclusion

For at least these reasons, Celsee respectfully requests that the Court accept Celsee's proposal to include a provision allowing a maximum of two in-house attorneys on each side to review material that has been designated "Highly Confidential – Outside Attorneys' Eyes Only."

                          Respectfully submitted,

                          /s/ Brian E. Farnan

                          Brian E. Farnan

cc: Counsel of Record (Via E-Filing)