## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10x GENOMICS, INC., | Case No. 19-cv-862-CFC-SRF |
| Plaintiff, | |
| v. | DEMAND FOR JURY TRIAL |
| CELSEE, INC., | |
| Defendant. | |

**DEFENDANT CELSEE, INC.'S FIRST AMENDED ANSWER AND COUNTERCLAIMS TO 10x GENOMICS, INC.'S COMPLAINT FOR PATENT INFRINGEMENT, UNFAIR COMPETITION, AND FALSE ADVERTISING**

Defendant Celsee, Inc. ("Celsee" or "Defendant") answers ("Answer") Plaintiff 10x Genomics, Inc.'s ("10x" or "Plaintiff") First Amended Complaint ("Complaint") for patent Infringement, unfair competition, false advertising, and related claims under the laws of the State of Delaware, filed on November 14, 2019, and asserts counterclaims against 10x as follows:

### I.      NATURE OF THE ACTION

1.      Celsee admits that the Complaint purports to state an action arising under the patent laws of the United States of America, 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. § 271; unfair competition and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and for related claims under the laws of the State of Delaware.   Except as so admitted, denied.

### II.      THE PARTIES

2.      Celsee admits, on information and belief, that 10x is a corporation existing under the laws of Delaware, with an office in Pleasanton, CA.

3.      Celsee admits that it is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Ann Arbor, Michigan.

### III.   JURISDICTION AND VENUE

4.      Celsee admits that these claims arise under the patent laws of the United States, 35

U.S.C. §§ 1, *et seq.*, under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and under the Delaware

Deceptive Trade Practices Act, 6 Del. C. §§ 2531 *et seq.*, and that this Court has jurisdiction

pursuant to 28 U.S.C. §§ 1331, 1338, and 28 U.S.C. sec 1367.

5.      Celsee admits it is subject to personal jurisdiction in this judicial district for the

purposes of this action.    Celsee further admits that venue is proper in this judicial district under

28 U.S.C. § 1400(b) because Celsee is a Delaware corporation.

### IV.   BACKGROUND

6.      Celsee lacks knowledge or information sufficient to form a belief as to the truth of

the allegations of paragraph 6 of the Complaint and therefore denies those allegations.

7.      Celsee lacks knowledge or information sufficient to form a belief as to the truth of

the allegations of paragraph 7 of the Complaint and therefore denies those allegations.

8.      Celsee lacks knowledge or information sufficient to form a belief as to the truth of

the allegations of paragraph 8 of the Complaint and therefore denies those allegations.

9.      Celsee lacks knowledge or information sufficient to form a belief as to the truth of

the allegations of paragraph 9 of the Complaint and therefore denies those allegations.

10.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of

the allegations of paragraph 10 of the Complaint and therefore denies those allegations.

11.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of

the allegations of paragraph 11 of the Complaint and therefore denies those allegations.

12.     Celsee admits that it launched its Genesis System on October 25, 2018 as a product

that was intended to overcome prior limits in single-cell analysis.    Except as so admitted, denied.

13.     Celsee admits that its website states that the "Genesis System enables scientists to analyze molecular signatures from hundreds to millions of cells."   Except as so admitted, denied.

14.     Celsee admits that its website states that "Celsingle$^{TM}$ capture and isolate single cells with a gentle, gravity-based approach.   Discrete microwells allow a single cell to be paired with a unique cellular barcode and unique molecular indices for desired applications, such as gene expression or protein quantitation."   Except as so admitted, denied.

15.     Celsee admits that the cited portion of its website describes the features and benefits of certain Celsee products.   Except as so admitted, denied.

16.     Celsee admits that its website states that "[t]he scalability of this approach is unmatched and has the potential to provide a 10x increase in cell throughout compared with other technologies."   Except as so admitted, denied.

17.     Celsee admits that its website states that "[t]he Genesis System enables a range of single-cell applications with Celsingle$^{TM}$ or Celselect$^{TM}$ Slides supporting hundreds to millions of cells per experiment." Celsee further admits that its website states that "Celsingle™ Slides capture and isolate single cells with a gentle, gravity-based approach.  Discrete microwells allow a single cell to be paired with a unique cellular barcode and unique molecular indices for desired applications, such as gene expression or protein quantitation."   Except as so admitted, denied.

18.     Celsee admits that it launched its Genesis System on October 25, 2018.   Except as so admitted, denied.

19.     Denied.

20.     Denied.

21.     Denied.

3

22.    Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 of the Complaint and therefore denies those allegations.

23.    Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 of the Complaint and therefore denies those allegations.

24.    Denied.

25.    Denied.

26.    Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26 of the Complaint, including, for instance, 10x's view of the meaning of "key criterion" and what customers rely upon for purchasing decisions.   On these bases, Celsee denies the allegations of paragraph 26.

27.    Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27 of the Complaint and therefore denies those allegations.

28.    Celsee admits that its promotional literature states "Because every cell matters.[TM]" Celsee admits that its website states, "Deep and accurate view of cell populations with >70% capture of input cells." Except as so admitted, denied.

29.    Celsee admits that its promotional literature states "Deep and accurate view of cell populations with >70% capture of input cells."   Except as so admitted, denied.

30.    Denied.

31.    Denied.

32.    Celsee denies that it has made any misrepresentations regarding the cell capture rate of its Genesis Platform and, on this basis denies this allegation.

33.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33 regarding 10x's view of "reasonable consumers."    On these bases, Celsee denies the allegations of paragraph 33.

34.     Celsee denies that it has engaged in misleading or deceptive practices and, on this basis denies this allegation.

## V.      THE PATENTS-IN-SUIT

35.     Celsee denies that its products practice any of the claims of U.S. Patent Nos.: 10,155,981; 10,227,648; 10,240,197; 10,273,541; 10,280,459; 10,392,662; and 10,400,280 as properly construed and on this basis, denies this allegation.

## VI.      FIRST CAUSE OF ACTION                                    (CELSEE'S INFRINGEMENT OF U.S. PATENT NO. 10,155,981)

36.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

37.     Celsee admits, on information and belief, that the '981 patent states that it issued on December 18, 2018 to Sydney Brenner, Gi Mikawa, Robert Osborne, and Andrew Slatter. Except as so admitted, denied.

38.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38 of the Complaint and therefore denies those allegations.

39.     Celsee admits that it became aware of the existence of the '981 patent and its claims on May 17, 2019, the day the original Complaint in this action was filed.    Except as so admitted, denied.

40.     Celsee denies that its products practice any of the claims of the '981 patent as properly construed and, on this basis denies this allegation.

41.     Celsee denies that its products practice any of the claims of the '981 patent as properly construed and, on this basis denies this allegation.

42.     Celsee denies that its products practice any of the claims of the '981 patent as properly construed and, on this basis denies this allegation.

43.     Celsee denies that its products practice any of the claims of the '981 patent as properly construed and, on this basis denies this allegation.

44.     Celsee denies that its products practice any of the claims of the '981 patent as properly construed and, on this basis denies this allegation.

45.     Denied.

46.     Celsee denies that its products practice any of the claims of the '981 patent as properly construed and, on this basis denies this allegation.

47.     Celsee denies that its products practice any of the claims of the '981 patent as properly construed and, on this basis denies this allegation.

## VII.     SECOND CAUSE OF ACTION
## (CELSEE'S INFRINGEMENT OF U.S. PATENT NO. 10,240,197)

48.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

49.     Celsee admits, on information and belief, that the '197 patent states that it issued on March 26, 2019 to Sydney Brenner, Gi Mikawa, Robert Osborne, and Andrew Slatter.   Except as so admitted, denied.

