# FARNAN LLP

January 16, 2020

VIA E-FILING & HAND DELIVERY
The Honorable Sherry R. Fallon
United States District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

      Re:      **10x Genomics, Inc. v. Celsee, Inc. (19-862-CFC-SRF)**

Dear Judge Fallon:

      The parties dispute whether Celsee's in-house attorney, Christian LaPointe, should have access to information that 10x has designated as "Highly Confidential–Attorneys' Eyes Only" ("HC-AEO"). The Court previously considered whether the Protective Order should include a general provision that allowed two in-house attorneys on both sides to have access to HC-AEO material. *See* Ex. F. Although, on the limited record presented, the Court held that Celsee's original proposal was too broad, it did so without prejudice to Celsee to continue to meet and confer with 10x on this issue. *Id.* at 27:16-28:1. As the Court stated, "[c]ertainly, I think with respect to Mr. LaPointe there may be a path forward…." *Id.* at 29:24-30. The Court made clear that it was "expecting some flexibility here, that if a small company like Celsee truly needs attorneys' eyes only documents to be shared with Mr. LaPointe in order to make strategic litigation-related decisions in the case, then there has to be some flexibility there." *Id.* at 30:12-22; *see also id.* at 30:23-24; 30:23-31:15; 31:24-3:12.

      In response, Celsee promptly sent 10x a proposed protective order provision that undisputedly addresses every single concern 10x had raised with regard to Mr. LaPointe. Celsee's revised proposal limits access to only Mr. LaPointe, makes clear that Mr. LaPointe will not be involved in ***any*** competitive decisionmaking at Celsee, and requires Mr. LaPointe to use an isolated litigation-only laptop and email account for viewing files related to this case. *See* Ex. A ¶ 7; Ex. D at 8(c)(ix). Celsee provided 10x with additional substantial additional information regarding Mr. LaPointe's limited role at Celsee, and gave 10x unfettered opportunity to seek any additional information it required. Ex. C.

      10x, for its part, identified no concerns with Celsee's revised proposal, did not seek any further information regarding Mr. LaPointe, and identified no reason to believe he was a competitive decisionmaker at Celsee. Rather, 10x refused to meaningfully engage, making clear that no amount of additional information or safeguards would move it from its position. Ex. B (Mehta Declaration) ¶ 6. According to 10x, Mr. LaPointe can only see information that 10x deems in its sole discretion and judgment to be important enough for Celsee's defense. 10x's attempt to rule by fiat, however, has already proved unworkable and can only be seen as an attempt to hamper Celsee's ability to defend against 10x's numerous claims.

      As documented below, the record and law leave no room for Celsee to raise any further objections to Mr. LaPointe having access to HC-AEO designated material, and Celsee's proposed protective order provision should be adopted. As noted above, the Court entered the previous protective order without prejudice as to this issue. Against this backdrop, 10x bears the burden of

showing good cause for restricting Mr. LaPointe's access to HC-AEO information, which it cannot do. *See Evertz Microsystems Ltd. v. Lawo Inc.*, No. CV 19-302-MN-JLH, 2019 WL 5864137, at *3 (D. Del. Nov. 8, 2019).

In determining whether an in-house attorney should have access to confidential information, the key consideration is whether the attorney is a competitive decisionmaker. *See, e.g., United States Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984); *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) (The "counsel-by-counsel determination should turn on the extent to which counsel is involved in 'competitive decisionmaking' with its client."); *British Telecommunications PLC v. IAC/InterActive Corp.*, 330 F.R.D. 387, 391 (D. Del. 2019) ("In determining whether Mr. Hobbs should be allowed access to the defendant's highly confidential information, the first step is to determine whether Mr. Hobbs occupies a position of competitive decision-making with British Telecom, which would increase the risk of inadvertent disclosure and improper use of the defendant's confidential information."); *R.R. Donnelley & Sons Co. v. Quark, Inc.*, No. CIVA 06-032 JJF, 2007 WL 61885, at *1 (D. Del. Jan. 4, 2007) ("Specifically, the court should consider 'whether the attorneys are involved in competitive decisionmaking of the company and should examine the risks and safeguards surrounding inadvertent disclosure of the protected information.'") (citation omitted); *Affymetrix, Inc. v. Illumina, Inc.*, 2005 U.S. Dist. LEXIS 15482, at *6-7 (D. Del., July 28, 2005) ("In determining whether in-house counsel should be permitted to access confidential information under a protective order, the court should consider whether the attorneys are involved in a competitive decision making of the company and should examine the risks and safeguards surrounding inadvertent disclosure of the protected information.").

