# EXHIBIT F

# In The Matter Of:

*10x Genomics v.*
*Celsee, Inc.,*

---

*Teleconference*
*December 16, 2019*

---

*Wilcox & Fetzer, Ltd.*
*1330 King Street*
*Wilmington, DE   19801*
*email: depos@wilfet.com, web: www.wilfet.com*
*phone:  302-655-0477, fax:  302-655-0497*



Min-U-Script® with Word Index

**10x Genomics v.**
**Celsee, Inc.,**

Page 1

```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF DELAWARE

                       ------

10X GENOMICS        )
        Plaintiff,  )
        V.          )CASE NO.
                    )1:19-cv-00862-CFC-SRF
CELSEE, INC.        )
        Defendant. )


                       ------


          Teleconference taken pursuant to
notice at the Federal Courthouse, held in
Magistrate Judge Sherry R. Fallon's
Chambers, 6th Floor, 844 King Street,
Wilmington, Delaware 19801, on Monday,
December 16, 2019, beginning at 2:00 p.m.,
before Patrick J. O'Hare, RPR, Notary
Public.






              WILCOX & FETZER
        Registered Professional Reporters
              1330 N. King Street
           Wilmington, Delaware  19801
```

Page 2

```
 1  APPEARANCES:
    (Via telephone)
 2
 3  RICHARDS LAYTON & FINGER, P.A.
    BY:  FREDERICK L. COTTRELL, III, ESQ.
 4  One Rodney Square
    Suite 600, 920 N. King Street
 5  Wilmington, DE 19801
    302-658-6541
 6  cottrell@rlf.com
    Counsel for Plaintiff
 7
 8  DURIE TANGRI
    BY:  EUGENE NOVIKOV, ESQ.
 9  217 Leidesdorff Street
    San Francisco, CA 94111
10  415-362-6666
    enovikov@durietangri.com
11  Co-counsel for Plaintiff
12
    FARNAN, LLP
13  BY:  BRIAN E. FARNAN, ESQ.
    919 North Market Street
14  12th Floor
    Wilmington, DE 19801
15  302-777-0300
    bfarnan@farnanlaw.com
16  Counsel for Defendant
17
    WEIL, GOTSHAL & MANGES LLP
18  BY:  DEREK C. WALTER, ESQ.
    201 Redwood Shores Parkway
19  Redwood Shores, Silicon Valley 94065
    650-802-3934
20  derek.walter@weil.com
    Co-Counsel for Defendant
21
22
23
24
```

Page 3

1 **THE COURT:** Good afternoon,
2 everyone.  This is Magistrate Judge Sherry
3 Fallon.  This is the time that I set aside
4 for the discovery dispute over the
5 protective order in 10x Genomics versus
6 Celsee, Inc.
7 Let's start with appearances of
8 counsel for the plaintiff.
9 **MR. COTTRELL:** Yes, good
10 afternoon, Your Honor, Fred Cottrell of
11 Richards Layton for the plaintiff 10x
12 Genomics, and my co-counsel from Durie
13 Tangri, Eugene Novikov is on.
14 **MR. NOVIKOV:** Good afternoon,
15 Your Honor.
16 **THE COURT:** Good afternoon.
17 Thank you.
18 And who's on the line for
19 Celsee?
20 **MR. FARNAN:** Good afternoon,
21 Your Honor, Brian Farnan on behalf of the
22 defendant.  With me is Derek Walter from
23 Weil Gotshal.
24 **MR. WALTER:** Good afternoon.

Page 4

1 **THE COURT:** Good afternoon.
2 All right.  I have the filings
3 in front of me.  It appears that the
4 plaintiff's filing was the first to be
5 docketed, I have number 45.
6 So, I will hear from the
7 plaintiffs first and then I'll hear from
8 defendants with respect to the protective
9 order provision that either should be
10 included in a two-tier version with
11 confidential materials and highly
12 confidential materials, attorneys' eyes
13 only, or the contrasting proposal by Celsee
14 with respect to having two in-house
15 attorneys permitted under the protective
16 order to view highly confidential material.
17 So, let me hear from plaintiffs
18 first.
19 **MR. NOVIKOV:** Thank you,
20 Your Honor.  This is Gene Novikov from
21 Durie Tangri for the plaintiff 10x, and
22 I'll try to supplement our submission
23 rather than rehash it and Mr. Cottrell will
24 chime in if I go off the rails.

**10x Genomics v.**
**Celsee, Inc.,**

Teleconference
December 16, 2019

Page 5

1    The one thing that I think is
2  clear from the caselaw is that in a case
3  like this where you have a competitor
4  litigant and you have a case in which
5  highly confidential information is going to
6  get exchanged, the question of whether or
7  not in-house counsel have access to the
8  most highly confidential information that's
9  going to get produced is made first with
10  respect to specific individuals and not in
11  the abstract.
12    And, two, on a pretty fulsome
13  record about who those individuals are and
14  what they do, and what we have here after
15  Celsee's responsive filing, which added
16  some information that we didn't previously
17  have about what exactly they're proposing,
18  is that they would like to have access to
19  the most highly confidential information
20  that 10x is going to be producing for their
21  general counsel, who is a Ph.D. in
22  biochemistry, and sort of a player to be
23  named later. All right.
24    And with respect to the player

Page 6

1  to be named later, we have this provision
2  that says, well, they can tell us three
3  days in advance who it's going to be, and
4  they don't have to really tell us much
5  about who they are or what they do. And
6  there's no procedure in place for us to
7  raise any objections and for the Court to
8  resolve any disputes.
9    And we, also, have this
10  requirement that the person not be a
11  competitive decision-maker with respect to
12  sort of the technical area of the
13  litigation, and it's not clear what that is
14  supposed to mean.
15    Celsee has basically one
16  product line and it's a product line that's
17  the subject of this case, and so, any
18  competing, the competitive decision-making
19  at this company is going to be, you know,
20  likelihood competitive decision-making with
21  respect to the technical area of the case.
22    So, with respect to sort of the
23  abstract proposal that they can just tell
24  us who else it's going to be, we think the

Page 7

1  provision is in position for this reason.
2    And with respect to the general
3  counsel, we don't have the sort of record
4  that I think the caselaw would require to
5  allow access in a case like this. He's
6  provided a declaration that says only that
7  he is part time and he's based in Boston.
8  He doesn't say that he's a competitive
9  decision-maker.
10    Their brief says that he's not
11  a competitive decision-maker, again, with
12  respect to the subject matter of the case,
13  for the technical subject matter of the
14  case, but of course, the documents that are
15  going to get produced go far beyond that.
16    Today we have a set of
17  disclosures due that's going to include
18  confidential pricing information and
19  revenue and sales information and the --
20  Mr. LaPointe's declaration doesn't make the
21  sort of representation that the caselaw
22  would require.
23    And the reason it doesn't is,
24  of course, he is a competitive

Page 8

1  decision-maker, he is the general counsel
2  at a 60-person company, he's there to give
3  strategic advice, you know, he has a Ph.D.
4  in the area of science in which the company
5  operates, and under any set of
6  circumstances, I strongly suspect he would
7  meet the, quote/unquote, advice and
8  participation in competitive
9  decision-making standard that's set forth
10  in the case.
11    And so, you know I don't want
12  to belabor this. In the brief they say,
13  you know, we've asked for an injunction,
14  they want to be able to see the documents
15  we're relying on. I certainly get that.
16    I can tell you we will be
17  reasonable with respect to things like
18  contentions and we'll work with them on the
19  redactions that would be needed so that
20  their in-house folks can see the aspect of
21  the discovery that have life of strategic
22  veillance.
23    Now, the balance of harm is
24  here, we have two small companies, they're

