**RICHARDS LAYTON & FINGER**

Frederick L. Cottrell, III
302-651-7509
cottrell@rlf.com

January 17, 2020

**VIA CM/ECF & HAND DELIVERY**
The Honorable Sherry R. Fallon
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801

      Re: *10X Genomics, Inc. v. Celsee, Inc.*, C.A. No. 19-862-CFC-SRF

Dear Judge Fallon:

10X Genomics, Inc. opposes Celsee's request to amend the protective order.  *See* D.I. 63.  Celsee has not shifted from its fundamental position or altered its arguments from those previously made, nor has it worked in earnest with 10X to take up the Court's suggestion to see whether "specifically with respect to carving out access for Mr. LaPointe to ***certain documents*** that he might not otherwise have access to," an accommodation could be reached (despite repeated offers from 10X).  D.I. 63, Ex. F at 27:16 to 28:1 (emphasis added).  Celsee's position continues to be that its in-house counsel has a blanket entitlement to review any highly confidential information of a direct competitor.

Within hours of the Court's previous ruling regarding the protective order, Celsee sent 10X a new proposed protective order purporting to "address[] all your concerns with regard to Mr. LaPointe" and making the peremptory demand that 10X agree to its submission.  D.I. 63, Ex. C. at 8.  The proposal did not, in fact, address 10X's concerns but rather included the same proposals made during the teleconference that day—the use of an isolated laptop,[1] and counsel's representation that Mr. LaPointe wouldn't be involved in business strategic decisionmaking other than for this litigation—over which the Court had already adopted an outside attorneys' eyes only tier.

In the following weeks, Celsee continued to demand that 10X grant Mr. LaPointe access to any highly confidential documents, all the while ignoring 10X's offers to discuss the need for Mr. LaPointe to view particular documents, as the Court suggested the parties should do.  *See* D.I. 63, Ex. C at 7 ("[W]e will be open to meet and confer should there be specific designated documents you believe Mr. LaPointe needs to see to be able to manage the litigation."); *id.* at 3 ("[I]t remains our position that we are happy to discuss giving Mr. LaPointe access to specific documents

---

[1] Merely mechanical proposals such as these miss the primary source of inadvertent disclosure, and the most difficult to guard against: the natural difficulty in preventing certain information one may have learned from influencing one's advice or decisions on other matters.  *See, e.g.*, *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) ("It is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well intentioned the effort may be to do so.").

Honorable Sherry R. Fallon
January 17, 2020
Page 2

designated as AEO that you believe he needs to litigate the case, and we told you so on today's call."). Indeed, Celsee neglects to inform the Court that when Celsee actually requested that Mr. LaPointe be granted access to certain documents from 10X's initial production, 10X accommodated Celsee by agreeing that Mr. LaPointe could review a set of confidential technical documents regarding conception and reduction to practice that had been designated HC-AEO material. *See* Ex. 1. Celsee does not argue that 10X has overused the attorneys' eyes only designation, conceding the competitive sensitivity of the documents 10X has produced under that designation.

Now, Celsee approaches the Court with the same demand as before: that Mr. LaPointe be granted blanket access to any highly confidential material. But the record belies the impression Celsee hopes to create: that restricting access to outside counsel is some form of litigation tactic targeted at Celsee. 10X regularly enters into protective orders that include an outside attorneys' eyes only tier. *See* Ex. 2 (Wu Decl.) ¶ 3. The reason is plain: 10X operates in a highly competitive, research-intensive industry, and the company's internal product development, financial, and research and development documents include information of a correspondingly high sensitivity. *Id.* ¶ 2. Information that 10X has already produced in this litigation includes detailed information about the design and specifications of reagents used in the 10X Chromium product line with which Celsee competes. *See id.* ¶ 2–3. As the Court noted, "once confidential information is out in the realm, you can't stuff it back in the can, so to speak." *See* D.I. 63, Ex. F at 30:3–5. This indisputable proposition applies all the more where trade secrets (which lose both their protection and value upon public disclosure) are involved. Indiscriminately providing such information to a competitor who has hired away 10X employees, *see* D.I. 31 [Am. Compl.] ¶¶ 21–24, and who routinely solicits 10X's customers, *see* Ex. 2 (Wu Decl.) ¶ 5, poses an unacceptably high risk of inadvertent disclosure.

In his declaration, Mr. LaPointe asserts, with regard to thousands of pages of what Celsee acknowledges includes "licensing and business information" of 10X, that his ability to "openly discuss the content of those documents and general defense strategy with my outside counsel—Weil, Gotshal & Manges—was severely limited." D.I. 63, Ex. A ¶ 4. What Mr. LaPointe describes is no more than the ordinary constraints on in-house counsel of litigating *any* case in which the protective order includes an outside attorneys' eyes only tier. Merely asserting that a protective order limits in-house counsel's ability to discuss certain matters does not support Celsee's argument. If that were the case, no protective order could ever sufficiently protect a company's most sensitive information.

