# EXHIBIT 1

| | |
|---|---|
| From: | Eneda Hoxha |
| To: | Kennedy, Natalie; Eugene Novikov; Ewing, Alexandra M.; bfarnan@farnanlaw.com; Reines, Edward; Derek Walter; Singer, Randi; Celsee 10X; Rawnsley, Jason J. |
| Cc: | Cottrell, Fred; Daralyn Durie; Henry Cornillie; SERVICE-TENX |
| Subject: | RE: Activity in Case 1:19-cv-00862-CFC-SRF 10x Genomics, Inc. v. Celsee, Inc. || Infringement Contention Documents |
| Date: | Monday, December 23, 2019 6:54:34 PM |
| Attachments: | Categories of documents produced corresponding to 2.f.i._x..xlsx |

Counsel,

Please find attached a spreadsheet identifying by document ID documents produced that correspond to categories 2.f.i.-x. of the Scheduling Order.  Also please note that documents 10X-CELSEE00000834-881 were inadvertently designated as AEO. We will reproduce these documents with the correct designation by tomorrow.

We reiterate that we do not agree to unfettered access for Mr. LaPointe to documents designated as AEO.  However, as we have stated numerous times, we agree to provide access to some documents designated as AEO which Mr. LaPointe may need in order to litigate this case. As such, we agree that Mr. LaPointe can have access to the specific documents listed below, as well as any documents produced with the Disclosure of Asserted Claims and Infringement Contentions that are not marked as AEO.

As stated in previous correspondence, and during our meet and confer on December 19, 2019, we remain open to discussing access to any additional documents designated as AEO that are not listed below, but that you believe Mr. LaPointe needs to have access to in order to litigate this case. Please note that this does not constitutes a waiver of the designation of these documents as AEO with respect to any other party.

| Document type | Document IDs |
|---|---|
| Documents associated with conception and reduction to practice | 10X-CELSEE00000302-833 |
| Technical documents associated with the embodying products | 10X-CELSEE00000001-110; 10X-CELSEE00000834-881; 10X-CELSEE00017226-17672 |
| Patents and file histories of the asserted patents | 10X-CELSEE00004906-17225 |
| Financial information as disclosed in form S-1 | 10X-CELSEE00017676-17917 |
| Infringement Contentions and all accompanying attachments, including list of all embodying products | |

Best Regards,

Eneda

Eneda Hoxha | Attorney | Durie Tangri LLP | 415-376-6471 | ehoxha@durietangri.com

**From:** Kennedy, Natalie <Natalie.Kennedy@weil.com>
**Sent:** Friday, December 20, 2019 2:17 PM
**To:** Eneda Hoxha <ehoxha@durietangri.com>; Eugene Novikov <ENovikov@durietangri.com>; Ewing, Alexandra M. <Ewing@rlf.com>; bfarnan@farnanlaw.com; Reines, Edward <edward.reines@weil.com>; Derek Walter <Derek.Walter@weil.com>; Singer, Randi <randi.singer@weil.com>; Celsee 10X <celsee.10x@weil.com>; Rawnsley, Jason J. <Rawnsley@RLF.com>
**Cc:** Cottrell@rlf.com; Daralyn Durie <DDurie@durietangri.com>; Henry Cornillie <HCornillie@durietangri.com>; SERVICE-TENX <SERVICE-TENX@durietangri.com>
**Subject:** Activity in Case 1:19-cv-00862-CFC-SRF 10x Genomics, Inc. v. Celsee, Inc. || Infringement Contention Documents

Counsel,

Further to 10X's Disclosure of Asserted Claims and Infringement Contentions and associated documents served on December 16, 2019, please immediately identify the documents by production number that correspond to each category 2.f.i-x, as required by the Scheduling Order.  Please also confirm that you do not intend to rely on any additional documents regarding conception or reduction to practice of the '981, '197, '459, or '662 patents.

In addition, please confirm by COB Monday that all the documents provided with the Disclosure of Asserted Claims and Infringement Contentions can be shared with Christian LaPointe.

Regards,
Natalie



**Natalie C. Kennedy**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Natalie.Kennedy@weil.com
+1 212 310 8227 Direct
+1 212 310 8007 Fax

