IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10x GENOMICS, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 19-862-CFC |
| CELSEE, INC., | |
| Defendant. | |

Frederick L. Cottrell, III, Jason J. Rawnsley, Alexandria M. Ewing, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Daralyn J. Durie, Eugene Novikov, Andrew L. Perito, Eneda Hoxha, Annie A. Lee, Ramsey W. Fisher, David F. McGowan, DURIE TANGRI LLP, San Francisco, California; Kira A. Davis, DURIE TANGRI LLP, Los Angeles, California

*Counsel for Plaintiff*

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, Delaware; Barbara A. Fiacco, Jeremy A. Younkin, Brendan Jones, Emma S. Winer, Urszula Nowak, FOLEY HOAG LLP, Boston, Massachusetts

*Counsel for Defendant*

**MEMORANDUM OPINION**

December 4, 2020
Wilmington, Delaware

*[signature: Colm F. Connolly]*

COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Plaintiff 10x Genomics Inc. has filed an objection to the Magistrate Judge's denial of 10x's motion to compel certain discovery. The Magistrate Judge had the authority to make this nondispositive ruling under 28 U.S.C. § 636(b)(1)(A). I "may reconsider" her ruling "where it has been shown that [it] . . . is clearly erroneous or contrary to law." *Id.* I exercise de novo review of the Magistrate Judge's legal conclusions. *AgroFresh Inc. v. Essentiv LLC*, No. CV 16-662 (MN), 2019 WL 4917894, at *1 (D. Del. Oct. 4, 2019).

I.

The facts that led to the objection are straightforward. During the pendency of the case, nonparty Bio-Rad Laboratories acquired 100 percent of Defendant Celsee, Inc.'s stock pursuant to an acquisition agreement. The agreement, not surprisingly, has provisions related to this litigation. At two depositions, Celsee refused to let witnesses answer questions about documents Celsee disclosed to Bio-Rad and communications it had with Bio-Rad during the negotiations that resulted in the acquisition agreement. The disclosures and communications occurred after Celsee and Bio-Rad had signed a non-binding letter of intent to engage in the acquisition negotiations. Celsee cited the common interest privilege and the

attorney work product doctrine as the bases for its refusal to allow the witnesses to answer the questions posed to them. D.I. 204-1, Ex. D at 73, Ex. G at 15–16.

10x asked the Magistrate Judge to order Celsee to reproduce one of the witnesses for no more than four hours of deposition and to compel that witness to produce and testify about any communications between Celsee and Bio-Rad concerning this litigation and the provisions in the acquisition agreement that concern this litigation. D.I. 204 at 4. In its briefing before the Magistrate Judge, 10x represented that it "is not seeking" by this request "attorney files or mental impressions." D.I. 204 at 4. Celsee argued in its briefing that its communications with Bio-Rad were protected from disclosure by the attorney work product doctrine and the common interest doctrine. D.I. 206 at 3–4.

The Magistrate Judge agreed with Celsee that the information sought was protected from disclosure by both the common interest and attorney work product doctrines. Tr. of Sept. 23, 2020 Hr'g at 38:2–17. Accordingly, she denied 10x's request for a compulsion order.

10x filed a timely objection to the Magistrate Judge's ruling.

II.

On November 5, 2020, I heard oral argument and overruled 10x's objection to the extent it sought to overturn the Magistrate Judge's decision to deny 10x access to Celsee's attorneys' work product. I made that ruling because Celsee had

represented to the Magistrate Judge that it was not seeking attorney mental impressions. *See generally In re Cendant Corp. Secs. Litig.*, 343 F.3d 658, 667 (3d Cir. 2003) (holding that discovery of notes that reflect the impressions, opinion, and legal theories of counsel "goes to the core of the work product doctrine"). I reserved judgment on the issue of whether the common interest privilege protected Celsee's communications with Bio-Rad from discovery and asked for further briefing on that issue by the parties. Having studied that briefing, the objection, the transcript of the ruling, Celsee's response to the objection (D.I. 223), the parties' briefing before the Magistrate Judge (D.I. 204; D.I. 206), and the cases cited by the parties, I have concluded that the communications at issue are not protected from disclosure by the common interest privilege and therefore will sustain the objection in part.

