# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| 10x GENOMICS, INC., | |
| Plaintiff, | |
| v. | C.A. No. 19-00862-CFC-SRF |
| CELSEE, INC., | **REDACTED PUBLIC VERSION** |
| Defendant. | |

**PLAINTIFF 10x GENOMICS, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF LITA L. NELSEN AND JAMES R. KEARL**

OF COUNSEL:

Daralyn J. Durie
Eugene Novikov
Andrew L. Perito
Eneda Hoxha
Annie A. Lee
Ramsey W. Fisher
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: 415-362-6666
Facsimile: 415-236-6300
ddurie@durietangri.com
enovikov@durietangri.com
aperito@durietangri.com
ehoxha@durietangri.com
alee@durietangri.com
rfisher@durietangri.com

Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
Alexandra M. Ewing (#6407)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com
ewing@rlf.com

*Attorneys for Plaintiff 10x Genomics, Inc.*

Kira A. Davis
DURIE TANGRI LLP
953 East 3rd Street
Los Angeles, CA 90013
Telephone:  213-992-4499
Facsimile:   415-236-6300
kdavis@durietangri.com

Dated:  February 5, 2021

# TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF PROCEEDING ...................................................1

II.   INTRODUCTION AND SUMMARY OF THE ARGUMENT ....................1

III.   STATEMENT OF FACTS ..........................................................................3

      1.   Julie Davis ...................................................................................3

      2.   James Kearl ..................................................................................3

      3.   Lita Nelsen ...................................................................................5

IV.   ARGUMENT ..............................................................................................9

    A.   The Court Should Strike Three Portions of Kearl's Report .................9

      1.   The Court Should Strike Kearl's Criticism Of Davis For
         Limiting Her Opinion To The Pretrial Timeframe ....................9

      2.   The Court Should Strike Kearl's Use of the "Common
         Sense Test" ..............................................................................11

      3.   The Court Should Strike Kearl's References To Invalidity
         And Prior Art ...........................................................................13

    B.   The Court Should Strike Nelsen's Opinions In Their Entirety ...........14

V.   CONCLUSION ..........................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allergan Sales, LLC v. UCB, Inc.*,
No. 2:15-cv-01001-JRG-RSP, 2016 WL 8222619 (E.D. Tex. Nov.
7, 2016) ....................................................................................................9

*Carnegie Mellon Univ. v. Marvell Tech. Grp. Ltd.*,
807 F.3d 1283 (Fed. Cir. 2015) .........................................................16

*Chico's Fas, Inc. v. Clair*,
No. 2:13-cv-792-FTM, 2015 WL 3496003 (M.D. Fla. June 3,
2015) ......................................................................................................17

*Elcock v. Kmart Corp.*,
233 F.3d 734 (3d Cir. 2000) ...............................................................16

*Fromson v. W. Litho Plate & Supply Co.*,
853 F.2d 1568 (Fed. Cir. 1988) .........................................................10

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
274 F.3d 1371 (Fed. Cir. 2001) .........................................................20

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) .........................................................14

*M2M Sols. LLC v. Enfora, Inc.*,
167 F. Supp. 3d 665 (D. Del. 2016) ...................................................12

*Orexo AB v. Actavis Elizabeth LLC*,
No. 17-205-CFC, 2019 WL 10060475 (D. Del. Mar. 19, 2019) .......11

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
345 F. Supp. 2d 431 (D. Del. 2004) ...................................................19

*Panduit Corp. v. Stahlin Bros. Fibre Works. Inc.*,
575 F.2d 1152 (6th Cir. 1978) ...........................................................10

*Small v. WellDyne, Inc.*,
927 F.3d 169 (4th Cir. 2019) .............................................................12

*Sport Dimension, Inc. v. Coleman Co., Inc.*,
  820 F.3d 1316 (Fed. Cir. 2016) ............................................................15

*SSL Servs., LLC v. Citrix Sys., Inc.*,
  940 F. Supp. 2d 480 (E.D. Tex. 2013)....................................................13

*TASER Int'l., Inc. v. Karbon Arms, LLC*,
  No. 11-426-RGA, 2013 WL 6705478 (D. Del. Dec. 18, 2013) ........................15

*TASER Int'l, Inc. v. Karbon Arms, LLC*,
  No. 11-426-RGA, 2013 WL 6773663 (D. Del. Dec. 19, 2013) ........................17