50.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 50 of the Complaint and therefore denies those allegations.

51.     Celsee admits that it became aware of the existence of the '197 patent and its claims on May 17, 2019, the day the original Complaint in this action was filed.    Except as so admitted, denied.

52.     Celsee denies that its products practice any of the claims of the '197 patent as properly construed and, on this basis denies this allegation.

53.     Celsee denies that its products practice any of the claims of the '197 patent as properly construed and, on this basis denies this allegation.

54.     Celsee denies that its products practice any of the claims of the '197 patent as properly construed and, on this basis denies this allegation.

55.     Celsee denies that its products practice any of the claims of the '197 patent as properly construed and, on this basis denies this allegation.

56.     Celsee denies that its products practice any of the claims of the '197 patent as properly construed and, on this basis denies this allegation.

57.     Denied.

58.     Celsee denies that its products practice any of the claims of the '197 patent as properly construed and, on this basis denies this allegation.

59.     Celsee denies that its products practice any of the claims of the '197 patent as properly construed and, on this basis denies this allegation.

## VIII.   THIRD CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,227,648)

60.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

61.     Celsee admits, on information and belief, that the '648 patent states that it issued on March 12, 2019 to Benjamin Hindson, Serge Saxonov, Kevin Ness, and Paul Hardenbol. Except as so admitted, denied.

62.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 62 of the Complaint and therefore denies those allegations.

63.     Celsee admits that it became aware of the existence of the '648 patent and its claims on May 17, 2019, the day the original Complaint in this action was filed.    Except as so admitted, denied.

64.     Celsee denies that its products practice any of the claims of the '648 patent as properly construed and, on this basis denies this allegation.

65.     Celsee denies that its products practice any of the claims of the '648 patent as properly construed and, on this basis denies this allegation.

66.     Denied.

67.     Celsee denies that its products practice any of the claims of the '648 patent as properly construed and, on this basis denies this allegation.

68.     Celsee denies that its products practice any of the claims of the '648 patent as properly construed and, on this basis denies this allegation.

## IX.     FOURTH CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,273,541)

69.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

70.     Celsee admits, on information and belief, that the '541 patent states that it issued on April 30, 2019 to Benjamin Hindson, Christopher Hindson, Michael Schnall-Levin, Kevin Ness, Mirna Jarosz, Serge Saxonov, and Paul Hardenbol.    Except as so admitted, denied.

71.     Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 71 of the Complaint and therefore denies those allegations.

72.     Celsee admits that it became aware of the existence of the '541 patent and its claims on May 17, 2019, the day the original Complaint in this action was filed.    Except as so admitted, denied.

73.     Celsee denies that its products practice any of the claims of the '541 patent as properly construed and, on this basis denies this allegation.

74.     Celsee denies that its products practice any of the claims of the '541 patent as properly construed and, on this basis denies this allegation.

75.     Celsee denies that its products practice any of the claims of the '541 patent as properly construed and, on this basis denies this allegation.

76.     Celsee denies that its products practice any of the claims of the '541 patent as properly construed and, on this basis denies this allegation.

77.     Celsee denies that its products practice any of the claims of the '541 patent as properly construed and, on this basis denies this allegation.

78.     Denied.

79.     Celsee denies that its products practice any of the claims of the '541 patent as properly construed and, on this basis denies this allegation.

80.     Celsee denies that its products practice any of the claims of the '541 patent as properly construed and, on this basis denies this allegation.

## X.     FIFTH CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,280,459)

81.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

82. Celsee admits, on information and belief, that the '459 patent states that it issued on May 7, 2019 to Sydney Brenner, Gi Mikawa, Robert Osborne, and Andrew Slatter.   Except as so admitted, denied.

83. Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 83 of the Complaint and therefore denies those allegations.

84. Celsee admits that it became aware of the existence of the '459 patent and its claims on May 17, 2019, the day the original Complaint in this action was filed.   Except as so admitted, denied.

85. Celsee denies that its products practice any of the claims of the '459 patent as properly construed and on this basis denies this allegation.

86. Celsee denies that its products practice any of the claims of the '459 patent as properly construed and on this basis denies this allegation.

87. Celsee denies that its products practice any of the claims of the '459 patent as properly construed and on this basis denies this allegation.

88. Celsee denies that its products practice any of the claims of the '459 patent as properly construed and on this basis denies this allegation.

89. Celsee denies that its products practice any of the claims of the '459 patent as properly construed and on this basis denies this allegation.

90. Denied.

91. Celsee denies that its products practice any of the claims of the '459 patent as properly construed and on this basis denies this allegation.

92. Celsee denies that its products practice any of the claims of the '459 patent as properly construed and on this basis denies this allegation.

## XI.    SIXTH CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,392,662)

93.    Celsee re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

94.    Celsee admits, on information and belief, that the '662 patent states that it issued on August 27, 2019 to Sydney Brenner, Gi Mikawa, Robert Osborne, and Andrew Slatter. Except as so admitted, denied.

95.    Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 95 of the Complaint and therefore denies those allegations.

96.    Denied.

97.    Celsee denies that its products practice any of the claims of the '662 patent as properly construed and on this basis denies this allegation.

98.    Celsee denies that its products practice any of the claims of the '662 patent as properly construed and on this basis denies this allegation.

99.    Celsee denies that its products practice any of the claims of the '662 patent as properly construed and on this basis denies this allegation.

100.    Celsee denies that its products practice any of the claims of the '662 patent as properly construed and on this basis denies this allegation.

## XII.    SEVENTH CAUSE OF ACTION
### (INFRINGEMENT OF U.S. PATENT NO. 10,400,280)

101.    Celsee re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

102.    Celsee admits, on information and belief, that the '280 patent states that it issued on September 3, 2019 to Benjamin Hindson, Chrisopher Hindson, Michael Schnall-Levin, Kevin Ness, Mirna Jarosz, Serge Saxonov, and Paul Hardenbol.    Except as so admitted, denied.

11

103.    Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 103 of the Complaint and therefore denies those allegations.

104.    Denied.

105.    Celsee denies that its products practice any of the claims of the '280 patent as properly construed and on this basis denies this allegation.

106.    Celsee denies that its products practice any of the claims of the '280 patent as properly construed and on this basis denies this allegation.

107.    Celsee denies that its products practice any of the claims of the '280 patent as properly construed and on this basis denies this allegation.

108.    Celsee denies that its products practice any of the claims of the '280 patent as properly construed and on this basis denies this allegation.

109.    Celsee denies that its products practice any of the claims of the '280 patent as properly construed and on this basis denies this allegation.

110.    Denied.

111.    Celsee denies that its products practice any of the claims of the '280 patent as properly construed and on this basis denies this allegation.

112.    Celsee denies that its products practice any of the claims of the '280 patent as properly construed and on this basis denies this allegation.

### XIII.   EIGHTH CAUSE OF ACTION
### (UNFAIR COMPETITION UNDER THE LANHAM ACT)

113.    Celsee re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

114.    Celsee admits that its website states, "Deep and accurate view of cell populations with >70% capture of input cells." Except as so admitted, denied.

12

115.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

116.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

117.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

118.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

119.    Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 119, particular regarding 10x's view of direct competition.    On this basis, Celsee denies the allegations of paragraph 119.