Mr. LaPointe is not involved in competitive decisionmaking for Celsee, including decisionmaking related to pricing, product design, product development, or business acquisitions. Ex. A (LaPointe Declaration) ¶ 3. Indeed, Celsee hired Mr. LaPointe only five months ago for the primary purpose of managing this litigation. *Id* ¶¶ 1, 3. Mr. LaPointe works part time and remotely from Massachusetts. *Id.* ¶¶ 1, 2. He has at least one other client (ArcherDX) in addition to Celsee. *Id.* ¶ 9. Beyond managing this litigation, his role is limited to human-resources matters, managing patent prosecution (which he would cease any involvement in if granted access to HC-AEO material), and reviewing standard agreements, such as supply agreements, material transfer agreements, and confidential disclosure agreements. *Id.* ¶ 5. That Mr. LaPointe is not a competitive decisionmaker at Celsee cannot be disputed by 10x. *R.R. Donnelly & Sons Co.*, 2007 WL 61885, at *1 ("Generally, 'unrebutted statements made by counsel asserting that he does not participate in competitive decisionmaking, which the court has no reason to doubt, form a reasonable basis to conclude that counsel is isolated from competitive decisionmaking,'..."). 10x cites to no case—and Celsee is unaware of any—where a court has blocked access to counsel who, like Mr. LaPointe, is divorced from any competitive or strategic decisionmaking. Thus, on this record, there is no legal basis for Mr. LaPointe to be denied access, particularly when the other protections included in the proposed protective order are taken into consideration.

Even if Mr. LaPointe were deemed to be somehow minimally involved in competitive decisionmaking such that there is some risk of inadvertent disclosure, he should still not be denied access to HC-AEO material. Courts must balance the risk of inadvertent disclosure "against the potential harm to the opposing party from restrictions imposed on that party's right to have the

benefit of counsel of its choice." *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010); *see also Evertz Microsystems Ltd. v. Lawo Inc. et al.*, C.A. No. 19-302-MN-JLH, 2019 WL 5864173, at *3 (D. Del. Nov. 8, 2019). Here, if Mr. LaPointe is denied access to confidential information in this case, his ability to make general strategic decisions related to this case will be severely impaired, as Mr. LaPointe explains in his declaration. Ex. A ¶ 4.

This was confirmed by recent events. On December 16, 2019, 10x produced core documents with its infringement contentions pursuant to Judge Connolly's Scheduling Order, which tracks the patent local rules in the Northern District of California. *See* D.I. 32 at 2(f)(i)-(x). The documents that 10x produced are of the type that are required to be disclosed early on because they are essential for parties to crystallize their core case theories. *See, e.g., Nitride Semiconductors Co. v. RayVio Corp.*, No. 5:17-CV-02952-EJD, 2018 WL 2214054, at *3 (N.D. Cal. May 11, 2018) ("[T]he purpose of disclosures under the Patent Local rules is to 'require parties to crystallize their theories of the case early in the litigation.'") (citing *O2 Micro int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006). 10x, however, blocked Mr. LaPointe from accessing thousands of pages of core documents related to conception and reduction to practice, licensing and business information that is highly relevant to damages, and 10x's positions in previous litigations. 10x's decision to block Mr. LaPointe's access to such an important swath of documents this early is problematic and unreasonable. If this is what 10x means when it says that it "remain[s] open to discussing access to particular designated documents and materials," (Ex. C at 2), then this does not satisfy the Court's mandate to be flexible. More importantly, it illustrates why 10x's approach is unworkable.

As noted above, in addition to doing work for Celsee, Mr. LaPointe works for ArcherDX. Although 10x never raised this as a concern in its original letter brief (D.I. 45) or during the December 16 teleconference (Ex. F), it suddenly did so after the fact. Ex. C at 3. No case, however, suggests that having multiple clients weighs against access to HC-AEO information. If this were the law, then outside attorneys would be precluded from accessing confidential information for having too many clients. If anything, Mr. LaPointe's role with multiple companies confirms that, in many respects, his role at Celsee is akin to that of an outside attorney. Regardless, Celsee responded to 10x's identification of the ArcherDX issue with numerous offers to provide additional information regarding Mr. LaPointe's role at ArcherDX. Ex. C. 10x, however, ignored all offers. *See, e.g., id.*

As Mr. LaPointe makes clear in his declaration, his role at ArcherDX is irrelevant. Mr. LaPointe is not a competitive or strategic decisionmaker at ArcherDX. Ex. B ¶ 9. While 10x's products and the technology in this case relate to single-cell isolation and analysis, ArcherDX's products relate to target enrichment for genetic mutation detection. *Id.* ¶ 10. In fact, ArcherDX and Becton Dickinson are signatories to a license agreement, a contract which effectively bars ArcherDX from entering the single cell field. *Id.* ¶ 11. 10x does not list ArcherDX as a competitor in its 2019 10-K filing. Ex. E (10x's 2019 10-K SEC Filing) at 15.

For at least these reasons, Celsee respectfully requests that the Court accept Celsee's proposal to include a provision allowing Mr. LaPointe to review material that has been designated "Highly Confidential – Outside Attorneys' Eyes Only."

Respectfully submitted,

/s/ Brian E. Farnan

Brian E. Farnan

cc: Counsel of Record (via E-mail)