Page 9

1 close competitors in the same market.  Self
2 presentment for their general counsel and
3 someone we don't know about to have access
4 to our most confidential stuff, and we
5 think it's pretty clear, at least for the
6 time being, we need to be able to produce
7 information in this case on an outside
8 counsel's -- true outside counsel's eyes
9 only basis.
10     And if the Court would like to
11 have a provision that permits Celsee to
12 make the sort of record that they would
13 need under the cases to allow access here,
14 we're not opposed to that, but definitely
15 not the provision that they proposed.
16     Thank you very much.
17     **THE COURT:** Well, what more is
18 needed?  I can understand perhaps
19 lengthening the notice time, and, in fact,
20 that's a provision that Celsee indicated it
21 wouldn't be opposed to agreeing to
22 reasonable inquiries in the duration of the
23 notice period.
24     And the provision they propose

Page 10

1 clearly affirms that the attorneys who
2 would see the information would not have
3 direct responsibility for or direct
4 involvement in the prosecution of patent
5 applications or in competitive
6 decision-making, and it goes on to relate
7 specifically to the technology at issue in
8 this case.
9     And, as I understand it, there
10 was even some further refinement of the
11 language that follows competitive
12 decision-making.  Certainly I'll leave it
13 to the parties to speak to that, but what
14 more is needed to give assurances to 10x
15 about everything possibly being done to
16 avoid inadvertent disclosure?
17     **MR. NOVIKOV:** Sure.  So, I
18 think a couple of things.  One, it cannot
19 just be competitive decision-making with
20 respect to the technical subject matter of
21 the case.  And Your Honor is correct, there
22 was some discussion about the scope that's
23 fundamentally the scope of the prosecution
24 bar, but that doesn't really address the

Page 11

1 central issue, which is that the cases
2 apply a competitive decision-making
3 standard that is broader than what's
4 proposed.
5     Frankly, Your Honor, I'm not
6 totally sure what it means to have -- to
7 represent that Mr. LaPointe, for example,
8 is not a competitive decision-maker with
9 respect to the technical area of the case.
10 Like, does it just mean that he is not a
11 competitive decision-maker with respect to
12 product design?
13     Again, I'm not sure that that's
14 sufficient under the cases, and it's not
15 sufficient in light of the fact that we're
16 going to be producing competitively
17 confident data that goes beyond just
18 technical information.  So, that's one
19 thing.
20     And the other thing that I
21 would say would be needed would be a
22 requirement that when they propose who is
23 to have access they provide some
24 information that goes beyond just that

Page 12

1 person's name and title, which I think
2 would be all that's required under this
3 provision.
4     I think we would want to know
5 what that person's role is at the company,
6 that person's day-to-day interaction with
7 the senior managers and people who are
8 going to make competitive strategic
9 decisions with respect to the company, and,
10 you know, what measures are in place to
11 prevent inadvertent disclosures.
12     And the provision doesn't
13 require -- doesn't require any of that at
14 the moment.
15     **THE COURT:** Given the size of
16 the defendant and some of the
17 particularities of the defendant which have
18 been argued to be the genesis for what the
19 defendants are requesting in the protective
20 order, how do the parties, and potentially
21 the Court, deal with issues if there's
22 certain information that's produced in
23 discovery by 10x and the Court were to
24 hypothetically, you know, go with 10x's

| Page 13 | Page 15 |
|---|---|

Page 13

1 proposal for the two-tier confidentiality
2 designations, how would Celsee deal with
3 those situations in which information that
4 might be produced with the attorneys' eyes
5 only designation is something that they
6 truly need to share with in-house folks one
7 or two, but let's just say one for purposes
8 of this hypothetical, in order to, you
9 know, be able to litigate and formulate
10 their strategy for purposes of litigation?
11     How does the protective order
12 allow for them to seek some exceptions to
13 the designation to allow them to share it
14 with the people they need to share it with
15 arguably to make decisions about litigation
16 strategy?
17     MR. NOVIKOV: So, I believe the
18 protective -- First of all, I mean, I think
19 the first thing that they would do is that
20 they would comment and have a discussion
21 with us about it.
22     As I said, we certainly
23 understand their need when it comes to the
24 stuff that has strategic weight and is

Page 15

1 plaintiff's submission on page nine?
2     MR. NOVIKOV: Let me confirm.
3 Sorry, I believe I'm actually looking at
4 Exhibit A to defendant's submission. I
5 apologize for that, but with respect to
6 that, it's the same and it's on page -- it
7 starts on page nine of that document.
8     THE COURT: All right. Let me
9 take a moment to look at that before I hear
10 from Celsee.
11     In the interim, do you have any
12 additional comments before I hear from
13 defendants?
14     MR. NOVIKOV: I don't. I'm not
15 sure if Mr. Cottrell has anything to add.
16     MR. COTTRELL: No, Your Honor,
17 I don't have anything to add. Thank you.
18     THE COURT: All right. Give me
19 a moment to read this provision before I
20 hear from Celsee, please.
21     (Brief pause.)
22     THE COURT: All right. Who
23 will take the lead on behalf of Celsee?
24     MR. WALTER: This is Derek

| Page 14 | Page 16 |
|---|---|

Page 14

1 important to settlement or that is sort of
2 truly pivotal to case strategy, certainly
3 understand that there may be at least a
4 legitimate desire and a need to see that
5 stuff. And I think in the first instance
6 they would come to us, and we would be
7 happy to work with them and see how we can
8 accommodate that while protecting our
9 information.
10     I believe, Your Honor, that
11 there is a provision in the protective
12 order for the court to resolve disputes
13 with respect to the level at which
14 documents are designated. I'm scrolling
15 through that now to make sure.
16     THE COURT: I'll give you a
17 moment to do that, because that's kind of
18 an important provision that I would like to
19 take a look at.
20     MR. NOVIKOV: Absolutely. So,
21 I just found it, it is on page nine of our
22 submission, it's called contesting the
23 designation.
24     THE COURT: Exhibit C to

Page 16

1 Walter, Your Honor.
2     THE COURT: All right. Go
3 ahead, Mr. Walter.
4     MR. WALTER: Thank you.
5     So, you know what we have to
6 look at here is a simple balancing test, we
7 have to weigh the risk of an inadvertent
8 disclosure or competitive misuse against a
9 harmed and moving party.
10     And it should be very obvious
11 that this is not the kind of situation
12 where there's any sort of meaningful risk,
13 and that puts aside the protections that we
14 put in the protective order.
15     So, the individual, who is the
16 general counsel now, he's a part-time
17 general counsel, he's been with the company
18 for five months and he works remotely.
19     Okay, this is not someone who
20 is at the facility, who is there on a
21 day-to-day basis, he works remotely part
22 time, and he's only been there for a short
23 period of time.
24     This is someone who's been

Page 17

1 brought in to help out with discrete legal
2 issues that the company faces, including
3 reviewing agreements, preparing supply
4 agreements, Human Recourses matters,
5 material transfer agreements, and most
6 importantly, one of the key things he was
7 brought in for was to manage and provide
8 input on the case.
9    This isn't someone who's got a
10 long history with the company, who's
11 ingrained with their decision-making and is
12 integral to everything made. He's someone
13 who has been brought in on a part-time
14 basis, who works remotely, and his primary
15 role has been to manage this litigation.
16    Now, let's be clear. He's an
17 in-house attorney and he knows Celsee's
18 business better than an outside attorney,
19 but in many respects, he's actually more
20 like an outside attorney.
21    This situation we have here is
22 very much like the situations that are
23 replete throughout the caselaw where courts
24 do allow in-house attorney to have access

Page 19

1    You know, we're going to make
2 that absolute, okay, that's not a problem.
3 We're willing to agree that he won't
4 participate in any sort of strategic
5 decision-making, as long as it's clear, you
6 know, he is going to be the person who's
7 going to be making decisions related to
8 management of this litigation.
9    But, you know, the intention
10 there wasn't to suggest that he won't be
11 involved in technical aspects but he will
12 be involved in business strategic
13 decision-making, that's not the intention
14 here.
15    The individual who we propose
16 to give highly confidential information to
17 just doesn't have the bandwidth to be
18 involved in that kind of strategic
19 decision-making and that's not what he was
20 brought on to do.
21    That really should be enough
22 here to allow him to have access to highly
23 confidential attorneys' eyes only
24 information, but there's even more, I think

Page 18

1 to highly confidential attorneys' eyes only
2 information.
3    Now, those facts alone, okay,
4 which are actually clear from the record.
5 In fact, you know, it wasn't us who
6 submitted the resume of Christian LaPointe,
7 that came from the plaintiffs. They
8 submitted that with their moving papers.
9 So, they know what he was about, they know
10 how long he's been at the company, they
11 know he's part time.
12    Beyond those facts, he's
13 willing to agree not to be involved in
14 having prosecution, that's a significant
15 factor, that's also something that's
16 identified throughout the caselaw, and he's
17 agreed not to participate in strategic
18 decision-making.
19    Now, Mr. Novikov has pointed
20 out that the protective order provision
21 says he won't agree to strategic decision
22 or won't participate in strategic
23 decision-making related to the technical
24 subject matter of the case.