Celsee references its status as a small company as evidence of the need for Mr. LaPointe to have access to *any* highly confidential information, but this only aggravates 10X's concerns: Celsee's size *increases* the risk of inadvertent disclosure. *See PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, No. 16-403-LPS-CJB, 2017 WL 4138961, at *9 (D. Del. Sept. 8, 2017) ("[I]f the legal department is very small, that would tend to enhance such concerns, since the affected counsel might, by necessity, have to play a role in such future projects."); *T-Jat Sys. 2006 Ltd. v. Expedia, Inc.*, No. 16-581-RGA, D.I. 87 (Oct. 19, 2018) (Ex. 3) (referencing the entity's "small size" as contributing to the risk that someone would "inadvertently apply the technical knowledge acquired"). "[O]ur Court has also noted that the risk of inadvertent disclosure cannot be overcome by the mere contention that access to confidential information is necessary for case management; instead, the

Honorable Sherry R. Fallon
January 17, 2020
Page 3

focus should be on whether in-house counsel's lack of access would impede a party's ability to litigate through outside counsel[.]" *PhishMe*, 2017 WL 4138961, at *9 (second alteration in original, internal quotations marks omitted).

The comparison of Mr. LaPointe to outside counsel also fails to support Celsee's argument, since Celsee has no need of additional outside counsel; "where parties are represented from the outset by capable outside counsel, courts have little trouble balancing the harms in protective order disputes, often readily concluding that the outside counsel of a party's choice can adequately represent its interests even if in-house counsel is precluded from viewing confidential information." *Id.* (internal quotation marks omitted). Assuredly, Celsee is not lacking for representation in this regard. And while Celsee goes to great lengths to minimize the significance of Mr. LaPointe's duties, the fact remains that Celsee appointed him its general counsel. If his work at Celsee is fundamentally insubstantial and unconnected to the company's business strategy, it is not clear why he is so important, and why Celsee cannot simply use bona fide outside counsel to manage this litigation.

Moreover, Celsee fails to cite a single decision approving access by in-house counsel for two companies (one of which is not subject to the jurisdiction of the Court). By Celsee's own acknowledgment, Mr. LaPointe has "*at least* one other client" beyond Celsee. D.I. 63 at 2 (emphasis added). Whatever Celsee may argue about Mr. LaPointe's various roles, it cannot dispute that this fact increases the risk of inadvertent disclosure. While Mr. LaPointe states that, as to Celsee, he is "far removed from Celsee's competitive decision making activities," and is "not involved in any decisions related to pricing, product design, product development, or acquisitions," his only similar representation as to his work for ArcherDX, the details of which remain unknown, is that he is currently Deputy General Counsel at ArcherDX but "do[es] not act as a competitive decisionmaker on behalf of ArcherDX." D.I. 63-1 Ex. A ¶¶ 3, 5. And while outside counsel indeed likewise tend to have multiple clients, they are rarely in the same position with respect to advising the senior management of those clients that a Deputy General Counsel is in.

And Mr. LaPointe's assertions notwithstanding, ArcherDX at a minimum operates in the same field as 10X. ArcherDX sells reagents for use with third-party hardware to run certain genetic profiling operations on biological samples. Ex. 2 (Wu Decl.) ¶ 6. For example, ArcherDX's Immunoverse product and 10X's Chromium Single Cell Immune Profiling Solution are both used to profile the expression of immune-specific genes. *Id*. While Mr. LaPointe's declaration states that ArcherDX cannot enter the single cell field, D.I. 63, Ex. A ¶ 11, that does not preclude ArcherDX's products from competing with 10X's products, now or in the future.

Celsee's reflexive rejection of the Court's previous ruling, and immediate initiation of a new dispute over the same issue, are not suggestive of a legitimate effort to work through these issues with the benefit of Your Honor's earlier guidance. As the Court instructed, and as 10X has already been doing, 10X will be flexible and consider in good faith requests that Mr. LaPointe be granted access to particular documents or categories of documents, should reasonable requests for access be made. But for the reasons stated above, 10X cannot agree that in-house counsel of two companies in the field (at least one a direct competitor) may have unrestricted access to highly confidential information. 10X respectfully requests that Celsee's motion be denied.

Honorable Sherry R. Fallon
January 17, 2020
Page 4

                                                  Respectfully submitted,

                                                  */s/ Frederick L. Cottrell, III*

                                                  Frederick L. Cottrell, III (#2555)

cc:    All Counsel of Record (via CM/ECF and email)