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying

of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

| Category | Subsection | Document ID |
|---|---|---|
| Documents ( e.g., contracts, purchase orders, mvmces, advertisements, marketing materials, offer letters, beta site testing agreements, and third party or joint development agreements) sufficient to evidence each discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell, or any public use of, the claimed invention prior to the date of application for the asserted patent(s ); | i | None |
| All documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the asserted patent(s) or the priority date identified pursuant to paragraph 2(e)(vi) of this Order, whichever is earlier; | ii | 10X-CELSEE00000302-833 ;10X-CELSEE00004906-17225;10X-CELSEE00017918-20216 |
| A copy of the file history for each asserted patent; | iii | 10X-CELSEE00004906-17225 |
| All documents evidencing ownership of the patent rights by the party asserting patent infringement; | iv | 10X-CELSEE00004326-4372; 10X-CELSEE00004906-17225 |
| If a party identifies instrumentalities pursuant to paragraph 2( e )(vii) of this Order, documents sufficient to show the operation of any aspects or elements of such instrumentalities the patent claimant relies upon as embodying any asserted claims; | v | 10X-CELSEE00000001-110; 10X-CELSEE00000834-881; 10X-CELSEE00000883-4290;10X-CELSEE00017226-17672 |
| All agreements, including licenses, transferring an interest in any asserted patent; | vi | 10X-CELSEE00004326-4372; 10X-CELSEE00004906-17225 |
| All agreements that the party asserting infringement contends are comparable to a license that would result from a hypothetical reasonable royalty negotiation; | vii | 10X-CELSEE0000111-301; 10X-CELSEE00004373-4825 |
| All agreements that otherwise may be used to support the party asserting infringement's damages case; | viii | 10X-CELSEE0000111-301; 10X-CELSEE00002373-4825 |
| If a party identifies instrumentalities pursuant to paragraph 2( e )(vii) of this Order, documents sufficient to show marking of such embodying accused instrumentalities; and if the party wants to preserve the right to recover lost profits based on such products, the sales, revenues, costs, and profits of such embodying accused instrumentalities; and | ix | 10X-CELSEE00000882-4290; 10X-00004291-4325; 10X-CELSEE00017673-17919 |
| All documents comprising or reflecting a F/RAND commitment or agreement with respect to the asserted patent(s). | x | None |

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10x GENOMICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CELSEE, INC., <br><br> Defendant. | C.A. No. 19-00862 |

## DECLARATION OF RANDY WU

I, Randy Z. Wu, declare as follows.

1. I am the Senior Director of Intellectual Property and Litigation at 10x Genomics, Inc. ("10x"), where I have worked since 2016. In my role as Senior Director of Intellectual Property and Litigation, I have responsibilities both for managing litigation in which the company is involved and for managing the company's intellectual property portfolio.

2. 10x operates in a highly competitive market. 10x depends on its products' technical superiority and its ability to offer new, cutting-edge products to obtain its market advantage. Certain financial data such as profit margins and sales volumes are also highly sensitive because they reveal the relative business strengths of 10x's products and provides insight into how to effectively compete with 10x. As such, 10x closely protects its confidential information, including competitively sensitive material like internal technical documents about 10x's

current and future products, product development roadmaps, business plans, and financial data. Many of these sensitive documents include 10x's trade secrets, such as detailed information about the design and specifications of reagents used in the 10x Chromium product line that Celsee competes with, and 10x has taken measures to carefully protect these trade secrets.

3. 10x has produced a large volume of these types of highly sensitive documents in several prior litigations, including multiple federal court actions. In each of these cases, these sensitive documents were produced under a protective order that restricted these materials to review only by outside counsel in the action and not employees of our competitor adversary. *See Beckton, Dickinson and Co. et al. v. 10x Genomics, Inc.*, Case No. 18-1800-RGA (D. Del.), ECF No. 37; *Bio-Rad Laboratories, Inc. v. 10x Genomics, Inc.*, Case No. 18-1679-RGA (D. Del.), ECF No. 33; *Bio-Rad Laboratories, Inc. v. 10x Genomics, Inc.*, Case No. 16-152-RGA (D. Del.), ECF No. 65.

4. I understand that in this case, Celsee seeks to permit its general counsel, Christian LaPointe, unfettered access to any 10x confidential information produced in this case. I also understand that Mr. LaPointe serves as general counsel for another company called ArcherDX, Inc., which is not a party to this lawsuit.

5. Celsee is 10x's direct competitor. Celsee's Genesis System competes

with 10x's Chromium Single Cell Gene Expression Solution product line. Celsee routinely solicits 10x's customers.

6. ArcherDX operates in the same field as 10x. I understand that while ArcherDX does not sell hardware, it sells reagents for use with third-party hardware to run certain genetic profiling operations on biological samples. For example, ArcherDX's Immunoverse product and 10x's Chromium Single Cell Immune Profiling Solution are both used to profile the expression of immune-specific genes.

7. In my judgment, for the reasons discussed above, inadvertent disclosure to competitive decisionmakers at Celsee or ArcherDX of highly sensitive 10x information such as technical documentation about our current and future products, forward-looking business information such as plans and roadmaps, and certain financial data that would reveal information like profit margin and sales volume, has the potential to cause serious competitive harm to 10x.