### A.

The common interest privilege is an extension of the attorney-client privilege. It protects from discovery communications among clients and attorneys "allied in a common legal cause." *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996) (citation omitted). The privilege "applies in civil and criminal litigation, and even in purely transactional contexts." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 364 (3d Cir. 2007), as amended (Oct. 12, 2007) (citations omitted).

3

The common interest privilege and the common interest doctrine are two sides of the same coin. The common interest doctrine is defined as "an exception to the general rule that the attorney-client privilege will be waived following disclosure of privileged materials to a third party." *Corning Inc. v. SRU Biosystems LLC*, 223 F.R.D. 189, 190 (D. Del. 2004) (citation omitted); *see also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) ("The joint defense and common interest doctrines are not privileges in and of themselves. Rather, they constitute exceptions to the rule on waiver where communications are disclosed to third parties."). Whether described as an extension of the attorney-client privilege or an exception to the waiver of that privilege, the underlying principle—to protect the confidentiality of communications among attorneys and clients allied in a common legal cause—is the same. I will follow the Third Circuit's lead in *In re Teleglobe* and use the term "common interest privilege."

The purpose of the attorney-client privilege, and by extension, the common interest privilege

> is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of the law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

4

*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Like all privileges, the attorney-client privilege "is an exception to the common-law maxim that the public has a right to 'every man's evidence.'" *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 359–60 (citations omitted). Because the privilege "obstructs the truth-finding process, it is construed narrowly," *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991) (citations omitted), and "caution must be exercised to ensure that the privilege is contained within appropriate boundaries," *Union Carbide Corp. v Dow Chemical Co.*, 619 F. Supp. 1036, 1046 (D. Del. 1985) (citation omitted). In exercising that caution, a court should always be mindful of the privilege's purpose. As the Third Circuit noted in *In re Teleglobe*, "[c]ommunication between counsel and client is not, in and of itself, the purpose of the privilege; rather, [the privilege] only protects the free flow of information *because* it promotes compliance with law and aids administration of the judicial system." 493 F.3d at 360–61(emphasis in original).

As the party asserting the privilege, Celsee bears the burden of establishing that it applies. *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012). To meet that burden, Celsee must demonstrate, among other things, that the interests it claims to hold in common with Bio-Rad are "identical, not similar, and [are] legal," *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del. 2010) (citations and quotation marks omitted), and that the communications it seeks to protect

5

"would not have been made but for the sake of securing, advancing, or supplying legal representation," *id*.

### B.

Celsee has failed to meet its burden here. Celsee has not contended, let alone established, that it and Bio-Rad shared an identical legal interest or that its communications with Bio-Rad were made for the purpose of securing, advancing, or supplying legal representation. And, of course, that makes sense, as Celsee and Bio-Rad were not engaged in legal strategy sessions but instead were negotiating a commercial transaction from the opposite sides of a bargaining table.

In its briefing before the Magistrate Judge, Celsee argued that "[i]n their letter of intent, Celsee and Bio-Rad formalized their contemplation of a transaction which, when completed, would make Bio-Rad the owner of a defendant in patent litigation with 10x" and that "[u]nder those circumstances" the common interest privilege applied to Celsee discussions about this litigation with Bio-Rad during the acquisition negotiations. D.I. 206 at 4. The letter of intent, however, did not consummate Bio-Rad's purchase of Celsee; nor did it result in Bio-Rad's assumption of Celsee's liability for the alleged infringement of the asserted patents or make Bio-Rad responsible for defending Celsee in this litigation. The letter was not a joint defense letter. Rather, as its title and terms make clear, the letter was a nonbinding expression of the parties' intent to consummate a stock acquisition

6

"subject to the successful completion of a due diligence review, the negotiation and execution of a mutually satisfactory definitive agreement and the usual and customary approvals." D.I. 204-1, Ex. K at 2. Such an expression does not create the requisite shared legal interest that would justify the confidentiality afforded by the common interest privilege.[1]

Celsee insists that the common interest privilege covers any discussions between a company and a prospective purchaser of the company or the company's assets about litigation or potential litigation that could affect the company or the assets if the contemplated purchase were consummated. In support of this position, it relies principally on what it calls the "seminal case" of *Hewlett-Packard Company. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308 (N.D. Cal. 1987).