*TC Tech. LLC v. Sprint Corp.*,
  No. 16-153-RGA, 2019 WL 2515779 (D. Del. June 18, 2019) ........................13

*Ultratec, Inc. v. Sorenson Comms., Inc.*,
  No. 13-cv-346-BBC, 2014 WL 5361940 (W.D. Wis. Oct. 21,
  2014) ...............................................................................16, 17

*Whitserve, LLC v. Computer Packages, Inc.*,
  694 F.3d 10 (Fed. Cir. 2012) ........................................................9, 11

**Statutes**

35 U.S.C. §284...........................................................................9

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) .............................................................19

Fed. R. Evid. 702 ..................................................................11, 15, 16, 17

## I.    NATURE AND STAGE OF PROCEEDING

10x asserts that Celsee infringes multiple claims of each of the Brenner

patents (#197, #981, #662, #459 Patents) and the Hindson patents (#541 and #280

patents).  The parties have completed fact and expert discovery, and trial is

currently set for June 14, 2021.

## II.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

Julie Davis is 10x's damages expert.  She opines that a reasonable royalty

for patent infringement in this case through trial totals $5 million, payable in

annual lump-sum payments of $1.1 million, $2.6 million, and $1.3 million for the

periods 2019, 2020, and through trial in 2021, respectively.

James Kearl is Celsee's damages expert.  He opines that damages for patent

infringement should be measured in the form of a running royalty of ▮▮▮▮ of

Celsee's sales.  10x does not seek to exclude his ultimate opinion but instead only

to preclude Kearl from making or relying on certain assertions that are contrary to

law.

*First*, Kearl opines that Davis's opinion, which uses a hypothetical

negotiation to quantify damages through the date of trial, would put Celsee in a

"patent hold-up" because Celsee would be forced to negotiate with 10x for a new

agreement to compensate for infringement after trial.  This opinion is based on a

fundamental misunderstanding of the law.  A patent holder does not need to

1

provide evidence of post-trial damages to seek pre-trial damages, which are all that
the jury will be asked to award.  Nor will Celsee be subject to a "hold-up" after
trial.  Instead, the Court will be charged with assessing compensation for acts of
infringement thereafter.

*Second*, Kearl attempts to disguise as expert testimony an assertion that the
royalty proposed by Davis does not pass the "common sense test" because the total
amount of damages exceeds ███ the price 10x paid to acquire the portfolio
containing applications that led to some of the patents-in-suit.  There is no such
test: The Federal Circuit has confirmed that a damages award can and often does
far exceed the purchase price of the asserted patents.

*Third*, Kearl improperly relies on and replays the opinion of Celsee's
technical expert who "has opined that several different prior art combinations
render the claims of the Brenner Patents invalid."  Kearl attempts to justify his
reiteration of this opinion by asserting that the "copious amounts of prior art cannot
be ignored."  These assertions regarding Celsee's invalidity arguments are squarely
at odds with established Federal Circuit precedent requiring a damages expert to
presume the patents to be valid, a proposition that Kearl himself admits.

Celsee also offers a brief report from Lita Nelsen, who purports to be an
expert on licensing.  Her opinions should be excluded in their entirety.  In addition
to repeating Kearl's criticism of Davis for limiting her opinions to the pretrial

timeframe, Nelsen's opinions largely consist of unsupported generalizations about startup companies. And, in the few key instances in which Nelsen endeavored to link her opinions to the facts of this case, she simply got the facts wrong.

## III.   STATEMENT OF FACTS

### 1.   Julie Davis

10x's damages expert, Julie Davis, submitted an expert report in which she opined that a reasonable royalty to compensate 10x for patent infringement through trial would be $5 million, paid in three annual lump-sum installments of $1.1 million, $2.6 million, and $1.3 million in 2019, 2020, and through trial in 2021, respectively. Decl. of Annie Lee in Supp. of Mots. to Exclude Certain Expert Test. ("Lee Decl.") Ex. A at ¶ 17. These payments would cover sales beginning on December 18, 2018, the earliest issue date of the patents-in-suit, and extend through June 30, 2021, the expected trial date. *Id.*

### 2.   James Kearl

Celsee's damages expert, James Kearl, submitted an expert report in which he asserted that 10x would have licensed the patents-in-suit to Celsee, which was setting itself up as a competitor to 10x and marketing itself as having a superior product, for a running royalty of ███ of sales. Kearl takes issue with the structure of Davis's proposed reasonable royalty because it analyzes damages only through the date of trial. ████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████  Lee Decl. Ex. B at ¶¶ 31, 72, 85.