120.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

121.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

## XIV.   NINTH CAUSE OF ACTION
## (VIOLATION OF DELAWARE DECEPTIVE TRADE PRACTICES ACT

122.    Celsee re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

123.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

124.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

125.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

126.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

127.    Celsee lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 127, particular regarding 10x's view of direct competition.    On this basis, Celsee denies the allegations of paragraph 127.

128.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

129.    Celsee denies that it has made any false or misleading representations of fact and on this basis denies this allegation.

## RESPONSE TO 10X'S PRAYER FOR RELIEF

Celsee denies that 10x is entitled to any relief whatsoever, including the relief stated in Paragraphs a-k in the Complaint, from either Celsee or the Court, either as prayed for in the Complaint or otherwise.

## GENERAL DENIAL

Celsee further denies each and every allegation in the Complaint that is not specifically admitted, denied, or otherwise responded to in this Answer.

## DEFENSES

Celsee alleges and asserts the following defenses in response to the allegations in the Complaint.

14

**First Defense – Noninfringement of the '981 Patent**

130.     Celsee has not infringed and is not infringing directly, indirectly, contributorily, by inducement, or in any other manner any valid and enforceable claim of the '981 patent, either literally or by the doctrine of equivalents.

**Second Defense – Noninfringement of the '648 Patent**

131.     Celsee has not infringed and is not infringing directly, indirectly, contributorily, by inducement, or in any other manner any valid and enforceable claim of the '648 patent, either literally or by the doctrine of equivalents.

**Third Defense – Noninfringement of the '197 Patent**

132.     Celsee has not infringed and is not infringing directly, indirectly, contributorily, by inducement, or in any other manner any valid and enforceable claim of the '197 patent, either literally or by the doctrine of equivalents.

**Fourth Defense – Noninfringement of the '541 Patent**

133.     Celsee has not infringed and is not infringing directly, indirectly, contributorily, by inducement, or in any other manner any valid and enforceable claim of the '541 patent, either literally or by the doctrine of equivalents.

**Fifth Defense – Noninfringement of the '459 Patent**

134.     Celsee has not infringed and is not infringing directly, indirectly, contributorily, by inducement, or in any other manner any valid and enforceable claim of the '459 patent, either literally or by the doctrine of equivalents.

**Sixth Defense – Noninfringement of the '662 Patent**

135.    Celsee has not infringed and is not infringing directly, indirectly, contributorily, by inducement, or in any other manner any valid and enforceable claim of the '662 patent, either literally or by the doctrine of equivalents.

### Seventh Defense – Noninfringement of the '280 Patent

136.    Celsee has not infringed and is not infringing directly, indirectly, contributorily, by inducement, or in any other manner any valid and enforceable claim of the '280 patent, either literally or by the doctrine of equivalents.

### Eighth Defense – Invalidity of the '981 Patent

137.    One or more claims of the '981 patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, et seq., including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, 112, and § 256.   One or more claims of the '981 patent are invalid in view of the prior art, including references cited on the face of the '981 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '981 patent.   For example, one or more claims of the '981 patent are invalid in view of the following: WO 2010/117620 A2 (Linnarson); "Encoding PCR Products with Batch-stamps and Barcodes" (McCloskey et al.).   In addition, one or more claims of the '981 patent are invalid because the full scope of those claims is not enabled, nor described, by the written description of the '981 patent, and those claims are indefinite.

### Ninth Defense – Invalidity of the '648 Patent

138.    One or more claims of the '648 patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, et seq., including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, 112, 115, 116 and § 256.   One or more claims of the '648 patent are invalid in view of the prior art, including references cited on

the face of the '648 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '648 patent.    For example, one or more claims of the '648 patent are invalid in view of U.S. Patent No. 9,902,950 (Church et al.).    In addition, one or more claims of the '648 patent are invalid because the full scope of those claims is not enabled, nor described, by the written description of the '648 patent, and those claims are indefinite.

### Tenth Defense – Invalidity of the '197 Patent

139.    One or more claims of the '197 patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, et seq., including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, 112, and § 256.    One or more claims of the '197 patent are invalid in view of the prior art, including references cited on the face of the '197 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '197 patent.    For example, one or more claims of the '197 patent are invalid in view of the following: WO 2010/117620 A2 (Linnarson); "Encoding PCR Products with Batch-stamps and Barcodes" (McCloskey et al.).    In addition, one or more claims of the '197 patent are invalid because the full scope of those claims is not enabled, nor described, by the written description of the '197 patent, and those claims are indefinite.

### Eleventh Defense – Invalidity of the '541 Patent

140.    One or more claims of the '541 patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, et seq., including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, 112, 115, 116, and § 256.    One or more claims of the '541 patent are invalid in view of the prior art, including references cited on the face of the '541 patent, and articles, patents, products, and processes that were publicly

available or disclosed before the priority date of the '541 patent.   For example, one or more claims of the '541 patent are invalid in view of U.S. Patent No. 9,902,950 (Church et al.).   In addition, one or more claims of the '541 patent are invalid because the full scope of those claims is not enabled, nor described, by the written description of the '541 patent, and those claims are indefinite.

### Twelfth Defense – Invalidity of the '459 Patent

141.   One or more claims of the '459 patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C.   §1, et seq., including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, 112, and § 256.   One or more claims of the '459 patent are invalid in view of the prior art, including references cited on the face of the '459 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '459 patent.   For example, one or more claims of the '459 patent are invalid in view of the following: WO 2010/117620 A2 (Linnarson); "Encoding PCR Products with Batch-stamps and Barcodes" (McCloskey et al.).   In addition, one or more claims of the '459 patent are invalid because the full scope of those claims is not enabled, nor described, by the written description of the '459 patent, and those claims are indefinite.

### Thirteenth Defense – Invalidity of the '662 Patent

142.   One or more claims of the '662 patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, et seq., including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, 112, and § 256.   One or more claims of the '662 patent are invalid in view of the prior art, including references cited on the face of the '662 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '662 patent.   For example, one or more claims of the '662

patent are invalid in view of the following: WO 2010/117620 A2 (Linnarson); "Encoding PCR Products with Batch-stamps and Barcodes" (McCloskey et al.).   In addition, one or more claims of the '662 patent are invalid because the full scope of those claims is not enabled, nor described, by the written description of the '662 patent, and those claims are indefinite.

<u>**Fourteenth Defense – Invalidity of the '280 Patent**</u>

143.   One or more claims of the '280 patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, et seq., including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, 112, 115, 116, and § 256.   One or more claims of the '280 patent are invalid in view of the prior art, including references cited on the face of the '280 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '280 patent.   For example, one or more claims of the '280 patent are invalid in view of U.S. Patent No. 9,902,950 (Church et al.).   In addition, one or more claims of the '280 patent are invalid because the full scope of those claims is not enabled, nor described, by the written description of the '280 patent, and those claims are indefinite.

<u>**Fifteenth Defense – Statutory Damages Limitation**</u>

10x's claim for damages is statutorily limited by 35 U.S.C. §§ 286, 287, and/or 288.

<u>**Sixteenth Defense**</u>
(Unenforceability of the '648, '541 and '280 Patents)

144.   As detailed below in Celsee's Fifteenth and Sixteenth Counterclaims (paragraphs 61-90 and 93-115), the '648, '541, and '280 patents are unenforceable for inequitable conduct occurring during their prosecution, including, among other misconduct, false statements made to the PTO regarding the inventorship of at least the '648, '541, and '280 patents (*see infra*

Counterclaim paragraphs 61-90 and 93-115, which are re-alleged and incorporated by reference as if fully set forth herein).