Page 20

1 there's another point here that's really
2 important not to forget.
3    We're not the company that
4 kicked this litigation off, we're the ones
5 that have been sued. This isn't a
6 situation where you have a patent assertion
7 entity or a company that's looking to get
8 its hands all over the inside information
9 of another company that can go off and sue
10 other people about additional patent claims
11 against the company its already sued.
12    10x has sued us. They have
13 asserted seven patents against us, they've
14 alleged willful infringement, they've
15 alleged false advertising, violation of the
16 Delaware Deceptive Trade Secret Patent --
17 Practices Act, and it's very clear they
18 want to try and add trade secret
19 allocations to the case.
20    They want to shut Celsee down,
21 and now they say that the attorney that
22 Celsee has hired to work with them on the
23 case, an interstate outside counsel can't
24 see whatever aspect of their claims and

Page 21

1 defense is. That's heavy-handed and it's
2 not supported in the law.
3     Now, in view of that situation,
4 there's not really any meaningful risk to
5 10x Genomics here. On the other hand, the
6 significant harm is to Celsee. This isn't
7 a company like Apple or Intel or Microsoft
8 that's having one of its mini product lines
9 attacked and it's going to go on doing
10 whatever it's doing regardless of how the
11 case turns out.
12     10x is putting everything that
13 it's got in the entire company, and like I
14 mentioned, they're trying to shut down
15 Celsee. It's harmful if the person who is
16 going to be supervising the patent
17 litigation on behalf of the company doesn't
18 have broad access to the litigation
19 materials in order to manage the
20 litigation, make strategic decisions on the
21 course of the case. That much is clear.
22     You know, I want to address a
23 couple other points that were made here.
24 They mentioned the provision in the

Page 22

1 protective order regarding what happens if
2 we can't agree. And I think Your Honor has
3 probably had a chance to take a look at
4 that, and I think the important point to
5 know about that provision is that we're
6 going to end up with a motion practice
7 before Your Honor.
8     If they don't make something
9 highly confidential and attorneys' eyes
10 only and we brought it in and we say we
11 like to have it be designated and they say
12 no, the next step is motion practice before
13 Your Honor.
14     And, you know, I'm not too
15 confident -- I mean, even Mr. Novikov has
16 said that they would be happy to work with
17 us on that, but I have to be clear. I'm
18 not too confident in how that's going to
19 turn out given we're in a situation that we
20 have an individual like Mr. LaPointe and
21 they're trying to prevent him from having
22 access to materials, things that may be
23 taking a more heavy-handed approach with
24 this than they're suggesting.

Page 23

1     And I think there is a little
2 risk here potential for a motion practice
3 before Your Honor, which is what the
4 protective order ultimately calls for.
5     You know, another thing Mr.
6 Novikov raised is that they want to have
7 more information about what Mr. LaPointe
8 was going to be doing, I provided that
9 information. I think on this call they
10 didn't ask for this information previously.
11     I got to address the point
12 about the competitive decision-making
13 provision, and as Your Honor noted, they
14 want to have the notice provision extended
15 for a certain period of time and we can
16 agree to do that to address that concern.
17     And then, you know, finally
18 there's this issue of a safeguard, and as I
19 noted already, he's someone who works
20 remotely, he's not someone who is there on
21 a day-to-day basis, you know, walking down
22 the hall and, you know, sharing an office
23 or next door to the CEO. That's not the
24 situation here.

Page 24

1     You know, if we need to do
2 something, you know, to affirm that they
3 got, like, an isolated litigation laptop or
4 an isolated litigation e-mail account, we
5 can do that, that's fine, but it really
6 shouldn't be necessary in this kind of
7 situation.
8     And I don't have any further --
9 anything further beyond that unless the
10 Court has questions.
11     MR. NOVIKOV: May I respond
12 briefly for defendant?
13     THE COURT: Go ahead, Mr.
14 Novikov.
15     MR. NOVIKOV: Thank you very
16 much. So, a couple of things. So, as Mr.
17 Walter suggested at the end of the call, he
18 has provided some new information that's
19 not in their filing and it's not in their
20 declaration, and that's exactly the sort of
21 thing that I think 10x and the Court should
22 have a record of before the decision is
23 made; right?
24     He's represented now that Mr.

Page 25

1  LaPointe was brought on primarily to manage
2  this case and that he is in effect more
3  like an outside attorney.  That's the sort
4  of thing -- I agree that that's a salient
5  inquiry, but that's the sort of thing that
6  I think ought to be in a declaration from
7  Mr. LaPointe.
8      And the only other thing that I
9  want to say is, you know, Mr. Walter
10  mentioned that, you know, Celsee is the one
11  that's been sued, he suggests that we're
12  trying to shut them down, and it is true
13  that we filed this lawsuit.
14      I think this lawsuit, as the
15  complaint makes clear, that my client 10x
16  has very serious concerns about Celsee
17  essentially being a copycat company.  I
18  think that that bears on whether or not
19  they should get to have access to the most
20  sensitive information that's going to get
21  produced here.
22      Mr. Walter mentioned that Mr.
23  LaPointe needs stability to manage the
24  litigation.  I think the cases are clear

Page 26

1  that managing outside counsel is not a
2  compelling reason to grant in-house access.
3  They have hired Weil Gotshal, which is
4  obviously one of the leading accufirms in
5  the country to litigate this case.
6      As this Court has said, in
7  circumstances like these, courts typically
8  have no trouble concluding that outside
9  counsel can manage the case perfectly well
10  without having to provide the highest
11  degree of information to anybody who's
12  in-house.
13      So, that's all I have,
14  Your Honor.  I would submit that they have
15  not put forth a sufficient record for the
16  sort of decision they're asking Your Honor
17  to render here.
18      **THE COURT:** Okay.  All right.
19  Having read the briefs and heard the
20  arguments of counsel on this teleconference
21  today, I'm prepared to make a bench ruling.
22      The transcript of this hearing
23  will serve as the order of the Court, I
24  will not be issuing any additional

Page 27

1  memorandum order in writing.
2      I'm sorry?  It sounds like I'm
3  having some interference on the phone.  Can
4  everyone hear me?
5      **MR. NOVIKOV:** Yes, Your Honor.
6      **MR. WALTER:** Yes, Your Honor.
7      **MR. COTTRELL:** Yes, I can hear
8  you.
9      **THE COURT:** All right.  My
10  ruling is this:  For present purposes, I'm
11  going to go the more traditional route and
12  adopt 10x's proposal with the two-tier
13  confidentiality tier and highly
14  confidential attorneys' eyes only tier,
15  rather than Celsee's proposal.
16      But that is without prejudice
17  to Celsee to continue to meet and confer
18  with 10x to see if the parties can come to
19  some terms, now that more information has
20  been disclosed on this teleconference about
21  Mr. LaPointe, specifically with respect to
22  carving out access for Mr. LaPointe to
23  certain documents that he might not
24  otherwise have access to under the