8. Further, based on my experience in the life science and legal industry, a general counsel to a company in the life sciences typically serves as a high-level advisor to the business as well as legal operations of the company. General counsels regularly interact with the executive team and board members of a company as they are making competitive decisions.

I declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct. Executed on January 16, 2020 at Pleasanton, CA.

_____
Randy Wu

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| T-JAT SYSTEMS 2006 LTD., <br><br> Plaintiff, <br><br> v. <br><br> EXPEDIA, INC. (DE) and ORBITZ WORLDWIDE, INC., <br><br> Defendants. | C.A. No. 16-cv-581-RGA |

<u>ORDER</u>

Presently before the Court is the issue of whether two of T-Jat's employees, Dr. Golobrodsky and Mr. Vershavsky, may access documents designated Attorney's Eyes Only (AEO). I have considered the parties' papers. (D.I. 76, 77, 82, 84). I held a discovery conference on October 15, 2018.

Inherent in a court's power under Federal Rule of Civil Procedure 26 is the ability to restrict an individual's access to confidential information when there is "an unacceptable opportunity for inadvertent disclosure." *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). The Federal Circuit has made clear that limits to attorney access should be judged on "a counsel-by-counsel basis, and cannot be determined solely by giving controlling weight to the classification of counsel as in-house rather than retained." *Id.* "[T]he counsel-by-counsel determination should turn on the extent to which counsel is involved in 'competitive decisionmaking' with its client." *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). Competitive decisionmaking is "shorthand for a counsel's activities,

association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* (quoting *U.S. Steel*, 730 F.2d at 1468 n.3). Even if a court is satisfied that a risk of inadvertent disclosure or misuse exists, the court "must balance this risk against the potential harm to the opposing party" in deciding the scope of the protective order. *Id.* at 1380.

Although T-Jat does not have in-house counsel and is requesting access for non-attorney employees, I believe the principles set out in *U.S. Steel* still apply. *See, e.g.*, *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 299 F.R.D. 498, 500–01 (W.D. Va. 2014). Whether "an unacceptable opportunity for inadvertent disclosure" exists depends on the extent to which Dr. Golobrodsky and Mr. Vershavsky are involved in competitive decisionmaking at T-Jat. This risk of inadvertent disclosure should then be balanced against the potential harm to T-Jat if Dr. Golobrodsky and Mr. Vershavsky cannot access the AEO materials.

T-Jat suggests a different framework altogether. T-Jat cites to three cases, all by the same judge, that say essentially the same thing. That is, it was the practice of the judge to give at least one person "from the company" access to all the documents. (D.I. 77 at 3). It may be that all three cases reached the right result, but I think T-Jat attempts to make the judge's practice into a legal rule. I do not think the case law supports such a finding. For example, in *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20 (D. Del. 1988), the court cites numerous cases for the proposition that a party's "technical information" would only be disclosed to opposing "trial counsel" and "independent experts" despite the opposing party's request that it be submitted to at least one employee of the opposing party. *Id.* at 22. Likewise, other courts in more recent cases have declined to allow client employees access to confidential

2

information when those employees are competitive decisionmakers. *See McAirlaids*, 299 F.R.D. at 501; *3M Co. v. ACS Indus., Inc.*, 2015 WL 13484695, at *2–3 (D. Minn. Dec. 2, 2015); *Wanke Cascade Distrib. Ltd. v. Forbo Flooring, Inc.*, 2014 WL 12648465, at *2–3 (D. Or. Apr. 11, 2014).

Here, unlike in much of the case law, the parties are not direct competitors. *See, e.g., Safe Flight*, 682 F. Supp. at 21. Therefore, additional analysis is required to determine what harm to Defendants, if any, might result from inadvertent disclosure.[1] T-Jat argues that neither Dr. Golobrodsky nor Mr. Vershavsky are competitive decisionmakers "in the sense of any competition with Expedia." (D.I. 77 at 2). I disagree. The parties' market relationship, though relevant, is not dispositive of whether T-Jat's employees are competitive decisionmakers. *See Blackbird Tech LLC v. Serv. Lighting & Elec. Supplies, Inc.*, 2016 WL 2904592, at *4 (D. Del. May 18, 2016). I think the key question is whether "Defendants' trade secrets and other sensitive information could potentially be of value to [T-Jat]." *R.R. Donnelley & Sons Co. v. Quark, Inc.*, 2007 WL 61885, at *2 n.2 (D. Del. Jan. 4, 2007).