The court held in *Hewlett-Packard* that the common interest privilege

---

[1] *But see AgroFresh*, 2019 WL 4917894, at *2 (holding that parties' letter of intent to negotiate a joint venture agreement created shared legal interests between the parties). In *Agrofresh* the district court overturned the Magistrate Judge's ruling that a letter of intent to negotiate a joint venture did not give rise to the common interest privilege. The Magistrate Judge understandably decided in this case to follow *Agrofresh*. *See* Tr. 38:2–7 (noting that the district court in *AgroFresh* "considered an earlier ruling that I had made finding otherwise and determined that it was clearly erroneous, and [that] the letter of intent was enough to create a common interest. So I follow that guidance and find, in this instance, that the letter of intent was enough.") I agree, however, with the Magistrate Judge's earlier ruling that when "two parties are *negotiating* a joint venture[,] [t]hey are still competitors . . . and do not share an interest sufficiently common to extend the attorney-client privilege to their discussions." *Id.* (quoting Magistrate Judge's ruling) (emphasis in original).

7

protected Bausch & Lomb from having to produce to Hewlett-Packard a lawyer's patent opinion letter Bausch & Lomb had previously shared with a prospective buyer of one of Bausch and Lomb's businesses. 115 F.R.D. at 309. The business in question manufactured the products Hewlett-Packard accused of patent infringement, and so it was understandable that Bausch and Lomb and the prospective buyer would have discussed potential litigation with Hewlett-Packard and also that Bausch and Lomb would have shared with the prospective buyer legal opinions about the patents in question. Although the court agreed with Hewlett-Packard that "compelling disclosure of the opinion letter might contribute to the truth finding goal of civil adjudication," *id.*, it concluded that "policy considerations which appear not to have been fully treated in other cases in this area" justified extending the common interest privilege to protect Bausch and Lomb's communications with the prospective buyer, *id.* at 310.

Chief among those considerations was the court's "concern[] about the effect that finding waiver too freely might have on the sort of business transaction in which [Bausch and Lomb] and [the prospective buyer] were involved." *Id.* at 311. In the court's words:

> Holding that this kind of disclosure constitutes a waiver could make it appreciably more difficult to negotiate sales of businesses and products that arguably involve interests protected by laws relating to intellectual property. Unless it serves some significant interest courts should not create procedural doctrine that restricts

8

> communication between buyers and sellers, erects barriers to business deals, and increases the risk that prospective buyers will not have access to important information that could play key roles in assessing the value of the business or product they are considering buying. Legal doctrine that impedes frank communication between buyers and sellers also sets the stage for more lawsuits, as buyers are more likely to be unpleasantly surprised by what they receive. By refusing to find waiver in these settings courts create an environment in which businesses can share more freely information that is relevant to their transactions. This policy lubricates business deals and encourages more openness in transactions of this nature.

*Id.*

At least four district courts have adopted the expansive view of the common interest privilege endorsed by *Hewlett-Packard*.[2] But the vast majority of the courts that have been asked to follow *Hewlett-Packard* have declined to do so.[3] For two reasons, I also reject the reasoning of *Hewlett-Packard*.

---

[2] *See See La. Mun. Police Emp. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 310 (D.N.J. 2008); *BriteSmile, Inc. v. Discus Dental, Inc.*, 2004 WL 2271589, at *2 (N.D. Cal. Aug. 10, 2004); *Cavallaro v. United States,* 153 F.Supp.2d 52, 61 (D. Mass. 2001), *aff'd on other grounds* 284 F.3d 236 (1st Cir. 2002); *Rayman v. Am. Charter Fed. Sav. & Loan Ass'n,* 148 F.R.D. 647, 654–55 (D. Neb. 1993).