Kearl also purports to apply a "common sense test" that Davis must be wrong because her proposed royalty exceeds ██████ what 10x paid Population Genetics Technologies, Ltd. ("PGT") to acquire the Brenner patent family, including the applications that ultimately matured into the patents-in-suit. Lee Decl. Ex. B at ¶¶ 90, 91. Kearl asserts that this "gap" alone "calls into question the entirety of Ms. Davis' reasonable royalty opinion," Lee Decl., Ex. B at ¶ 90, and implies that Davis's royalty fails because she does not "explain away the discrepancy," Lee Decl. Ex. B at ¶ 91. But Kearl's "common sense" opinion does not acknowledge that royalties exceeding the purchase price of the asserted patents by tenfold or more have been approved by the Federal Circuit, or account for the difference between PGT, which was closing its operations as a product-producing company, and Celsee, which was gearing up to launch a new product. *Id.* Ex. A at ¶ 30 (discussing economic position of PGT in 2015).

Finally, Kearl relies on Celsee's technical expert's opinion that "several different prior art combinations render the claims of the Brenner Patents invalid" and that "the copious amounts of prior art cannot be ignored." Lee Decl. Ex. B at ¶ 100. At his deposition, however, Kearl admitted he knew that he must assume 10x's patents are valid and that the prior art Celsee has pointed to with respect to

the validity of 10x's patents should not impact his analysis of the hypothetical negotiation.  Lee Decl. Ex. C at 230:22–231:10.

### 3.   Lita Nelsen

Lita Nelsen recently retired from leading the Massachusetts Institute of Technology (MIT) Technology Licensing Office (TLO).  During her 30-year tenure with the TLO, she never negotiated a license between competitors or for-profit entities.  Lee Decl. Ex. D at 169:8–169:11 ("So while at the TLO you didn't participate in license negotiations between market participants? A. Not while I was there, no.").  Instead, she was engaged in licensing MIT intellectual property to entities who could commercialize it on MIT's behalf.  The lion's share of her experience in licensing with "small technology-based companies" has been limited to negotiating on behalf of MIT with companies spun out of or working in collaboration with the university.  Nelsen has admitted she is not an expert in corporate finance, corporate liquidity, or startup financing.  Lee Decl. Ex. D at 210:16–22; 41:11–13.

In a report containing just eleven paragraphs of substance, Nelsen opines that it would have been "exceedingly unlikely" for Celsee to agree to lump-sum payments in a hypothetical negotiation with 10x.  Lee Decl. Ex. E at ¶¶ 18–23.

███████████████████████████████████████████████████

███████████████████████████████████████████████████



But she does not explain why or how. In fact, she testified that there are stark differences between the economic realities of license negotiations in the for-profit and non-profit contexts and admitted that she did not account for any of those differences in her report. Lee Decl. Ex. D at 69:4–74:16 (testifying that while MIT prioritizes putting technology "into the hands of the public" over "creating an additional source of revenue for the university," a for-profit company's primary concern is "maximizing shareholder value" and gaining a competitive advantage). She also admitted that she did not analyze how the competitive dynamic between Celsee and 10x would

impact the hypothetical negotiation.  Lee Decl. Ex. D at 180:9–15; *see also* Lee

Decl. Ex. D at 71:22–74:16, 180:17–181:14 (potential competitors in a negotiation

might make any of a "long list" of compromises that a university might not make,

a list she did not analyze).

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ Lee Decl. Ex. E at ¶ 21.

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

 Lee Decl.

Ex. F. at CEL00512148.

Lee Decl. Ex. E at ¶ 22.

Lee Decl.

Ex. E at ¶ 21; Ex. F at CEL00512146.

Nelsen spends the remaining four paragraphs of the substance of her report

echoing Kearl's argument that a damages model that runs through trial amounts to

a "hold-up," repeating the same legal error discussed above.  Lee Decl. ¶ 6, Ex. E

at ¶¶ 25–28.