## Seventeenth Defense
### (Puffery)

145.    With respect to 10x's Eighth and Ninth Cause of Action, the statements complained of by 10x are no more than puffery and are recognized as such by the ordinary purchaser and do not deceive the ordinary purchaser.

## Eighteenth Defense
### (Unclean Hands)

146.    Plaintiff's patent infringement claims and the relief sought by Plaintiffs are barred in whole or in part by the doctrine of unclean hands, because 10x has engaged in inequitable conduct regarding the '541, '648, and '280 patents, as alleged in Celsee's Fifteenth and Sixteenth Counterclaims (*see infra* Counterclaim paragraphs 61-90 and 93-115, which are re-alleged and incorporated by reference as if fully set forth herein).

## Nineteenth Defense
### (Lack of Causation)

147.    10x's Eighth and Ninth Causes of Action claims are barred, in whole or in part, because no conduct attributable to Celsee was the cause in fact or proximate cause of the losses or damages, if any, that 10x seeks to recover.

## Twentieth Defense
### (No Damages)

148.    10x's claims are barred, in whole or in part, because 10x has suffered no damages based on the conduct alleged in the Complaint.

**Twenty-First Defense**
(Failure to Mitigate)

149.    10x's Eighth and Ninth Causes of Action claims are barred, in whole or in part, because 10x failed to minimize or mitigate the losses or damages, if any, that 10x seeks to recover in this action.

**Twenty-Second Defense**
(Good Faith)

150.    10x's Eighth and Ninth Causes of Action claims are barred, in whole or in part, because Celsee acted in good faith and without wrongful intent, malice, or any other applicable degree of fault.

**Twenty-Third Defense**
(Attorneys' Fees)

151.    10x's prayer for attorneys' fees is barred on the ground that 10x cannot prove facts sufficient to show that Celsee's conduct was exceptional.

**Twenty-Fourth Defense**
(No Irreparable Harm)

152.    10x's prayer for injunctive relief is barred on the ground that 10x cannot show facts sufficient to show that it has been irreparably harmed by Celsee's conduct.

**Twenty-Fifth Defense**
(Failure to State a Claim)

153.    The Complaint fails to state a claim for relief.

**Twenty-Sixth Defense**
(Lack of Standing – '541, '280, and '648 patents)

154.    10x does not own the '541, '280, and '648 patents, as detailed below in paragraphs 61-90 and 93-115 of Celsee's counterclaims, which are re-alleged and incorporated by reference as if fully set forth herein.   Celsee thus does not have standing to assert these patents.

21

**Reservation of Additional Defenses and Claims**

155.   Celsee is currently without sufficient knowledge or information upon which to form a belief as to whether additional defenses or counterclaims are available.   Therefore, Celsee reserves the right to amend this Answer to assert any such additional defenses or counterclaims based on legal theories that may become apparent through discovery or through further legal analysis of Plaintiff's positions, claims and allegations in this litigation.

## COUNTERCLAIMS

Counterclaimant Celsee on personal knowledge as to its own acts, and on information and belief as to all others based on its own and its attorneys' investigation, alleges its Counterclaims against 10x as follows:

### THE PARTIES

1.   Celsee is a corporation organized under the laws of Delaware, having its principal place of business in Ann Arbor, Michigan.

2.   According to 10x's Complaint, 10x is a corporation existing under the laws of Delaware, with its principal place of business, in Pleasanton, CA.

### JURISDICTION

3.   This Court has jurisdiction over the subject matter of these Counterclaims under, without limitation, 28 U.S.C. §§ 1331, 1367, 1338(a), 2201, and 2202.

4.   10x has subjected itself to personal jurisdiction in this Court because it has sued Celsee in this Court.

### VENUE

5.   Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400.

6.      10x has consented to venue in this Court because it has filed its claims for patent infringement in this Court, in response to which these Counterclaims are asserted.

## ACTUAL CONTROVERSY

7.      According to 10x's Complaint, 10x claims to be the owner of all rights, title, and interest in and to the '981, '648, '197, '541, '459, '662, and '280 patents.   10x has alleged that Celsee has infringed and is infringing the '981, '648, '197, '541, '459, '662, and '280 patents, which Celsee denies.

8.      An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202 exists between 10x and Celsee.   Celsee seeks a declaration that it has not infringed and does not infringe the '981, '648, '197, '541, '459, '662, and '280 patents and that the '981, '648, '197, '541, '459, '662, and '280 patents are invalid and unenforceable.

## COUNTERCLAIM ONE
(Declaratory Judgment of Non-Infringement of the '981 Patent)

9.      Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

10.     Although 10x alleges in its Complaint that (i) Celsee has infringed and continues to infringe claims of the '981 patent, (ii) Celsee has actively induced and continues to actively induce infringement of claims of the '981 patent, and (iii) Celsee has actively contributed and continues to actively contribute to the infringement of one or more claims of the '981 patent under 35 U.S.C. § 271(c), Celsee has not infringed and does not infringe any valid claim of the '981 patent under any theory of infringement.

11.     A judicial determination of the respective rights of the parties with respect to infringement of the claims of the '981 patent is now necessary and appropriate under 28 U.S.C. § 2201.

23

**COUNTERCLAIM TWO**
(Declaratory Judgment of Non-Infringement of the '648 Patent)

12.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

13.     Although 10x alleges in its Complaint that (i) Celsee has infringed and continues to infringe claims of the '648 patent, (ii) Celsee has actively induced and continues to actively induce infringement of claims of the '648 patent, and (iii) Celsee has actively contributed and continues to actively contribute to the infringement of one or more claims of the '648 patent under 35 U.S.C. § 271(c), Celsee has not infringed and does not infringe any valid claim of the '648 patent under any theory of infringement.

14.     A judicial determination of the respective rights of the parties with respect to infringement of the claims of the '648 patent is now necessary and appropriate under 28 U.S.C. § 2201.

**COUNTERCLAIM THREE**
(Declaratory Judgment of Non-Infringement of the '197 Patent)

15.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

16.     Although 10x alleges in its Complaint that (i) Celsee has infringed and continues to infringe claims of the '197 patent, (ii) Celsee has actively induced and continues to actively induce infringement of claims of the '197 patent, and (iii) Celsee has actively contributed and continues to actively contribute to the infringement of one or more claims of the '197 patent under 35 U.S.C. § 271(c), Celsee has not infringed and does not infringe any valid claim of the '197 patent under any theory of infringement.

17.     A judicial determination of the respective rights of the parties with respect to infringement of the claims of the '197 patent is now necessary and appropriate under 28 U.S.C. § 2201.

**COUNTERCLAIM FOUR**
(Declaratory Judgment of Non-Infringement of the '541 Patent)

18.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

19.     Although 10x alleges in its Complaint that (i) Celsee has infringed and continues to infringe claims of the '541 patent, (ii) Celsee has actively induced and continues to actively induce infringement of claims of the '541 patent, and (iii) Celsee has actively contributed and continues to actively contribute to the infringement of one or more claims of the '541 patent under 35 U.S.C. § 271(c), Celsee has not infringed and does not infringe any valid claim of the '541 patent under any theory of infringement.

20.     A judicial determination of the respective rights of the parties with respect to infringement of the claims of the '541 patent is now necessary and appropriate under 28 U.S.C. § 2201.