Page 28

1  provisions that I am adopting today.
2      And the basis for my ruling is,
3  as the parties have -- as both sides have
4  acknowledged, the caselaw informs the
5  Court, specifically the Deutsche Bank case
6  and British Telecom and other cases that
7  both sides have cited in their briefing,
8  that this is a balancing test.
9      The risk of inadvertent
10  disclosure or misuse must be balanced
11  against the potential harm to the opposing
12  party from all restrictions imposed upon
13  that party's right to have the benefit of
14  counsel of its choice.
15      And, moreover, the Court has
16  brought discretion to decide the degree of
17  protection, and the protective order may be
18  used as a tool to strike that balance
19  between these competing interests.
20      From what I've heard, the
21  concern obviously is the disclosure of
22  competitively sensitive information to
23  someone who is, because of their role
24  internally within the company, has the

Page 29

1  potential to inadvertently disclose it or
2  use it or inadvertently misuse it, not
3  intentional perhaps, but just by virtue of
4  the role that they play within that
5  company.
6      Now, there may be ways around
7  that, but I don't think I've heard enough
8  on this call to be assured by Celsee that
9  there aren't sufficient safeguards in
10 place.
11     And I'm also concerned that
12 this proposed language about two in-house
13 attorneys, only one of which who's really
14 been described in any detail, Mr. LaPointe,
15 through his declaration and through the
16 representations of counsel.
17     I don't know who Attorney No. 2
18 might be, and simply springing a name and a
19 job title and assurances that the material
20 won't be inadvertently disclosed or misused
21 doesn't give the Court assurances, as it
22 does not give the plaintiff assurances.
23     But, like I said, there may be
24 a path forward.  Certainly, I think with

Page 30

1  respect to Mr. LaPointe there may be a path
2  forward, and the safest thing for the Court
3  to do, because once confidential
4  information is out in the realm, you can't
5  stuff it back in the can, so to speak.
6      The safest thing for the Court
7  to do is to protect that information by the
8  two-tier confidentiality designations,
9  knowing that there is the means within the
10 protective order to contest the
11 designation.
12     And I think that 10x -- I'm
13 sure both sides, not just 10x, but Celsee
14 too, can read between the lines of this
15 ruling and know I'm expecting some
16 flexibility here, that if a small company
17 like Celsee truly needs attorneys' eyes
18 only documents to be shared with Mr.
19 LaPointe in order to make strategic
20 litigation-related decisions in the case,
21 then there has to be some flexibility
22 there.
23     I'm expecting some flexibility
24 on the part of 10x, because when disputes

Page 31

1  get to the point where there's no
2  alternative but to present them here to the
3  Court, I'm going to be looking for whether
4  there has been flexibility.
5      If I find that that's really
6  important information for Celsee to be able
7  to share with Mr. LaPointe or, you know, in
8  the event that, you know, there becomes
9  another individual there, as of to date
10 unknown, that it needs to be shared, I'm
11 going to be looking for some flexibility
12 and not unreasonable conduct to tie the
13 hands of Celsee from litigating this case
14 as it needs to.  So, I'll be looking for
15 that.
16     In any event, my ruling now is
17 to protect the information in the
18 traditional sense that most protective
19 orders have this two-tier designation in it
20 and it seems to work well.
21     I know it's not a one size fits
22 all for all litigation, and this case may
23 be the exception to that, but for present
24 purposes, I think it's the way to go, I

Page 32

1  will be receptive to an amendment to the
2  protective order if the parties are able to
3  reach agreement to carve out a provision
4  for Mr. LaPointe.
5      And I will be receptive to
6  hearing any further disputes with respect
7  to overuse of the attorneys' eyes only
8  confidential designation in this case in an
9  effort to not necessarily truly protect
10 sensitive information, but more as an
11 offensive weapon to tie the hand to the
12 other side in litigating the case properly.
13     So, that is my ruling, it's
14 under Rule 72(a), any party who wishes to
15 object may timely take objections to the
16 district judge who will then review this
17 transcript and my order to determine
18 whether it is clearly erroneous or contrary
19 to law.
20     Is there anything further from
21 10x?
22     **MR. NOVIKOV:** Nothing from 10x
23 Your Honor, thank you.
24     **THE COURT:** Is there anything

Page 33

1  further from Celsee?

2  **MR. WALTER:** No, Your Honor.

3  **THE COURT:** All right.  Thank

4  you, counsel, that concludes our

5  teleconference.

6  (Teleconference concluded at

7  2:35 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Page 34

1  STATE OF DELAWARE.)

2  NEW CASTLE COUNTY )

3

4     CERTIFICATE OF STENOGRAPHER

5

6        I, Patrick J. O'Hare, RPR, do

7  hereby certify that I further certify that

8  the foregoing is a true and correct

9  transcript of the teleconference.

10        I further certify that I am not

11  counsel, attorney, or relative of either

12  party, or otherwise interested in the event

13  of this suit.

14

15

16          *Patrick J. O'Hare*

17  ----------------------

18   Patrick J. O'Hare, RPR

19

20

21

22

23

24

## A

**able (5)**
8:14 9:6 13:9 31:6
32:2
**absolute (1)**
19:2
**Absolutely (1)**
14:20
**abstract (2)**
5:11 6:23
**access (14)**
5:7,18 7:5 9:3,13
11:23 17:24 19:22
21:18 22:22 25:19
26:2 27:22,24
**accommodate (1)**
14:8
**account (1)**
24:4
**accufirms (1)**
26:4
**acknowledged (1)**
28:4
**Act (1)**
20:17
**actually (3)**
15:3 17:19 18:4
**add (3)**
15:15,17 20:18
**added (1)**
5:15
**additional (3)**
15:12 20:10 26:24
**address (4)**
10:24 21:22 23:11,
16
**adopt (1)**
27:12

**adopting (1)**
28:1
**advance (1)**
6:3
**advertising (1)**
20:15
**advice (2)**
8:3,7
**affirm (1)**
24:2
**affirms (1)**
10:1
**after (1)**
5:14
**afternoon (7)**
3:1,10,14,16,20,
24 4:1
**again (2)**
7:11 11:13
**against (4)**
16:8 20:11,13
28:11
**agree (6)**
18:13,21 19:3
22:2 23:16 25:4
**agreed (1)**
18:17
**agreeing (1)**
9:21
**agreement (1)**
32:3
**agreements (3)**
17:3,4,5
**ahead (2)**
16:3 24:13
**alleged (2)**
20:14,15
**allocations (1)**
20:19
**allow (6)**

**7:5 9:13 13:12,13**
17:24 19:22
**alone (1)**
18:3
**already (2)**
20:11 23:19
**also (3)**
6:9 18:15 29:11
**alternative (1)**
31:2
**amendment (1)**
32:1
**another (4)**
20:1,9 23:5 31:9
**anybody (1)**
26:11
**anything (5)**
15:15,17 24:9
32:20,24
**apologize (1)**
15:5
**appearances (1)**
3:7
**appears (1)**
4:3
**Apple (1)**
21:7
**applications (1)**
10:5
**apply (1)**
11:2
**approach (1)**
22:23
**area (4)**
6:12,21 8:4 11:9
**arguably (1)**
13:15
**argued (1)**
12:18
**arguments (1)**

**26:20**
**around (1)**
29:6
**aside (2)**
3:3 16:13
**asked (1)**
8:13
**asking (1)**
26:16
**aspect (2)**
8:20 20:24
**aspects (1)**
19:11
**asserted (1)**
20:13
**assertion (1)**
20:6
**assurances (4)**
10:14 29:19,21,22
**assured (1)**
29:8
**attacked (1)**
21:9
**attorney (7)**
17:17,18,20,24
20:21 25:3 29:17
**attorneys (3)**
4:15 10:1 29:13
**attorneys' (8)**
4:12 13:4 18:1
19:23 22:9 27:14
30:17 32:7
**avoid (1)**
10:16