Defendants' "core technical documents," produced as an example of materials that Defendants would designate as AEO, show a detailed presentation on Expedia's backend systems. (D.I. 82 at 1, Exs. 7–10). Defendants assert, "[I]t will be challenging for T-Jat not to use that information in connection with its own business."[2] (*Id.* at 1). On the other hand, T-Jat

---

[1] I believe this is a preliminary issue. If inadvertent disclosure by T-Jat's employees poses no risk of harm to Defendants, Defendants will fail to show good cause for the proposed protective order irrespective of the employees' decisionmaking power. This is consistent with the Federal Circuit's definition for competitive decisionmaker, which asks to what extent one influences the client's decisions in light of "information about a *competitor*." *U.S. Steel*, 730 F.2d at 1468 n.3 (emphasis added).

[2] In an earlier letter Defendants also argued that "the technology Expedia will disclose is the focus of at least one of the products T-Jat markets," and "T-Jat has long been involved in litigation and licensing involving the asserted patents and has said that it intends to bring additional lawsuits." (D.I. 76 at 1–2). During the discovery conference, however, T-Jat denied both allegations and Defendants indicated that

3

argues that there is no risk of competition, because it "markets a platform to enable simultaneous web access from multiple devices and communication channels" while Expedia provides "travel-related services and software." (D.I. 77 at 1).

Based on the present record, it is not clear exactly what value T-Jat may derive from Defendants' confidential information. But, it appears that both T-Jat and Expedia provide technology-based products/services. Given the fact that this is a patent infringement action, it seems likely that, even if T-Jat and Expedia do not have competing products/services, they employ overlapping technology in those products/services. Therefore, the parties share an interest in the same technological field. T-Jat would gain a competitive advantage if it inadvertently used knowledge from Defendants' AEO materials in its own research and development.[3] Therefore, I think Defendants have shown a sufficient likelihood of harm from inadvertent disclosure to require further analysis of whether Dr. Golobrodsky and Mr. Vershavsky are competitive decisionmakers.

I believe Dr. Golobrodsky is a competitive decisionmaker. Dr. Golobrodsky is T-Jat's Chief Science Officer and oversees "technical operations." In addition, he is a founder, shareholder, and listed inventor on both asserted patents. T-Jat represented during the discovery conference that it has about ten employees in total, including employees at related companies. It seems probable that Dr. Golobrodsky plays a large role in most, if not all, of T-Jat's technical decisions. Therefore, I find it likely that Dr. Golobrodsky has both the expertise and

---

they know very little about T-Jat's business. I do not think T-Jat gave a clear explanation of its business in the papers or during the discovery conference.

[3] T-Jat represented at the discovery conference that its patent portfolio with the asserted patents is "mature," and that the only patent it is currently prosecuting covers an unrelated technology. Therefore, any risk of competitive advantage will likely relate to T-Jat's use, rather than patenting, of Defendants' technology.

4

management control to inadvertently use the information from Defendant's AEO materials to T-Jat's competitive advantage.

Mr. Vershavsky does not appear to be a competitive decisionmaker, at least to the same extent as Dr. Golobrodsky. Mr. Vershavsky is a shareholder in a related company and a "qualified technician." (D.I. 77 at 2). He works at T-Jat "in the capacity of operations, high level quality assurances, and overall logistical support," and "is not involved in any management capacity." (*Id.*). Unlike Dr. Golobrodsky, Mr. Vershavsky seems to have limited control over which technologies T-Jat pursues and how that technology is monetized.

T-Jat argues that Dr. Golobrodsky and Mr. Vershavsky need to have access to the AEO materials to effectively decide "case strategy" and "assist in the technical aspects of the case." (D.I. 77 at 2). "The risk of inadvertent disclosure cannot be overcome by the mere contention that access to confidential information is necessary for case management." *R.R. Donnelley*, 2007 WL 61885, at *1. Further, I doubt that either Dr. Golobrodsky or Mr. Vershavsky are uniquely qualified to "assist in the technical aspects of the case"—the same role could be played by a third-party expert. Although Mr. Vershavsky does not appear to have the same decisionmaking power as Dr. Golobrodsky, I believe, given his technical expertise and T-Jat's small size, there is still a risk that he will inadvertently apply the technical knowledge acquired from Defendants' AEO materials to T-Jat's advantage. "It is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *In re Deutsche Bank*, 605 F.3d at 1378 (citation and brackets omitted). Therefore, on balance, I think the risk of harm to Defendants from inadvertent disclosure outweighs any harm to T-Jat from not having Dr. Golobrodsky and Mr. Vershavsky access the confidential information. It should not be an unacceptable hardship for T-Jat to rely

on litigation counsel and outside experts to review the AEO materials. "This is a necessary consequence of achieving a balance between full disclosure in discovery and protection against economic injury." *McAirlaids*, 299 F.R.D. at 501–02.

The parties should resubmit the proposed protective order in conformity with this Order.

IT IS SO ORDERED this 19 day of October 2018.

*Richard G. Andrews*
United States District Judge