[3] *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2019 WL 1589974, at *9–10 (N.D. Cal. Apr. 11, 2019); *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2694191, at *6 (N.D. Cal. June 21, 2017); *RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc.*, 2017 WL 2292818, at *4 (D. Nev. May 25, 2017); *In re Fresh and Process Potatoes Antitrust Litig.*, 2014 WL 2435581, at *9 (D. Idaho May 30, 2014); *Santella v. Grizzly Indus., Inc.*, 2012 WL 5399918, at *1–2 (D. Or. Nov. 5, 2012); *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2010 WL 11519568, at *2–3 (M.D. Ga. Jan. 22, 2010); *In re Juniper*

First, "lubricat[ing] business deals" and "encourage[ing] more openness" in business transactions do not advance the common interest privilege's purpose of "encourag[ing] full and frank communication between attorneys and their clients [to] thereby promote broader public interests in the observance of the law and administration of justice." *Upjohn*, 449 U.S. at 389. Protecting merger and acquisition negotiations from future disclosure will not lead the parties to those negotiations to seek attorney representation; nor will it encourage the parties to be more candid with their attorneys. Parties to merger and acquisition negotiations almost inevitably retain counsel in order to ensure that *their* interests—as opposed to the interests of the party with whom they are negotiating—are protected. And

---

*Networks, Inc. Secs. Litig.*, 2009 WL 4644534 at *2, n.2 (N.D. Cal. Dec. 9, 2009); *Net2Phone, Inc. v. Ebay, Inc.*, 2008 WL 8183817, at *7, 9–10 (D.N.J. June 26, 2008); *Trontech Licensing Inc. v. Thomson, Inc.*, 2008 WL 11450553, at *5 (E.D. Tex. Apr. 8, 2008).; *In re JP Morgan Chase & Co. Secs. Litig.*, 2007 WL 2363311 at *4-5 (N.D. Ill. Aug. 13, 2007) *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 579–80 (N.D. Cal. 2007); *Memry Corp. v. Ky. Oil Tech., N.V.*, 2007 WL 832937, at *1 (N.D. Cal. March 19, 2007). *In re Syncor ERISA Litig.*, 229 F.R.D. 636, 645 n.7 (C.D. Cal. 2005); *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 347–49 (N.D. Ohio 1999); *Griffith v. Davis*, 161 F.R.D. 687, 700–701 (C.D. Cal. 1995); *Oak Indus. v. Zenith Indus.*, 1988 WL 79614, at *4 (N.D. Ill. July 27, 1988).

Citing *Sealed Air Corp.*, 253 F.R.D. at 301, Celsee argues that "[t]he weight of case law suggests that, as a general matter, privileged information exchanged during a merger between two unaffiliated business [sic] would fall within the common-interest doctrine." D.I. 223 at 8. This does not appear to be an accurate statement.

their communications with *their* counsel are shielded by the attorney-client privilege.

     Second, extending a cloak of secrecy to merger and acquisition negotiations would substantially curtail truth seeking in criminal and civil proceedings. Privileges are to be narrowly construed precisely because they obstruct the truth-finding process that lies at the heart of our system of justice. The few evidentiary privileges recognized by federal courts are each "grounded in a substantial individual interest which has been found, through centuries of experience, to outweigh the public interest in the search for truth." *United States v. Bryan*, 339 U.S. 323, 331 (1950). No substantial interest of that kind exists here. Permitting a witness to refuse to testify about negotiations to consummate a merger or acquisition does not give rise to a public good that "transcend[s] the normally predominant principle of utilizing all rational means for ascertaining truth." *Trammel v. United States*, 445 U.S. 40, 50 (1980).

## IV.

     For the reasons discussed above, I will sustain in part 10x's objection to the Magistrate Judge's ruling. I will order Celsee to produce a witness for no more than four hours of deposition and to produce documents and give testimony about communications between Celsee and Bio-Rad concerning this litigation and the provisions in the acquisition agreement that concern this litigation except insofar as

11

the documents or testimony would reveal directly the mental impressions of Celsee's attorneys.

The Court will issue an Order consistent with this Memorandum Opinion.