## IV.   ARGUMENT

### A.   The Court Should Strike Three Portions of Kearl's Report

#### 1.   The Court Should Strike Kearl's Criticism Of Davis For Limiting Her Opinion To The Pretrial Timeframe

Section 284 provides that "[u]pon finding for the claimant the court shall award the claimant ***damages adequate to compensate for the infringement***, ***but in no event less than a reasonable royalty*** for the use made of the invention by the infringer…." 35 U.S.C. §284 (emphasis added).  A reasonable royalty may only compensate the patent holder for "loss resulting from infringement that has already happened." *Allergan Sales, LLC v. UCB, Inc.*, No. 2:15-cv-01001-JRG-RSP, 2016 WL 8222619, at *2 (E.D. Tex. Nov. 7, 2016) (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed. Cir. 2009).  Where a patent holder seeks compensation for future infringement, a patent holder must show that the projected future loss is factually and proximately caused by a wrong that has already occurred. *Allergan*, 2016 WL 8222619, at *2.  Where a patent holder does not obtain compensation for new acts of infringement that will happen in the future, the court determines the appropriate relief. *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 35 (Fed. Cir. 2012) ("There are several types of relief for ongoing infringement that a court can consider: (1) it can grant an injunction; (2) it can order the parties to attempt to negotiation terms for future use of the

invention; (3) it can grant an ongoing royalty; or (4) it can exercise its discretion to conclude that no forward-looking relief is appropriate in the circumstances.") (citations omitted).

The hypothetical negotiation is an artificial construct used as one input to arrive at a reasonable royalty: "[t]he setting of a reasonable royalty after infringement cannot be treated . . . as the equivalent of ordinary royalty negotiations among truly 'willing' patent owners and licensees." *Panduit Corp. v. Stahlin Bros. Fibre Works. Inc.*, 575 F.2d 1152, 1158 (6th Cir. 1978). Instead, "[t]he determination remains one of *damages* to the injured party." *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1988).

Kearl has turned these fundamental concepts of patent damages inside out. First, Kearl contends that Davis's proposed royalty "makes no sense" because Celsee "would not have agreed" to a license that terminated on the date of trial. [1] Lee Decl. Ex. B at ¶¶ 31, 72, 85. But the relevant question for the jury is what constitutes a reasonable measure of damages up through trial, not what the accused infringer would have negotiated for a later period of time.

Second, the concept of "hold-up" has no application here. A "hold-up" occurs when a patentee argues that the infringer would be willing to pay a higher

---

[1] Nelsen repeats the same argument in her report at ¶¶ 25–27 and it should be stricken from her report as well, to the extent her opinion is not stricken in its entirety.

royalty amount because the infringer is locked into an infringing modality, such as the "narrow situation" where a standard setting organization requires an entire industry to use patented technology at the time of the hypothetical negotiation. *Orexo AB v. Actavis Elizabeth LLC*, No. 17-205-CFC, 2019 WL 10060475, at * 2 (D. Del. Mar. 19, 2019) (Connolly, J.).  Celsee has made no such argument and there are no such circumstances present here.

Third, Kearl is trying to use potential damages for ***post-trial*** infringement to taint the jury's consideration of what is appropriate compensation for ***pre-trial*** infringement. But the principle driving Kearl's opinion—that Celsee would not agree at a hypothetical negotiation to a royalty structure that would not give it freedom to operate through patent expiry—completely ignores this Court's established and prescribed role in assessing post-trial relief.  *Whitserve*, 694 F.3d at 35 (Fed. Cir. 2012).  Kearl's argument is accordingly at odds with established Federal Circuit law and the Court should strike the opinion found at the portions of paragraphs 31, 72, and 85 as indicated in Exhibit B.

## 2. The Court Should Strike Kearl's Use of the "Common Sense Test"

Expert testimony must be "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  Testimony that does "nothing more than proclaim[] an opinion is true 'because I say so'" does not meet this standard.

11

*Small v. WellDyne, Inc.*, 927 F.3d 169, 177 (4th Cir. 2019); *see also M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 678 (D. Del. 2016) (excluding as *ipse dixit* expert opinion lacking "meaningful analysis").  Kearl's opinion that Ms. Davis' reasonably royalty opinion does not pass a "common sense test" is not reasoned expert opinion but instead impermissible *ipse dixit*.