**COUNTERCLAIM FIVE**
(Declaratory Judgment of Non-Infringement of the '459 Patent)

21.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

22.     Although 10x alleges in its Complaint that (i) Celsee has infringed and continues to infringe claims of the '459 patent, (ii) Celsee has actively induced and continues to actively induce infringement of claims of the '459 patent, and (iii) Celsee has actively contributed and continues to actively contribute to the infringement of one or more claims of the '459 patent under

25

35 U.S.C. § 271(c), Celsee has not infringed and does not infringe any valid claim of the '459 patent under any theory of infringement.

23.     A judicial determination of the respective rights of the parties with respect to infringement of the claims of the '459 patent is now necessary and appropriate under 28 U.S.C. § 2201.

## COUNTERCLAIM SIX
(Declaratory Judgment of Non-Infringement of the '662 Patent)

24.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

25.     Although 10x alleges in its Complaint that (i) Celsee has infringed and continues to infringe claims of the '662 patent, (ii) Celsee has actively induced and continues to actively induce infringement of claims of the '662 patent, and (iii) Celsee has actively contributed and continues to actively contribute to the infringement of one or more claims of the '662 patent under 35 U.S.C. § 271(c), Celsee has not infringed and does not infringe any valid claim of the '662 patent under any theory of infringement.

26.     A judicial determination of the respective rights of the parties with respect to infringement of the claims of the '662 patent is now necessary and appropriate under 28 U.S.C. § 2201.

## COUNTERCLAIM SEVEN
(Declaratory Judgment of Non-Infringement of the '280 Patent)

27.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

28.     Although 10x alleges in its Complaint that (i) Celsee has infringed and continues to infringe claims of the '280 patent, (ii) Celsee has actively induced and continues to actively

induce infringement of claims of the '280 patent, and (iii) Celsee has actively contributed and continues to actively contribute to the infringement of one or more claims of the '280 patent under 35 U.S.C. § 271(c), Celsee has not infringed and does not infringe any valid claim of the '280 patent under any theory of infringement.

29.     A judicial determination of the respective rights of the parties with respect to infringement of the claims of the '280 patent is now necessary and appropriate under 28 U.S.C. § 2201.

**COUNTERCLAIM EIGHT**
(Declaratory Judgment of Invalidity of the '981 Patent)

30.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

31.     The claims of the '981 patent are invalid under 35 U.S.C. §§ 102 and/or 103 in light of prior art.   One or more claims of the '981 patent are invalid in view of the references cited on the face of the '981 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '981 patent.   For example, one or more claims of the '981 patent are invalid in view of the following: WO 2010/117620 A2 (Linnarson); "Encoding PCR Products with Batch-stamps and Barcodes" (McCloskey et al.).

32.     The claims of the '981 patent are invalid under 35 U.S.C. § 112 for failing to comply with one or more of the written description requirement, the enablement requirement, and the definiteness requirement.

33.     A judicial determination of the respective rights of the parties with respect to the invalidity of the claims of the '981 patent is now necessary and appropriate under 28 U.S.C. §2201.

## COUNTERCLAIM NINE
(Declaratory Judgment of Invalidity of the '648 Patent)

34.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

35.     The claims of the '648 patent are invalid under 35 U.S.C. §§102 and/or 103 in light of prior art.   One or more claims of the '648 patent are invalid in view of the references cited on the face of the '648 Patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '648 patent.    For example, one or more claims of the '648 patent are invalid in view of U.S. Patent No. 9,902,950 (Church et al.).

36.     The claims of the '648 patent are invalid under 35 U.S.C. § 112 for failing to comply with one or more of the written description requirement, the enablement requirement, and the definiteness requirement.

37.     Additionally, the claims of the '648 patent are invalid under 35 U.S.C. §§ 115-116 for failing to name the proper inventors, as documented below in paragraphs 93-115 of Celsee's counterclaims, which are re-alleged and incorporated by reference as if fully set forth herein.

38.     A judicial determination of the respective rights of the parties with respect to the invalidity of the claims of the '648 patent is now necessary and appropriate under 28 U.S.C. § 2201.

## COUNTERCLAIM TEN
(Declaratory Judgment of Invalidity of the '197 Patent)

39.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

40.     The claims of the '197 patent are invalid under 35 U.S.C. §§ 102 and/or 103 in light of prior art.   One or more claims of the '197 patent are invalid in view of the references cited on

the face of the '197 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '197 patent.    For example, one or more claims of the '197 patent are invalid in view of the following: WO 2010/117620 A2 (Linnarson); "Encoding PCR Products with Batch-stamps and Barcodes" (McCloskey et al.).

41.    The claims of the '197 patent are invalid under 35 U.S.C. § 112 for failing to comply with one or more of the written description requirement, the enablement requirement, and the definiteness requirement.

42.    A judicial determination of the respective rights of the parties with respect to the invalidity of the claims of the '197 patent is now necessary and appropriate under 28 U.S.C. § 2201.

## COUNTERCLAIM ELEVEN
(Declaratory Judgment of Invalidity of the '541 Patent)

43.    Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

44.    The claims of the '541 patent are invalid under 35 U.S.C. §§ 102 and/or 103 in light of prior art.    One or more claims of the '541 Patent are invalid in view of the references cited on the face of the '541 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '541 Patent.    For example, one or more claims of the '541 patent are invalid in view of U.S. Patent No. 9,902,950 (Church et al.).

45.    The claims of the '541 patent are invalid under 35 U.S.C. § 112 for failing to comply with one or more of the written description requirement, the enablement requirement, and the definiteness requirement.

46.     Additionally, the claims of the '541 patent are invalid under 35 U.S.C. §§ 115-116 for failing to name the proper inventors, as documented below in paragraphs 61-90 of Celsee's counterclaims, which are re-alleged and incorporated by reference as if fully set forth herein.

47.     A judicial determination of the respective rights of the parties with respect to the invalidity of the claims of the '541 patent is now necessary and appropriate under 28 U.S.C. § 2201.

**COUNTERCLAIM TWELVE**
(Declaratory Judgment of Invalidity of the '459 Patent)

48.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

49.     The claims of the '459 patent are invalid under 35 U.S.C. §§ 102 and/or 103 in light of prior art.   One or more claims of the '459 patent are invalid in view of the references cited on the face of the '459 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '459 Patent.   For example, one or more claims of the '459 patent are invalid in view of the following: WO 2010/117620 A2 (Linnarson); "Encoding PCR Products with Batch-stamps and Barcodes" (McCloskey et al.).

50.     The claims of the '459 patent are invalid under 35 U.S.C. § 112 for failing to comply with one or more of the written description requirement, the enablement requirement, and the definiteness requirement.

51.     A judicial determination of the respective rights of the parties with respect to the invalidity of the claims of the '459 patent is now necessary and appropriate under 28 U.S.C. § 2201.

## COUNTERCLAIM THIRTEEN
(Declaratory Judgment of Invalidity of the '662 Patent)

52.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

53.     The claims of the '662 patent are invalid under 35 U.S.C. §§ 102 and/or 103 in light of prior art.   One or more claims of the '662 patent are invalid in view of the references cited on the face of the '662 patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '662 Patent.   For example, one or more claims of the '662 patent are invalid in view of the following: WO 2010/117620 A2 (Linnarson); "Encoding PCR Products with Batch-stamps and Barcodes" (McCloskey et al.).

54.     The claims of the '662 patent are invalid under 35 U.S.C. § 112 for failing to comply with one or more of the written description requirement, the enablement requirement, and the definiteness requirement.

55.     A judicial determination of the respective rights of the parties with respect to the invalidity of the claims of the '662 patent is now necessary and appropriate under 28 U.S.C. § 2201.