## B

**back (1)**
30:5
**balance (2)**

8:23 28:18

**balanced (1)**
28:10

**balancing (2)**
16:6 28:8

**bandwidth (1)**
19:17

**Bank (1)**
28:5

**bar (1)**
10:24

**based (1)**
7:7

**basically (1)**
6:15

**basis (5)**
9:9 16:21 17:14
23:21 28:2

**bears (1)**
25:18

**becomes (1)**
31:8

**before (7)**
15:9,12,19 22:7,
12 23:3 24:22

**behalf (3)**
3:21 15:23 21:17

**being (3)**
9:6 10:15 25:17

**belabor (1)**
8:12

**believe (3)**
13:17 14:10 15:3

**bench (1)**
26:21

**benefit (1)**
28:13

**better (1)**
17:18

**between (2)**

28:19 30:14

**beyond (5)**
7:15 11:17,24
18:12 24:9

**biochemistry (1)**
5:22

**Boston (1)**
7:7

**both (3)**
28:3,7 30:13

**Brian (1)**
3:21

**brief (3)**
7:10 8:12 15:21

**briefing (1)**
28:7

**briefly (1)**
24:12

**briefs (1)**
26:19

**British (1)**
28:6

**broad (1)**
21:18

**broader (1)**
11:3

**brought (7)**
17:1,7,13 19:20
22:10 25:1 28:16

**business (2)**
17:18 19:12

**C**

**call (3)**
23:9 24:17 29:8

**called (1)**
14:22

**calls (1)**
23:4

**came (1)**
18:7

**cannot (1)**
10:18

**carve (1)**
32:3

**carving (1)**
27:22

**case (28)**
5:2,4 6:17,21 7:5,
12,14 8:10 9:7 10:8,
21 11:9 14:2 17:8
18:24 20:19,23
21:11,21 25:2 26:5,9
28:5 30:20 31:13,22
32:8,12

**caselaw (6)**
5:2 7:4,21 17:23
18:16 28:4

**cases (5)**
9:13 11:1,14
25:24 28:6

**Celsee (23)**
3:6,19 4:13 6:15
9:11,20 13:2 15:10,
20,23 20:20,22 21:6,
15 25:10,16 27:17
29:8 30:13,17 31:6,
13 33:1

**Celsee's (3)**
5:15 17:17 27:15

**central (1)**
11:1

**CEO (1)**
23:23

**certain (3)**
12:22 23:15 27:23

**certainly (5)**
8:15 10:12 13:22
14:2 29:24

**chance (1)**
22:3

**chime (1)**
4:24

**choice (1)**
28:14

**Christian (1)**
18:6

**circumstances (2)**
8:6 26:7

**cited (1)**
28:7

**claims (2)**
20:10,24

**clear (11)**
5:2 6:13 9:5 17:16
18:4 19:5 20:17
21:21 22:17 25:15,24

**clearly (2)**
10:1 32:18

**client (1)**
25:15

**close (1)**
9:1

**co-counsel (1)**
3:12

**come (2)**
14:6 27:18

**comes (1)**
13:23

**comment (1)**
13:20

**comments (1)**
15:12

**companies (1)**
8:24

**company (20)**
6:19 8:2,4 12:5,9
16:17 17:2,10 18:10
20:3,7,9,11 21:7,13,

17 25:17 28:24 29:5
30:16

**compelling (1)**
26:2

**competing (2)**
6:18 28:19

**competitive (16)**
6:11,18,20 7:8,11,
24 8:8 10:5,11,19
11:2,8,11 12:8 16:8
23:12

**competitively (2)**
11:16 28:22

**competitor (1)**
5:3

**competitors (1)**
9:1

**complaint (1)**
25:15

**concern (2)**
23:16 28:21

**concerned (1)**
29:11

**concerns (1)**
25:16

**concluded (1)**
33:6

**concludes (1)**
33:4

**concluding (1)**
26:8

**conduct (1)**
31:12

**confer (1)**
27:17

**confident (3)**
11:17 22:15,18

**confidential (15)**
4:11,12,16 5:5,8,
19 7:18 9:4 18:1

19:16,23 22:9 27:14
30:3 32:8

**confidentiality (3)**
13:1 27:13 30:8

**confirm (1)**
15:2

**contentions (1)**
8:18

**contest (1)**
30:10

**contesting (1)**
14:22

**continue (1)**
27:17

**contrary (1)**
32:18

**contrasting (1)**
4:13

**copycat (1)**
25:17

**correct (1)**
10:21

**COTTRELL (6)**
3:9,10 4:23 15:15,
16 27:7

**counsel (15)**
3:8 5:7,21 7:3 8:1
9:2 16:16,17 20:23
26:1,9,20 28:14
29:16 33:4

**counsel's (2)**
9:8,8

**country (1)**
26:5

**couple (3)**
10:18 21:23 24:16

**course (3)**
7:14,24 21:21

**COURT (31)**
3:1,16 4:1 6:7

9:10,17 12:15,21,23
14:12,16,24 15:8,18,
22 16:2 24:10,13,21
26:6,18,23 27:9 28:5,
15 29:21 30:2,6 31:3
32:24 33:3