Kearl asserts that the fact that Davis's proposed royalty of $5 million is more than ███ what 10x paid to license and later acquire the Brenner patent family from PGT "calls into question the entirety of Ms. Davis' reasonable royalty opinion."  Lee Decl. Ex. B at ¶ 90.  He makes three points in support: (1) the size of the single cell genomics market was comparable in 2015; (2) the value of the Hindson patents cannot make up for the difference between Davis's proposed royalty and the amount 10x paid for the Brenner portfolio in 2015; and (3) the $5 million royalty does not pass the "common sense" test because it is ███ the price 10x paid for the Brenner portfolio in 2015.  The third opinion should be stricken.  The jury does not need an expert to tell it to apply common sense.  Far from being tied to his expertise, experience, or evidence, Kearl is attempting to dress up an assertion not based on any reliable, articulable, or testable methodology with the cloak of his supposed expertise.  That is quintessential *ipse dixit*.

There is a reason that Kearl did not undertake a rigorous analysis to support

his assertion that the supposed discrepancy fails the "common sense test." No such test exists. There is no "hard rule" "that damages for patent infringement may never be significantly higher than the purchase price of the patent." *TC Tech. LLC v. Sprint Corp.*, No. 16-153-RGA, 2019 WL 2515779, at *10 (D. Del. June 18, 2019); *see also SSL Servs., LLC v. Citrix Sys., Inc.*, 940 F. Supp. 2d 480, 489–90 (E.D. Tex. 2013) (rejecting the argument that damages for infringement should be capped at the patent's sale price). To the contrary, it is common for companies to obtain awards for infringement in excess of the purchase price of the patents at issue. *Id.* (upholding a $10 million award even though the patent was purchased for $800k); *TC Tech. LLC*, 2019 WL 2515779 at *10 (allowing damages theories ranging from $540 million to $949 million even though the patent's purchase price was $300,000).

Kearl's "common sense" opinion also fails because it is not sufficiently tied to the facts of this case: Kearl fails to compare the situation of a dying entity desperate to offload its intellectual property portfolio for quick cash to a product-producing company considering a license to a potential competitor. The Court should thus strike the portions of Kearl's report as indicated in Exhibit B at ¶¶ 90, 91.

3. **The Court Should Strike Kearl's References To Invalidity And Prior Art**

It is well established that a damages expert must assume the patents at issue

13

are valid. *Lucent Techs., Inc.*, 580 F.3d at 1325 (Fed. Cir. 2009).  In his report,

Kearl attempts both to pay lip service to this principle and to skirt it: "Moreover, I

understand that Celsee's technical expert has opined that several different prior art

combinations render the claims of the Brenner patents invalid.  Even assuming, as I

must, that those patents are valid, the copious amounts of prior art cannot be

ignored."  Lee Decl. Ex. B at ¶ 100.  A damages report is no place to reinforce a

technical expert's invalidity opinion.  When pressed, Kearl himself admitted as

much.  Lee Decl. Ex. C at 230:22–231:10 (Q. "Now, as we've discussed earlier

today, you understand that for purposes of the hypothetical negotiation, you must

assume the patents are, in fact, valid; correct?" A. "Correct."  . . . Q. "And so in

that sense, it is not true that the copious amount of prior art is relevant to the

hypothetical negotiation with respect to patent validity." A. "That's correct.").  The

Court should strike the opinion found in the above sentences from Kearl's report,

as indicated in Exhibit B at ¶ 100.

> **B.     The Court Should Strike Nelsen's Opinions In Their Entirety**

Nelsen's opinions should be stricken in their entirety.

First, Celsee has not demonstrated that she has the necessary experience,

education, or knowledge to opine that it would have been "exceedingly unlikely"

for Celsee, a for-profit venture-backed company seeking to compete with the

licensor, also a for-profit venture-backed company, to agree to annual lump sum

payments.  *See* Lee Decl. Ex. E, ¶¶ 18–28.  *See* Fed. R. Evid. 702, Advisory

Committee Notes for 2000 Amendments (citing *Bourjaily v. United States*, 483

U.S. 171, 175, 178–79 (1987)) (proponent of expert testimony has burden to prove

expert qualifications by a preponderance of the evidence).  To be sure, Nelsen has

extensive experience negotiating "hundreds of license agreements" on behalf of a

non-profit university wanting to license its technology to a partner who can bring it

to market.  But she admits this is an entirely different context from negotiations

between for-profit potential competitors.  These facts are sufficient to exclude her

opinion.  *See Sport Dimension, Inc. v. Coleman Co., Inc.*, 820 F.3d 1316, 1323

(Fed. Cir. 2016) (district court did not abuse its discretion in excluding patentee's

industrial design expert, where the expert while having 40 years of industrial

design experience, admitted he had no experience with personal floatation

devices).