## COUNTERCLAIM FOURTEEN
(Declaratory Judgment of Invalidity of the '280 Patent)

56.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

57.     The claims of the '280 patent are invalid under 35 U.S.C. §§ 102 and/or 103 in light of prior art.   One or more claims of the '280 patent are invalid in view of the references cited on the face of the '280 patent, and articles, patents, products, and processes that were publicly

available or disclosed before the priority date of the '280 patent.    For example, one or more claims of the '280 patent are invalid in view of U.S. Patent No. 9,902,950 (Church et al.).

58.    The claims of the '280 patent are invalid under 35 U.S.C. § 112 for failing to comply with one or more of the written description requirement, the enablement requirement, and the definiteness requirement.

59.    Additionally, the claims of the '280 patent are invalid under 35 U.S.C. §§ 115-116 for failing to name the proper inventors, as documented below in paragraphs 61-90 of Celsee's counterclaims, which are re-alleged and incorporated by reference as if fully set forth herein.

60.    A judicial determination of the respective rights of the parties with respect to the invalidity of the claims of the '280 patent is now necessary and appropriate under 28 U.S.C. § 2201.

<u>**COUNTERCLAIM FIFTEEN**</u>
(Declaratory Judgment of Unenforceability of the '541 and '280 Patents)

61.    Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

62.    As detailed below, at least the '541 and '280 patents are unenforceable for inequitable conduct occurring during their prosecution, including, among other misconduct, false statements made to the PTO regarding the conception and inventorship of the '541 and '280 patents.

63.    The '541 and '280 patents name seven individuals as inventors: Benjamin Hindson, Christopher Hindson, Michael Schnall-Levin, Kevin Ness, Mirna Jarosz, Serge Saxonov, and Paul Hardenbol.

64.     However, the inventions of the '541 and '280 patents were conceived of in whole or in part by Nicholas Heredia and/or Paul Blainey while employed or contracted by QuantaLife and/or Bio-Rad.

65.     Heredia was a research scientist at QuantaLife and is a co-inventor on the '541 and '280 patents.   Blainey was a technical consultant hired by QuantaLife and is a co-inventor on the '541 patent and '280 patents.   But Benjamin Hindson, Christopher Hindson, Michael Schnall-Levin, Kevin Ness, Mirna Jarosz, Serge Saxonov, and Paul Hardenbol deliberately omitted naming Heredia and Blainey as co-inventors on the '541 and '280 patents.

66.     10x asserts seven patents in this case, at least 3 of which are directed to methods and systems for processing polynucleotides by partitioning a plurality of beads in a microwell array (the '648, '541, and '280 patents).   The '541 and '280 patents, however, arose in whole or in part out of Heredia and Blainey's work at Bio-Rad and its predecessor, and thus are owned by Bio-Rad.

67.     Upon information and belief, Benjamin Hindson worked at QuantaLife from 2008 to October 2011, and then at Bio-Rad from October 2011 to April 2012.   At QuantaLife and Bio-Rad, Benjamin Hindson worked on microfluidic devices to generate droplets and developed a commercial product.

68.     Upon information and belief, Christopher Hindson worked at QuantaLife from August 2010 to October 2011, and then at Bio-Rad from October 2011 to November 2012.   At QuantaLife and Bio-Rad, Christopher Hindson worked on microfluidic devices to generate droplets and developed a commercial product.

69.     Upon information and belief, Serge Saxonov worked at QuantaLife from May 2010 to October 2011, and then at Bio-Rad from October 2011 to April 2012.   At QuantaLife and Bio-

Rad, Saxonov worked on microfluidic devices to generate droplets and developed a commercial product.

70.    Upon information and belief, Kevin Ness worked at QuantaLife from September 2008 to October 2011, and then at Bio-Rad from October 2011 to September 2012.    At QuantaLife and Bio-Rad, Ness worked on microfluidic devices to generate droplets and developed a commercial product.

71.    In addition to the commercial droplet product, Benjamin Hindson and/or Christopher Hindson and/or Ness and/or Saxonov conceived of processing polynucleotides by portioning a plurality of beads in a microwell array.    Upon information and belief, this concept is demonstrated by QuantaLife lab documentation.    Upon information and belief, Benjamin Hindson, Christopher Hindson, Ness, and Saxonov were under contractual obligation to assign to QuantaLife all their ideas, inventions, and discoveries.    Thus, any concepts or ideas from Benjamin Hindson's, Christopher Hindson's, Ness's, and/or Saxonov's time at QuantaLife are owned by QuantaLife.

72.    Bio-Rad acquired QuantaLife's business and its intellectual property in October 2011 for $162 million cash plus future milestone payments.

73.    After Bio-Rad acquired QuantaLife, Benjamin Hindson, Christopher Hindson, Ness, and Saxonov started working at Bio-Rad until they left in 2012 to form/join 10x.    While at 10x, in 2012-2013, Benjamin Hindson, Christopher Hindson, Ness and Saxonov almost immediately filed patent applications allegedly directed to methods and systems for processing polynucleotides by portioning a plurality of beads in a microwell array – exactly the same subject matter conceived at QuantaLife/Bio-Rad.    At least some of the Asserted Patents derive from those 2012-2013 applications.

74.     Benjamin Hindson's, Christopher Hindson's, Ness's, and Saxonov's concepts and inventions at QuantaLife automatically belonged to QuantaLife (and subsequently Bio-Rad) rendering any future written assignment to 10x invalid.

75.     As detailed below, at least the '541 and '280 patents are unenforceable due to inequitable conduct committed during their prosecution including, false statements made to the PTO regarding the conception and inventorship of the '541 and '280 patents.   Specifically, the '541 and '280 patents are owned by Bio-Rad, and/or they do not list all of the inventors.

76.     The inventions of the '541 and '280 patents were conceived in whole or part by Nicholas Heredia and Paul Blainey, while employed or contracted by QuantaLife and/or Bio-Rad. However, the '541 and '280 patents do not include Nicholas Heredia or Paul Blainey as inventors.

77.     Heredia was a research scientist at QuantaLife and is a co-inventor on at least the '541 and '280 patents.   Blainey was a technical consultant hired by QuantaLife and a co-inventor on at least the '541 and '280 patents.   Yet Benjamin Hindson, Christopher Hindson, Schnall-Levin, Ness, Jarosz, Saxonov, and Hardenbol deliberately omitted naming Heredia and Blainey as co-inventors on the '541 and '280 patents.

78.     Upon information and belief, Benjamin Hindson, Christopher Hindson, Schnall-Levin, Ness, Jarosz, and Saxonov did not identify Heredia or Blainey as co-inventors of the '541 and '280 patents because at the time the corresponding provisional application was filed, Heredia and Blainey were still employed by QuantaLife and/or Bio-Rad and had signed an assignment agreement with QuantaLife and/or Bio-Rad.

79.     Upon information and belief, Benjamin Hindson, Christopher Hindson, Schnall-Levin, Ness, Jarosz, and Saxonov omitted Heredia and Blainey as co-inventors with the specific

intent to deceive the PTO, despite Heredia's and Blainey's substantial contributions to the conception of the claimed inventions in the '541 and '280 patents.

80.    Those false statements were material to the patentability of the '541 and '280 patents because the United States Patent and Trademark Office (USPTO) would not have allowed the claims to issue.

81.    Misrepresentations regarding inventorship are material to the patentability of a claimed invention.    Under 37 C.F.R. § 1.56, inventors owe a duty of candor to the USPTO.