**courts (2)**
17:23 26:7

---

**D**

**data (1)**
11:17

**date (1)**
31:9

**days (1)**
6:3

**day-to-day (3)**
12:6 16:21 23:21

**deal (2)**
12:21 13:2

**Deceptive (1)**
20:16

**decide (1)**
28:16

**decision (3)**
18:21 24:22 26:16

**decision-maker (6)**
6:11 7:9,11 8:1
11:8,11

**decision-making (14)**
6:18,20 8:9 10:6,
12,19 11:2 17:11
18:18,23 19:5,13,19
23:12

**decisions (5)**
12:9 13:15 19:7
21:20 30:20

**declaration (5)**
7:6,20 24:20 25:6

29:15

**defendant (4)**
3:22 12:16,17
24:12

**defendants (3)**
4:8 12:19 15:13

**defendant's (1)**
15:4

**defense (1)**
21:1

**definitely (1)**
9:14

**degree (2)**
26:11 28:16

**Delaware (1)**
20:16

**Derek (2)**
3:22 15:24

**described (1)**
29:14

**design (1)**
11:12

**designated (2)**
14:14 22:11

**designation (6)**
13:5,13 14:23
30:11 31:19 32:8

**designations (2)**
13:2 30:8

**desire (1)**
14:4

**detail (1)**
29:14

**determine (1)**
32:17

**Deutsche (1)**
28:5

**direct (2)**
10:3,3

**disclose (1)**

29:1

**disclosed (2)**
27:20 29:20

**disclosure (4)**
10:16 16:8 28:10,
21

**disclosures (2)**
7:17 12:11

**discovery (3)**
3:4 8:21 12:23

**discrete (1)**
17:1

**discretion (1)**
28:16

**discussion (2)**
10:22 13:20

**dispute (1)**
3:4

**disputes (4)**
6:8 14:12 30:24
32:6

**district (1)**
32:16

**docketed (1)**
4:5

**document (1)**
15:7

**documents (5)**
7:14 8:14 14:14
27:23 30:18

**done (1)**
10:15

**door (1)**
23:23

**down (4)**
20:20 21:14 23:21
25:12

**due (1)**
7:17

**duration (1)**

9:22

**Durie (2)**
3:12 4:21

## E

**effect (1)**
25:2

**effort (1)**
32:9

**either (1)**
4:9

**else (1)**
6:24

**e-mail (1)**
24:4

**end (2)**
22:6 24:17

**enough (2)**
19:21 29:7

**entire (1)**
21:13

**entity (1)**
20:7

**erroneous (1)**
32:18

**essentially (1)**
25:17

**Eugene (1)**
3:13

**even (3)**
10:10 19:24 22:15

**event (2)**
31:8,16

**everyone (2)**
3:2 27:4

**everything (3)**
10:15 17:12 21:12

**exactly (2)**
5:17 24:20

**example (1)**
11:7

**exception (1)**
31:23

**exceptions (1)**
13:12

**exchanged (1)**
5:6

**Exhibit (2)**
14:24 15:4

**expecting (2)**
30:15,23

**extended (1)**
23:14

**eyes (9)**
4:12 9:8 13:4 18:1
19:23 22:9 27:14
30:17 32:7

## F

**faces (1)**
17:2

**facility (1)**
16:20

**fact (3)**
9:19 11:15 18:5

**factor (1)**
18:15

**facts (2)**
18:3,12

**Fallon (1)**
3:3

**false (1)**
20:15

**far (1)**
7:15

**FARNAN (2)**
3:20,21

**filed (1)**

25:13

**filing (3)**
4:4 5:15 24:19

**filings (1)**
4:2

**finally (1)**
23:17

**find (1)**
31:5

**fine (1)**
24:5

**first (7)**
4:4,7,18 5:9 13:18,
19 14:5

**fits (1)**
31:21

**five (1)**
16:18

**flexibility (5)**
30:16,21,23 31:4,
11

**folks (2)**
8:20 13:6

**follows (1)**
10:11

**forget (1)**
20:2

**formulate (1)**
13:9

**forth (2)**
8:9 26:15

**forward (2)**
29:24 30:2

**found (1)**
14:21

**Frankly (1)**
11:5

**Fred (1)**
3:10

**front (1)**

4:3

**fulsome (1)**
5:12

**fundamentally (1)**
10:23

**further (6)**
10:10 24:8,9 32:6,
20 33:1

## G

**Gene (1)**
4:20

**general (6)**
5:21 7:2 8:1 9:2
16:16,17

**genesis (1)**
12:18

**Genomics (3)**
3:5,12 21:5

**give (7)**
8:2 10:14 14:16
15:18 19:16 29:21,22

**Given (2)**
12:15 22:19

**goes (3)**
10:6 11:17,24

**going (22)**
5:5,9,20 6:3,19,24
7:15,17 11:16 12:8
19:1,6,7 21:9,16
22:6,18 23:8 25:20
27:11 31:3,11

**Good (7)**
3:1,9,14,16,20,24
4:1

**Gotshal (2)**
3:23 26:3

**grant (1)**
26:2

## H

**hall (1)**
23:22

**hand (2)**
21:5 32:11

**hands (2)**
20:8 31:13

**happens (1)**
22:1

**happy (2)**
14:7 22:16

**harm (3)**
8:23 21:6 28:11

**harmed (1)**
16:9

**harmful (1)**
21:15

**hear (8)**
4:6,7,17 15:9,12,
20 27:4,7

**heard (3)**
26:19 28:20 29:7

**hearing (2)**
26:22 32:6

**heavy-handed (2)**
21:1 22:23

**help (1)**
17:1

**highest (1)**
26:10

**highly (10)**
4:11,16 5:5,8,19
18:1 19:16,22 22:9
27:13

**hired (2)**
20:22 26:3

**history (1)**
17:10

**Honor (20)**
3:10,15,21 4:20
10:21 11:5 14:10
15:16 16:1 22:2,7,13
23:3,13 26:14,16
27:5,6 32:23 33:2

**Human (1)**
17:4

**hypothetical (1)**
13:8

**hypothetically (1)**
12:24

## I

**identified (1)**
18:16

**important (5)**
14:1,18 20:2 22:4
31:6

**importantly (1)**
17:6

**imposed (1)**
28:12

**inadvertent (4)**
10:16 12:11 16:7
28:9

**inadvertently (3)**
29:1,2,20

**Inc (1)**
3:6

**include (1)**
7:17

**included (1)**
4:10

**including (1)**
17:2

**indicated (1)**
9:20

**individual (4)**

16:15 19:15 22:20
31:9

**individuals (2)**
5:10,13

**information (30)**
5:5,8,16,19 7:18,
19 9:7 10:2 11:18,24
12:22 13:3 14:9 18:2
19:16,24 20:8 23:7,9,
10 24:18 25:20
26:11 27:19 28:22
30:4,7 31:6,17 32:10

**informs (1)**
28:4

**infringement (1)**
20:14

**ingrained (1)**
17:11

**in-house (9)**
4:14 5:7 8:20 13:6
17:17,24 26:2,12
29:12

**injunction (1)**
8:13

**input (1)**
17:8

**inquiries (1)**
9:22

**inquiry (1)**
25:5

**inside (1)**
20:8

**instance (1)**
14:5

**integral (1)**
17:12

**Intel (1)**
21:7

**intention (2)**
19:9,13

**intentional (1)**
29:3
**interaction (1)**
12:6
**interests (1)**
28:19
**interference (1)**
27:3
**interim (1)**
15:11
**internally (1)**
28:24
**interstate (1)**
20:23
**involved (4)**
18:13 19:11,12,18
**involvement (1)**
10:4
**isolated (2)**
24:3,4
**issue (3)**
10:7 11:1 23:18
**issues (2)**
12:21 17:2
**issuing (1)**
26:24

**J**

**job (1)**
29:19
**Judge (2)**
3:2 32:16

**K**

**key (1)**
17:6
**kicked (1)**
20:4

**kind (4)**
14:17 16:11 19:18
24:6
**knowing (1)**
30:9
**knows (1)**
17:17

**L**

**language (2)**
10:11 29:12
**LaPointe (14)**
11:7 18:6 22:20
23:7 25:1,7,23 27:21,
22 29:14 30:1,19
31:7 32:4
**LaPointe's (1)**
7:20
**laptop (1)**
24:3
**later (2)**
5:23 6:1
**law (2)**
21:2 32:19
**lawsuit (2)**
25:13,14
**Layton (1)**
3:11
**lead (1)**
15:23
**leading (1)**
26:4
**least (2)**
9:5 14:3
**leave (1)**
10:12
**legal (1)**
17:1
**legitimate (1)**

14:4
**lengthening (1)**
9:19
**level (1)**
14:13
**life (1)**
8:21
**light (1)**
11:15
**likelihood (1)**
6:20
**line (3)**
3:18 6:16,16
**lines (2)**
21:8 30:14
**litigant (1)**
5:4
**litigate (2)**
13:9 26:5
**litigating (2)**
31:13 32:12
**litigation (13)**
6:13 13:10,15
17:15 19:8 20:4
21:17,18,20 24:3,4
25:24 31:22
**litigation-related (1)**
30:20
**little (1)**
23:1
**long (3)**
17:10 18:10 19:5
**look (4)**
14:19 15:9 16:6
22:3
**looking (5)**
15:3 20:7 31:3,11,
14

**M**

**made (4)**
5:9 17:12 21:23
24:23
**Magistrate (1)**
3:2
**make (10)**
7:20 9:12 12:8
13:15 14:15 19:1
21:20 22:8 26:21
30:19
**makes (1)**
25:15
**making (1)**
19:7
**manage (6)**
17:7,15 21:19
25:1,23 26:9
**management (1)**
19:8
**managers (1)**
12:7
**managing (1)**
26:1
**many (1)**
17:19
**market (1)**
9:1
**material (3)**
4:16 17:5 29:19
**materials (2)**
4:11,12 21:19
22:22
**matter (4)**
7:12,13 10:20
18:24
**matters (1)**
17:4

**may (9)**
14:3 22:22 24:11
28:17 29:6,23 30:1
31:22 32:15
**mean (4)**
6:14 11:10 13:18
22:15
**meaningful (2)**
16:12 21:4
**means (2)**
11:6 30:9
**measures (1)**
12:10
**meet (2)**
8:7 27:17
**memorandum (1)**
27:1
**mentioned (4)**
21:14,24 25:10,22
**Microsoft (1)**
21:7
**might (3)**
13:4 27:23 29:18
**mini (1)**
21:8
**misuse (3)**
16:8 28:10 29:2
**misused (1)**
29:20
**moment (4)**
12:14 14:17 15:9,
19
**months (1)**
16:18
**more (10)**
9:17 10:14 17:19
19:24 22:23 23:7
25:2 27:11,19 32:10
**moreover (1)**
28:15