Nor does Nelsen possess the expertise in corporate finance or startup

financing that would enable her to render the opinion that ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See TASER Int'l., Inc. v. Karbon*

*Arms, LLC*, No. 11-426-RGA, 2013 WL 6705478, at *1 (D. Del. Dec. 18, 2013)

(experts may not testify concerning subject matter in which they are not expert).

Therefore, her speculation as to what kinds of bets a "prudent CEO" might make in

the hypothetical negotiation is inadmissible.[2]  *Ultratec, Inc. v. Sorenson Comms., Inc.*, No. 13-cv-346-BBC, 2014 WL 5361940, at *1–3 (W.D. Wis. Oct. 21, 2014) ("Just because [the damages expert] made a good guess does not mean his approach is a reliable one.").

Nelsen's opinion must also be excluded because she has not "reliably applied the principles and methods to the facts of the case."  Fed. R. of Evid. 702. In some circumstances, courts have found that an expert without sufficient academic or "real world" experience can demonstrate their qualifications in their report.  *Carnegie Mellon Univ. v. Marvell Tech. Grp. Ltd.*, 807 F.3d 1283, 1302–03 (Fed. Cir. 2015) (finding damages expert without academic or relevant "real world" experience sufficiently qualified because she "filed voluminous, thorough, clearly structured, comprehensively documented expert reports.").  But Nelsen fails to do so here.  Her entire opinion is stated in eleven short paragraphs and centers on a series of generalizations about what would likely be most financially beneficial for startups broadly.  Even Nelsen acknowledges they are not true of all

---

[2] Even if the Court were to find Nelsen is qualified to render this opinion, the degree to which the Court finds Nelsen lacks the requisite experience and knowledge should be a factor in the Court's analysis of whether Nelsen reliably fit her opinion to the facts of the case as discussed below.  *See Elcock v. Kmart Corp.*, 233 F.3d 734, 749 (3d Cir. 2000) ("In light of our substantial discussion in Section II explaining how Copemann's qualifications are marginal at best, and mindful of the District Court's statement that the question of Copemann's qualifications was a 'close call,' we believe that this factor also weighs in favor of excluding Copemann's testimony").

startups.  *See* Lee Decl. Ex. D at 59:7–11 (█████████████████████

████████████████████████████████████████████████████

████████████████████).  When an expert "offers almost no basis as to how he

arrived" at his calculation "other than that he considered" certain inputs and

factors, it is "quintessential *ipse dixit* justification" and excluded under Federal

Rule of Evidence 702.  *TASER Int'l, Inc. v. Karbon Arms, LLC*, No. 11-426-RGA,

2013 WL 6773663, at *1 (D. Del. Dec. 19, 2013)*; see also Ultratec, Inc.*, 2014 WL

5361940, at *1–3; *Chico's Fas, Inc. v. Clair*, No. 2:13-cv-792-FTM, 2015 WL

3496003, at *4–6 (M.D. Fla. June 3, 2015) (striking a portion of the expert's

opinion that improperly relied on a "rule of thumb" analysis that was not tied to the

facts of the case where the expert relied on several license agreements from fields

unrelated to the patents-in-suit).

     Here, Nelsen's assumptions about what "small technology-based

companies" would prefer in a hypothetical negotiation are entirely detached from

Celsee and the single-cell sequencing market.  They do not show why ***Celsee in

this case*** would have insisted on a running royalty.  ████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

17



And despite purporting to offer an opinion as to what Celsee *and* 10x would do in a hypothetical negotiation, Nelsen offers no explanation or analysis of 10x's financial position at the time.

Her opinions should thus be excluded, as indicated in Exhibit E, ¶¶ 18–20, 22–23. What remains of her opinion in paragraphs 21 and 22 is simply a recitation of certain facts from Celsee's financials, and therefore should also be excluded as impermissible *ipse dixit* untethered to any permissible opinion.