82.    Under 35 U.S.C. § 115, patent applications must "include, or be amended to include, the name of the inventor for any invention claimed in the application.    Except as otherwise provided in this section, each individual who is the inventor or a joint inventor of a claimed invention in an application for patent shall execute an oath or declaration in connection with the application."

83.    Under 35 U.S.C. § 116, "[w]hen an invention is made by two or more persons jointly, they shall apply for patent jointly and each make the required oath, except as otherwise provided in this title."

84.    The Manual of Patent Examining Procedure ("MPEP") mandates rejection of applications with improper naming of inventors.    MPEP § 2157 "Improper Naming of Inventors" instructs that: "the patent laws [] require the naming of the actual inventor or joint inventors of the claimed subject matter."    If a patent application "does not name the correct inventorship and the applicant has not filed a request to correct inventorship under 37 C.F.R. § 1.48, Office personnel should reject the claims under 35 U.S.C. § 101 and 35 U.S.C. § 115."

85.    On information and belief, Benjamin Hindson, Christopher Hindson, Schnall-Levin, Ness, Jarosz, Saxonov, and Hardenbol omitted material information regarding inventorship

of the '541 and '280 patents in order to hide and prevent Bio-Rad's potential ownership interests in the '541 and '280 patents.   Upon information and belief, Benjamin Hindson, Christopher Hindson, Schnall-Levin, Ness, Jarosz, Saxonov, and Hardenbol were aware that at the time the corresponding provisional applications to the '541 and '280 patents were filed, Heredia and Blainey were employed by Bio-Rad and had signed an assignment agreement as a condition of their employment with Bio-Rad.

86.     Upon information and belief—Benjamin Hindson, Christopher Hindson, Schnall-Levin, Ness, Jarosz, Saxonov, and Hardenbol—aware and because of this assignment obligation, ensured that only they themselves, who had left Bio-Rad between April and September of 2012, were identified as named inventors for the '541 and '280 patents.

87.     Benjamin Hindson, Christopher Hindson, Schnall-Levin, Ness, Jarosz, Saxonov, and Hardenbol knew and understood their obligations to make truthful representations to the USPTO regarding inventorship, yet omitted material information regarding inventorship from the '541 and '280 patent applications, thereby rendering their sworn declarations incomplete and inaccurate.   They all knew that Heredia and Blainey had made substantial contributions to the claimed invention.   They also understood that their misrepresentations to the USPTO regarding the inventorship of the claimed invention were material to the patentability of the asserted patents.

88.     Thus, the claims of the '541 and '280 patents are unenforceable due to the inequitable conduct of Benjamin Hindson, Christopher Hindson, Schnall-Levin, Ness, Jarosz, Saxonov, and Hardenbol who made material misrepresentations regarding inventorship with the specific intent to deceive the USPTO.

89.     The foregoing facts constitute inequitable conduct that renders the '541 and '280 patents unenforceable, as summarized below:

- **Who**: purported inventors Benjamin Hindson, Christopher Hindson, Michael Schnall-Levin, Kevin Ness, Mirna Jarosz, Serge Saxonov, and Paul Hardenbol.

- **What**: Benjamin Hindson's, Christopher Hindson's, Schnall-Levin's, Ness's, Jarosz's, Saxonov's, and Hardenbol's false representations that they were the sole inventors of the claims of the '541 and '280 patents.

- **Where**: Declarations submitted to the PTO omitting Heredia and Blainey

- **When**: October 22, 2018 (date oath was filed for the '541 patent); December 21, 2018 (date oath was filed for the '280 patent).

- **Why**: Benjamin Hindson, Christopher Hindson, Schnall-Levin, Ness, Jarosz, Saxonov, and Hardenbol understood that had they included Heredia and Blainey as co-inventors, the '541 and '280 patents would have been assigned to Bio-Rad as part of an assignment agreement.

- **How**: Benjamin Hindson, Christopher Hindson, Schnall-Levin, Ness, Jarosz, Saxonov, and Hardenbol falsely represented that they were the inventors of the claims of the '541 and '280 patents omitting Heredia and Blainey in order to avoid assigning the patents to Bio-Rad.

90.    Thus, Celsee is entitled to declaratory judgment that the '541 and '280 patents are unenforceable.

## COUNTERCLAIM SIXTEEN
(Declaratory Judgment of Invalidity of the '541 and '280 Patent – Improper Inventorship)

91.    Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

92.    As detailed above in counterclaim fifteen (paragraphs 61-90), the '541 and '280 patents and each of their claims are invalid for improper inventorship under 35 U.S.C. §§ 115 and

38

116, for reasons including, but not limited to, that the '541 and '280 patents do not list the true inventors.

**COUNTERCLAIM SEVENTEEN**
(Declaratory Judgment of ~~Invalidity and/or~~ Unenforceability of the '648 Patent)

93.     Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

94.     As detailed below, at least the '648 patent is unenforceable for inequitable conduct occurring during its prosecution, including among other misconduct, false statements made to the PTO regarding the conception and inventorship of the '648 patent.

95.     The '648 patent names four individuals as inventors: Benjamin Hindson, Serge Saxonov, Kevin Ness, and Paul Hardenbol. However, the inventions of the '648 patent were conceived of in whole or in part at least by Christopher Hindson, Nicholas Heredia, and Paul Blainey while employed or contracted by QuantaLife and/or Bio-Rad.

96.     Heredia was a research scientist and is a co-inventor on the '648 patent.  Blainey was a technical consultant hired by QuantaLife and is a co-inventor on the '648 patent. Christopher Hindson was a senior scientist at Bio-Rad and is a co-inventor on the '648 patent. But Benjamin Hindson, Serge Saxonov, Kevin Ness, and Paul Hardenbol deliberately omitted naming Christopher Hindson, Heredia, and Blainey as co-inventors.

97.     Upon information and belief, Benjamin Hindson worked at QuantaLife from 2008 to October 2011, and then at Bio-Rad from October 2011 to April 2012.   At QuantaLife and Bio-Rad, Benjamin Hindson worked on microfluidic devices to generate droplets and developed a commercial product.

98.     Upon information and belief, Christopher Hindson worked at QuantaLife from August 2010 to October 2011, and then at Bio-Rad from October 2011 to November 2012.   At QuantaLife and Bio-Rad, Christopher Hindson worked on microfluidic devices to generate droplets and developed a commercial product.

99.     Upon information and belief, Serge Saxonov worked at QuantaLife from May 2010 to October 2011, and then at Bio-Rad from October 2011 to April 2012.   At QuantaLife and Bio-Rad, Saxonov worked on microfluidic devices to generate droplets and developed a commercial product.

100.     Upon information and belief, Kevin Ness worked at QuantaLife from September 2008 to October 2011, and then at Bio-Rad from October 2011 to September 2012.   At QuantaLife and Bio-Rad, Ness worked on microfluidic devices to generate droplets and developed a commercial product.

101.     In addition to the commercial droplet product, Benjamin Hindson and/or Christopher Hindson and/or Ness and/or Saxonov conceived of processing polynucleotides by portioning a plurality of beads in a microwell array.   Upon information and belief, this concept is demonstrated by QuantaLife lab documentation.   Upon information and belief, Benjamin Hindson, Christopher Hindson, Ness, and Saxonov were under contractual obligation to assign to QuantaLife all their ideas, inventions, and discoveries.   Thus, any concepts or ideas from Benjamin Hindson's, Christopher Hindson's, Ness's, and/or Saxonov's time at QuantaLife are owned by QuantaLife.