**most (6)**
5:8,19 9:4 17:5
25:19 31:18
**motion (3)**
22:6,12 23:2
**moving (2)**
16:9 18:8
**much (5)**
6:4 9:16 17:22
21:21 24:16
**must (1)**
28:10

## N

**name (2)**
12:1 29:18
**named (2)**
5:23 6:1
**necessarily (1)**
32:9
**necessary (1)**
24:6
**need (7)**
9:6,13 13:6,14,23
14:4 24:1
**needed (4)**
8:19 9:18 10:14
11:21
**needs (4)**
25:23 30:17 31:10,
14
**new (1)**
24:18
**next (2)**
22:12 23:23
**nine (3)**
14:21 15:1,7
**noted (2)**
23:13,19

**Nothing (1)**
32:22
**notice (3)**
9:19,23 23:14
**Novikov (17)**
3:13,14 4:19,20
10:17 13:17 14:20
15:2,14 18:19 22:15
23:6 24:11,14,15
27:5 32:22
**number (1)**
4:5

## O

**object (1)**
32:15
**objections (2)**
6:7 32:15
**obvious (1)**
16:10
**obviously (2)**
26:4 28:21
**off (3)**
4:24 20:4,9
**offensive (1)**
32:11
**office (1)**
23:22
**once (1)**
30:3
**one (12)**
5:1 6:15 10:18
11:18 13:6,7 17:6
21:8 25:10 26:4
29:13 31:21
**ones (1)**
20:4
**only (13)**
4:13 7:6 9:9 13:5

16:22 18:1 19:23
22:10 25:8 27:14
29:13 30:18 32:7
**operates (1)**
8:5
**opposed (2)**
9:14,21
**opposing (1)**
28:11
**order (19)**
3:5 4:9,16 12:20
13:8,11 14:12 16:14
18:20 21:19 22:1
23:4 26:23 27:1
28:17 30:10,19 32:2,
17
**orders (1)**
31:19
**other (7)**
11:20 20:10 21:5,
23 25:8 28:6 32:12
**otherwise (1)**
27:24
**ought (1)**
25:6
**out (7)**
17:1 18:20 21:11
22:19 27:22 30:4
32:3
**outside (8)**
9:7,8 17:18,20
20:23 25:3 26:1,8
**over (2)**
3:4 20:8
**overuse (1)**
32:7