Lee Decl. Ex. D at 204:8-23

18

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████.[3]  This new analysis cannot cure the

defects in the report because offering previously undisclosed opinions at a

deposition does not comply with Rule 26(a)(2)(B).  *Oxford Gene Tech. Ltd. v.*

*Mergen Ltd.*, 345 F. Supp. 2d 431, 437 (D. Del. 2004).  *See* Lee Decl. Ex. D at

204:24-205:4 ("Q. And just to confirm, that analysis that you just described

regarding ████████████████ is not in your report; correct? . . . A. It is not in my

report.").  ████████████████████████████

████████████████████████████████████████

███████████

   ████████████████████████████████████████

████████████████████████████████

████████████████████████████████  Lee Decl. Ex. D at 205:6–

206:22.  This is just a re-hashing of Nelsen's opinion discussed above: ████████

███████████████████████████████████  Thus

Nelsen's opinion regarding sales projections in paragraph 24 should be excluded

---

[3] During her deposition, Nelsen could not identify the deck nor confirm that it was
cited in her report.  Lee Decl. Ex. D at 223:20-226:20.

for the same reasons.



*See, e.g.,*

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1386 (Fed. Cir.

2001) (affirming as supported by substantial evidence a lump sum payment based

on optimistic projections prepared two months before infringement began even

though those projections were never met).[4]

Finally, Nelsen's opinions in the final four paragraphs of her report simply

repeat Kearl's argument that a damages model that runs through trial amounts to a

patent "hold-up." Lee Decl. Ex. E at ¶¶ 25–28. These opinions should be

excluded for the same reasons discussed in Section IV.A.1 above.

## V.    CONCLUSION

For the reasons discussed above, 10x respectfully requests that the Court

grant its motion to exclude the challenged portions of Celsee expert James R.

Kearl's opinions and the entirety of Celsee expert Lita L. Nelsen's opinions and

---

[4] The Preliminary Damage Report of Donald L. Martin strongly suggests that, like
Celsee, the licensee was a new "start up" company just entering the market. Lee
Decl. Ex. G ("[Licensee] was a new company seeking markets for its proprietary
technology and capital for its expansion and market plans. . . . . Given the start up
character and capital constrained character of IPI, I have . . .")

testimony.

Dated:  February 5, 2021

OF COUNSEL:                                    By:            */s/ Frederick L. Cottrell, III*
                                               Frederick L. Cottrell, III (#2555)
                                               Jason J. Rawnsley (#5379)
Daralyn J. Durie                               Alexandra M. Ewing (#6407)
Eugene Novikov                                 RICHARDS, LAYTON & FINGER, P.A.
Andrew L. Perito                               One Rodney Square
Eneda Hoxha                                    920 North King Street
Annie A. Lee                                   Wilmington, DE 19801
Ramsey W. Fisher                               (302) 651-7700
DURIE TANGRI LLP                               cottrell@rlf.com
217 Leidesdorff Street                         rawnsley@rlf.com
San Francisco, CA 94111                        ewing@rlf.com
Telephone: 415-362-6666
Facsimile: 415-236-6300                         *Attorneys for Plaintiff 10x Genomics, Inc.*
ddurie@durietangri.com
enovikov@durietangri.com
aperito@durietangri.com
ehoxha@durietangri.com
alee@durietangri.com
rfisher@durietangri.com

Kira A. Davis
DURIE TANGRI LLP
953 East 3rd Street
Los Angeles, CA 90013
Telephone:  213-992-4499
Facsimile:   415-236-6300
kdavis@durietangri.com

Dated:  February 5, 2021

Redacted Public Version
Filed: February 12, 2021

21

## <u>CERTIFICATE OF COMPLIANCE WITH TYPEFACE REQUIREMENT</u><br><u>AND TYPE-VOLUME LIMITATION</u>

I hereby certify on this 5th day of February, 2021:

1.      This filing complies with the applicable type, font, and word

limitations.  This brief contains 4,987 words, which were counted by Microsoft

Word.

_____<u>/s/ Frederick L. Cottrell, III</u>_____
Frederick L. Cottrell, III (#2555)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 5, 2021, I caused true and correct copies of the foregoing document to be served on the following counsel in the manner indicated:

<u>VIA EMAIL</u>
Brian E. Farnan
Michael Farnan
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

<u>VIA EMAIL</u>
Barbara A. Fiacco
Jeremy A. Younkin
Brendan Jones
Emma S. Winer
Urszula Nowak
Michael Monti
Jeffrey I.D. Lewis
FOLEY HOAG LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
FoleyHoag-
CelseeTeam@foleyhoag.com

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com