102.     Bio-Rad acquired QuantaLife's business and its intellectual property in October 2011 for $162 million cash plus future milestone payments.

103.     Benjamin Hindson, Saxonov, and Ness left Quanta-Life and/or Bio-Rad between April and November of 2012.   Just a couple months later on December 14, 2012, 10x filed provisional application No. 61/737,374, which eventually issued into the '648 patent.

104.     Upon information and belief, Benjamin Hindson, Saxonov, Ness, and Hardenbol did not identify Heredia, Blainey, or Christopher Hindson as co-inventors of the '648 patent because at the time the corresponding provisional application was filed, Heredia and Blainey were still employed by QuantaLife and/or Bio-Rad and had signed an assignment agreement with QuantaLife and/or Bio-Rad.   Likewise, Benjamin Hindson, Saxonov, Ness, and Hardenbol did not identify Christopher Hindson as a co-inventor of the '648 patent because they were aware that his inventive contributions had been made while still employed by QuantaLife and/or Bio-Rad and had signed an assignment agreement with QuantaLife and/or Bio-Rad.

105.     Upon information and belief, Benjamin Hindson, Saxonov, Ness, and Hardenbol omitted Heredia, Blainey, and Christopher Hindson as inventors with the specific intent to deceive the PTO, despite Heredia's, Blainey's, and Christopher Hindson's substantial contributions to the conception of the claimed inventions in the '648 patent.

106.     Upon information and belief—Benjamin Hindson, Saxonov, Ness, and Hardenbol—aware and because of these assignment obligations, ensured that only they themselves, who had left Bio-Rad between April to September of 2012, were identified as named inventors for the '648 patent.

107.     Those false statements were material to the patentability of the '648 patent because the USPTO would not have allowed the claims to issue.

108.     Misrepresentations regarding inventorship are material to the patentability of a claimed invention.    Under 37 C.F.R. § 1.56, inventors owe a duty of candor to the USPTO.

109.   Under 35 U.S.C. § 115, patent applications must "include, or be amended to include, the name of the inventor for any invention claimed in the application.   Except as otherwise provided in this section, each individual who is the inventor or a joint inventor of a claimed invention in an application for patent shall execute an oath or declaration in connection with the application."

110.   Under 35 U.S.C. § 116, "[w]hen an invention is made by two or more persons jointly, they shall apply for patent jointly and each make the required oath, except as otherwise provided in this title."

111.   The Manual of Patent Examining Procedure ("MPEP") mandates rejection of applications with improper naming of inventors.   MPEP § 2157 "Improper Naming of Inventors" instructs that: "the patent laws [] require the naming of the actual inventor or joint inventors of the claimed subject matter."   If a patent application "does not name the correct inventorship and the applicant has not filed a request to correct inventorship under 37 C.F.R. § 1.48, Office personnel should reject the claims under 35 U.S.C. § 101 and 35 U.S.C. § 115."

112.   Benjamin Hindson, Saxonov, Ness, and Hardenbol knew and understood their obligations to make truthful representations to the USPTO regarding inventorship, yet omitted material information regarding inventorship from the '648 patent application, thereby rendering their sworn declarations incomplete and inaccurate.   They all knew that Heredia, Blainey, and Christopher Hindson had made substantial contributions to the claimed invention.   They also understood that their misrepresentations to the USPTO regarding the inventorship of the claimed invention were material to the patentability of the asserted patents.

113.    Thus, the claims of the '648 patent are unenforceable due to the inequitable conduct of Benjamin Hindson, Saxonov, Ness, and Hardenbol who made material misrepresentations regarding inventorship with the specific intent to deceive the USPTO.

114.    The foregoing facts constitute inequitable conduct that renders the '648 patent unenforceable, as summarized below:

- **Who**: purported inventors Benjamin Hindson; Serge Saxonov; Kevin Ness; and Paul Hardenbol.

- **What**: Benjamin Hindson's, Saxonov's, Ness's, and Hardenbol's false representations that they were the sole inventors of the claims of the '648 patent.

- **Where**: Declarations submitted to the PTO.

- **When**: August 9, 2017 and/or December 28, 2016 (the dates the oaths were filed).

- **Why**: Benjamin Hindson, Saxonov, Ness, and Hardenbol understood that had they included Christopher Hindson, Heredia, and Blainey as co-inventors, the '648 patent would have been assigned to Bio-Rad as part of an assignment agreement.

- **How**: Benjamin Hindson, Saxonov, Ness, and Hardenbol falsely represented that they were the sole inventors of the claims of the '648 patent in order to avoid assigning the patent to Bio-Rad.

115.    Thus, Celsee is entitled to declaratory judgment that the '648 patent is unenforceable.

## COUNTERCLAIM EIGHTEEN
(Declaratory Judgment of Invalidity of the '648 Patent - Improper Inventorship)

116.    Celsee re-alleges and incorporates by reference each of the preceding paragraphs of its Counterclaims as if fully set forth herein.

43

117.     As detailed above in counterclaim seventeen (paragraphs 93-115), the '648 patent

and each of its claims are invalid for failure to comply with 35 U.S.C. §§ 115 and 116 for reasons

including, but not limited to, the '648 patent does not list the true inventors.

## JURY DEMAND

118.     Pursuant to Federal Rule of Civil Procedure 38, Celsee demands a trial by jury on

all issues so triable in this action.

## PRAYER FOR RELIEF

Wherefore, Celsee respectfully requests the following relief:

a)   That 10x take nothing by its Complaint;

b)   That judgment be entered against 10x and in favor of Celsee;

c)   That 10x's Complaint be dismissed with prejudice;

d)   A declaration that Celsee does not infringe, and has not infringed, directly, or
     indirectly any claim of the '981 patent;

e)   A declaration that Celsee does not infringe, and has not infringed, directly, or
     indirectly any claim of the '648 patent;

f)   A declaration that Celsee does not infringe, and has not infringed, directly, or
     indirectly any claim of the '197 patent;

g)   A declaration that Celsee does not infringe, and has not infringed, directly, or
     indirectly any claim of the '541 patent;

h)   A declaration that Celsee does not infringe, and has not infringed, directly, or
     indirectly any claim of the '459 patent;

i)   A declaration that Celsee does not infringe, and has not infringed, directly, or
     indirectly any claim of the '662 patent;

j)   A declaration that Celsee does not infringe, and has not infringed, directly, or indirectly any claim of the '280 patent;

k)   A declaration that each and every claim of the '981 patent is invalid;

l)   A declaration that each and every claim of the '648 patent is invalid;

m)  A declaration that each and every claim of the '197 patent is invalid;

n)   A declaration that each and every claim of the '541 patent is invalid;

o)   A declaration that each and every claim of the '459 patent is invalid;

p)   A declaration that each and every claim of the '662 patent is invalid;

q)   A declaration that each and every claim of the '280 patent is invalid;

r)   A declaration that the '648, '541, and '280 patents are unenforceable;

s)   That this case be declared exceptional and Celsee be awarded its costs, expenses, and reasonable attorneys' fees in this action under 35 U.S.C. § 285; and

t)   That the Court grant Celsee such further relief the Court may deem just and proper.

Dated:   January 13, 2020

Respectfully submitted,

FARNAN LLP

*/s/* Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: 302-777-0300
Facsimile: 302-777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
Prachi V. Mehta (admitted *pro hac vice)*
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone:   650-802-3000
Facsimile:   650-802-3100
edward.reines@weil.com
derek.walter@weil.com

*Attorneys for Defendant*