## P

**page (4)**

14:21 15:1,6,7

**papers (1)**
18:8

**part (4)**
7:7 16:21 18:11
30:24

**participate (3)**
18:17,22 19:4

**participation (1)**
8:8

**particularities (1)**
12:17

**parties (5)**
10:13 12:20 27:18
28:3 32:2

**part-time (2)**
16:16 17:13

**party (3)**
16:9 28:12 32:14

**party's (1)**
28:13

**patent (5)**
10:4 20:6,10,16
21:16

**patents (1)**
20:13

**path (2)**
29:24 30:1

**pause (1)**
15:21

**people (3)**
12:7 13:14 20:10

**perfectly (1)**
26:9

**perhaps (2)**
9:18 29:3

**period (3)**
9:23 16:23 23:15

**permits (1)**
9:11

**permitted (1)**
4:15

**person (3)**
6:10 19:6 21:15

**person's (3)**
12:1,5,6

**PhD (2)**
5:21 8:3

**phone (1)**
27:3

**pivotal (1)**
14:2

**place (3)**
6:6 12:10 29:10

**plaintiff (4)**
3:8,11 4:21 29:22

**plaintiffs (3)**
4:7,17 18:7

**plaintiff's (2)**
4:4 15:1

**play (1)**
29:4

**player (2)**
5:22,24

**please (1)**
15:20

**pm (1)**
33:7

**point (4)**
20:1 22:4 23:11
31:1

**pointed (1)**
18:19

**points (1)**
21:23

**position (1)**
7:1

**possibly (1)**
10:15

**potential (3)**

23:2 28:11 29:1

**potentially (1)**
12:20

**practice (3)**
22:6,12 23:2

**Practices (1)**
20:17

**prejudice (1)**
27:16

**prepared (1)**
26:21

**preparing (1)**
17:3

**present (3)**
27:10 31:2,23

**presentment (1)**
9:2

**pretty (2)**
5:12 9:5

**prevent (2)**
12:11 22:21

**previously (2)**
5:16 23:10

**pricing (1)**
7:18

**primarily (1)**
25:1

**primary (1)**
17:14

**probably (1)**
22:3

**problem (1)**
19:2

**procedure (1)**
6:6

**produce (1)**
9:6

**produced (5)**
5:9 7:15 12:22
13:4 25:21

**producing (2)**
5:20 11:16

**product (4)**
6:16,16 11:12 21:8

**properly (1)**
32:12

**proposal (5)**
4:13 6:23 13:1
27:12,15

**propose (3)**
9:24 11:22 19:15

**proposed (3)**
9:15 11:4 29:12

**proposing (1)**
5:17

**prosecution (3)**
10:4,23 18:14

**protect (3)**
30:7 31:17 32:9

**protecting (1)**
14:8

**protection (1)**
28:17

**protections (1)**
16:13

**protective (15)**
3:5 4:8,15 12:19
13:11,18 14:11
16:14 18:20 22:1
23:4 28:17 30:10
31:18 32:2

**provide (3)**
11:23 17:7 26:10

**provided (3)**
7:6 23:8 24:18

**provision (18)**
4:9 6:1 7:1 9:11,
15,20,24 12:3,12
14:11,18 15:19
18:20 21:24 22:5

23:13,14 32:3

**provisions (1)**
28:1

**purposes (4)**
13:7,10 27:10
31:24

**put (2)**
16:14 26:15

**puts (1)**
16:13

**putting (1)**
21:12

## Q

**question (1)**
5:6

**questions (1)**
24:10

**quote/unquote (1)**
8:7

## R

**rails (1)**
4:24

**raise (1)**
6:7

**raised (1)**
23:6

**rather (2)**
4:23 27:15

**reach (1)**
32:3

**read (3)**
15:19 26:19 30:14

**really (8)**
6:4 10:24 19:21
20:1 21:4 24:5 29:13
31:5

**realm (1)**
30:4

**reason (3)**
7:1,23 26:2

**reasonable (2)**
8:17 9:22

**receptive (2)**
32:1,5

**record (6)**
5:13 7:3 9:12 18:4
24:22 26:15

**Recourses (1)**
17:4

**redactions (1)**
8:19

**refinement (1)**
10:10

**regarding (1)**
22:1

**regardless (1)**
21:10

**rehash (1)**
4:23

**relate (1)**
10:6

**related (2)**
18:23 19:7

**relying (1)**
8:15

**remotely (4)**
16:18,21 17:14
23:20

**render (1)**
26:17

**replete (1)**
17:23

**represent (1)**
11:7

**representation (1)**
7:21

**representations (1)**
29:16

**represented (1)**
24:24

**requesting (1)**
12:19

**require (4)**
7:4,22 12:13,13

**required (1)**
12:2

**requirement (2)**
6:10 11:22

**resolve (2)**
6:8 14:12

**respect (19)**
4:8,14 5:10,24
6:11,21,22 7:2,12
8:17 10:20 11:9,11
12:9 14:13 15:5
27:21 30:1 32:6

**respects (1)**
17:19

**respond (1)**
24:11

**responsibility (1)**
10:3

**responsive (1)**
5:15

**restrictions (1)**
28:12

**resume (1)**
18:6

**revenue (1)**
7:19

**review (1)**
32:16

**reviewing (1)**
17:3

**Richards (1)**
3:11

**right (11)**
4:2 5:23 15:8,18,
22 16:2 24:23 26:18
27:9 28:13 33:3

**risk (5)**
16:7,12 21:4 23:2
28:9

**role (4)**
12:5 17:15 28:23
29:4

**route (1)**
27:11

**Rule (1)**
32:14

**ruling (6)**
26:21 27:10 28:2
30:15 31:16 32:13

## S

**safeguard (1)**
23:18

**safeguards (1)**
29:9

**safest (2)**
30:2,6

**said (4)**
13:22 22:16 26:6
29:23

**sales (1)**
7:19

**salient (1)**
25:4

**same (2)**
9:1 15:6

**science (1)**
8:4

**scope (2)**
10:22,23

**scrolling (1)**

14:14

**Secret (2)**
20:16,18

**seek (1)**
13:12

**seems (1)**
31:20

**Self (1)**
9:1

**senior (1)**
12:7

**sense (1)**
31:18

**sensitive (3)**
25:20 28:22 32:10

**serious (1)**
25:16

**serve (1)**
26:23

**set (4)**
3:3 7:16 8:5,9

**settlement (1)**
14:1

**seven (1)**
20:13

**share (4)**
13:6,13,14 31:7

**shared (2)**
30:18 31:10

**sharing (1)**
23:22

**Sherry (1)**
3:2

**short (1)**
16:22

**shut (3)**
20:20 21:14 25:12

**side (1)**
32:12

**sides (3)**

**28:3,7 30:13**

**significant (2)**
18:14 21:6

**simple (1)**
16:6

**simply (1)**
29:18

**situation (7)**
16:11 17:21 20:6
21:3 22:19 23:24
24:7

**situations (2)**
13:3 17:22

**size (2)**
12:15 31:21

**small (2)**
8:24 30:16

**someone (8)**
9:3 16:19,24 17:9,
12 23:19,20 28:23

**something (4)**
13:5 18:15 22:8
24:2

**Sorry (2)**
15:3 27:2

**sort (13)**
5:22 6:12,22 7:3,
21 9:12 14:1 16:12
19:4 24:20 25:3,5
26:16

**sounds (1)**
27:2

**speak (2)**
10:13 30:5

**specific (1)**
5:10

**specifically (3)**
10:7 27:21 28:5

**springing (1)**
29:18

**stability (1)**
25:23

**standard (2)**
8:9 11:3

**start (1)**
3:7

**starts (1)**
15:7

**step (1)**
22:12

**strategic (12)**
8:3,21 12:8 13:24
18:17,21,22 19:4,12,
18 21:20 30:19

**strategy (3)**
13:10,16 14:2

**strike (1)**
28:18

**strongly (1)**
8:6

**stuff (4)**
9:4 13:24 14:5
30:5

**subject (5)**
6:17 7:12,13
10:20 18:24

**submission (4)**
4:22 14:22 15:1,4

**submit (1)**
26:14

**submitted (2)**
18:6,8

**sue (1)**
20:9

**sued (4)**
20:5,11,12 25:11

**sufficient (4)**
11:14,15 26:15
29:9

**suggest (1)**

19:10

**suggested (1)**
24:17

**suggesting (1)**
22:24

**suggests (1)**
25:11

**supervising (1)**
21:16

**supplement (1)**
4:22

**supply (1)**
17:3

**supported (1)**
21:2

**supposed (1)**
6:14

**Sure (6)**
10:17 11:6,13
14:15 15:15 30:13

**suspect (1)**
8:6

## T

**taking (1)**
22:23

**Tangri (2)**
3:13 4:21

**technical (8)**
6:12,21 7:13
10:20 11:9,18 18:23
19:11

**technology (1)**
10:7

**Telecom (1)**
28:6

**teleconference (4)**
26:20 27:20 33:5,6

**terms (1)**

27:19

**test (2)**
  16:6 28:8

**their (13)**
  5:20 7:10 8:20 9:2
  13:10,23 17:11 18:8
  20:24 24:19,19 28:7,
  23

**there (22)**
  8:2 10:9,21 14:3,
  11 16:20,22 19:10
  23:1,20 29:6,9,23
  30:1,9,21,22 31:4,8,
  9 32:20,24

**they (39)**
  5:14,18 6:2,4,5,5,
  23 8:12,14 9:12,15,
  24 11:22,23 13:5,14,
  19,20 14:6 18:7,9,9,
  10 20:12,17,20,21
  21:24 22:8,11,16
  23:6,9,13 24:2 25:19
  26:3,14 29:4

**thing (11)**
  5:1 11:19,20
  13:19 23:5 24:21
  25:4,5,8 30:2,6

**things (5)**
  8:17 10:18 17:6
  22:22 24:16

**think (23)**
  5:1 6:24 7:4 9:5
  10:18 12:1,4 13:18
  14:5 19:24 22:2,4
  23:1,9 24:21 25:6,14,
  18,24 29:7,24 30:12
  31:24

**three (1)**
  6:2

**throughout (2)**

17:23 18:16

**tie (2)**
  31:12 32:11

**tier (2)**
  27:13,14

**timely (1)**
  32:15

**title (2)**
  12:1 29:19

**Today (3)**
  7:16 26:21 28:1

**tool (1)**
  28:18

**totally (1)**
  11:6

**Trade (2)**
  20:16,18

**traditional (2)**
  27:11 31:18

**transcript (2)**
  26:22 32:17

**transfer (1)**
  17:5

**trouble (1)**
  26:8

**true (2)**
  9:8 25:12

**truly (4)**
  13:6 14:2 30:17
  32:9

**try (2)**
  4:22 20:18

**trying (3)**
  21:14 22:21 25:12

**turn (1)**
  22:19

**turns (1)**
  21:11

**two (5)**
  4:14 5:12 8:24

13:7 29:12

**two-tier (5)**
  4:10 13:1 27:12
  30:8 31:19

**typically (1)**
  26:7

---

## U

**ultimately (1)**
  23:4

**under (7)**
  4:15 8:5 9:13
  11:14 12:2 27:24
  32:14

**understand (4)**
  9:18 10:9 13:23
  14:3

**unknown (1)**
  31:10

**unless (1)**
  24:9

**unreasonable (1)**
  31:12

**up (1)**
  22:6

**upon (1)**
  28:12

**use (1)**
  29:2

**used (1)**
  28:18

---

## V

**veillance (1)**
  8:22

**version (1)**
  4:10

**versus (1)**

3:5

**view (2)**
  4:16 21:3

**violation (1)**
  20:15

**virtue (1)**
  29:3

---

## W

**walking (1)**
  23:21

**Walter (11)**
  3:22,24 15:24
  16:1,3,4 24:17 25:9,
  22 27:6 33:2

**way (1)**
  31:24

**ways (1)**
  29:6

**weapon (1)**
  32:11

**weigh (1)**
  16:7

**weight (1)**
  13:24

**Weil (2)**
  3:23 26:3

**whatever (2)**
  20:24 21:10

**what's (1)**
  11:3

**who's (7)**
  3:18 16:24 17:9,
  10 19:6 26:11 29:13

**willful (1)**
  20:14

**willing (2)**
  18:13 19:3

**wishes (1)**

32:14

**within (3)**
28:24 29:4 30:9

**without (2)**
26:10 27:16

**work (5)**
8:18 14:7 20:22
22:16 31:20

**works (4)**
16:18,21 17:14
23:19

**writing (1)**
27:1

---

### 1

**10x (17)**
3:5,11 4:21 5:20
10:14 12:23 20:12
21:5,12 24:21 25:15
27:18 30:12,13,24
32:21,22

**10x's (2)**
12:24 27:12

---

### 2

**2 (1)**
29:17

**2:35 (1)**
33:7

---

### 4

**45 (1)**
4:5

---

### 6

**60-person (1)**

---

8:2

---

### 7

**72a (1)**
32:14